IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNA BORKOWSKI, *et al.*,           *

    Plaintiffs,                          *

    v.                                   *          Civil Action No.:  1:18-cv2809-DKC

BALTIMORE COUNTY,                   *
MARYLAND, *et al.*,

                                         *          [Hearing Requested]

    Defendants.

*     *     *     *     *     *     *     *     *     *     *     *     *     *

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT BERNADETTE
HUNTON'S MOTION TO DISMISS AND REQUEST FOR HEARING

**Rignal W. Baldwin V**
**Stephen C. Rigg**
**BaldwinLaw LLC**
**111 South Calvert Street**
**Suite 1805**
**Baltimore, Maryland 21202**
**(410) 385-5695**
**rbaldwinv@baldwinlawllc.com**
**srigg@baldwinlawllc.com**

**Attorneys for Plaintiffs,**
**Anna Borkowski,**
**Annemarie Hendler,**
**Katelyn Frank,**
**Marcella Fegler,**
**and Kaila Noland.**

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Prefatory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Defendant Hunton's Investigation of The Sexual Assault of Katelyn Frank . . . . . . . . . . 3

II.   Defendant Hunton's Investigation of The Sexual Assault of Kaila Noland . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    Plaintiffs Have Stated A Claim Pursuant to 42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . 4

   A.   Defendant Hunton Was A State Actor When She Violated . . . . . . . . . . . . . . . . . . . . . 5
        The Fourteenth Amendment to The United States Constitution

      1.   Defendant Hunton Acted under Color of Law by Assuming . . . . . . . . . . . . . . . . . . 6
           A State Function And Acting for, And with, The Participation of, The State

      2.   The "Finality of Defendant Hunton's Unconstitutional Acts Is Irrelevant . . . . . . . . . 7
           As The Acts Themselves Violated The Equal Protection Clause

      3.   Even if Finality Were A Requirement, Defendant Hunton's. . . . . . . . . . . . . . . . . . . 8
           Actions Would Suffice

      4.   Defendant Hunton Was Not UMBC's Attorney, As She Now Argues. . . . . . . . . . . . 9

   B.   Defendant Hunton Violated Well-Established Rights . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        While Acting under Color of Law

      1.   Defendant Hunton Violated Plaintiffs' Rights Pursuant to . . . . . . . . . . . . . . . . . . . . 11
           The Fourteenth Amendment to The United States Constitution

      2.   Defendant Hunton Violated Plaintiffs' Rights Pursuant to Title IX . . . . . . . . . . . . . 12

      3.   Defendant Hunton's Biased Treatment of Plaintiffs' Sexual Assault . . . . . . . . . . . . 13
           Complaints Violated Plaintiffs' Fourteenth Amendment Rights

II.   The Second Amended Complaint Plausibly Alleges A Far-Reaching . . . . . . . . . . . . . . . 14
      Conspiracy, of Which Defendant Hunton Was A Part

      A.   Class-Based, Invidiously Discriminatory Animus Is Only Necessary for . . . . . . . . . . . . . 14
           Private Conspiracies under 42 U.S.C. §1985(3)

      B.   Plaintiffs Have Properly Alleged That Defendant Hunton's Acts . . . . . . . . . . . . . . . . . . . 15
           Were Undertaken with Discriminatory Intent

      C.   The Second Amended Complaint Properly Alleges A Conspiracy to . . . . . . . . . . . . . . . 17
           Violate Female Victims' Civil Rights

      D.   Defendant Hunton Participated in The Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      E.   Defendant Hunton's Claim That She Is Incapable of Violating The Fourteenth . . . . . . . 22
           Amendment Because She Is Female Should Be Rejected

           1.   Defendant Hunton Must Be Held to Account for Her Fourteenth Amendment . . . . . 22
                Violations, Regardless of Her Gender And The Gender of Her Victims

           2.   Defendant Hunton Was Hired to Give The Appearance of Non-Discrimination . . . . 23

III.  Liability Pursuant to 42 U.S.C. §1986 Is Broader Than Liability Under . . . . . . . . . . . . . 24
      42 U.S.C. §1983

IV.   Defendant Hunton Is Not Entitled to Qualified Immunity Because She . . . . . . . . . . . . . . 24
      Knowingly Violated Clearly Established Rights

      A.   Defendant Hunton Is Not Automatically Entitled to Qualified Immunity . . . . . . . . . . . 25

      B.   Defendant Hunton Is Not Entitled to Qualified Immunity Because . . . . . . . . . . . . . . . . 25
           She Knowingly Violated Clearly Established Rights

           1.   Defendant Hunton Cannot Use Qualified Immunity to Avoid . . . . . . . . . . . . . . . . . . 26
                The Heavy Burden of Justifying Gender-Based Discrimination.

           2.   Qualified Immunity Does Not Protect The Plainly Incompetent . . . . . . . . . . . . . . . . 27
                Or Those Who Knowingly Violate The Law

           3.   The Second Amended Complaint Alleges That Defendant Hunton . . . . . . . . . . . . . . 28
                And The Other Defendants Were Knowingly Violating The Law

           4.   Defendant Hunton Has No Justification for Her . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
                Gender-Based Government Action

　　　5.　Defendant Hunton Violated Clearly Established Rights . . . . . . . . . . . . . . . . . . . . . . . 29

　V.　Summary Judgment Is Inappropriate And Unwanted At This Stage . . . . . . . . . . . . . . . 30

　　A.　Exhibit 1, Defendant Hunton's "Attorney Profile" . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

　　B.　Exhibits 2 and 3, The Final Investigative Reports of Katelyn Frank's . . . . . . . . . . . . . . 32
　　　　And Kaila Noland's Allegations

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Request for Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

### Cases

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004) . . . . . . . . . . . 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

*Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Boumediene v. Bush*, 553 U.S. 723 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) . . . . . . . . . 5

*Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 2

*Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749 (2d Cir. 1998) . . . . . . . 12

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Crawford v. Davis*, 109 F.3d 1281 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) . . . . . . . . . 19

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Filarsky v. Delia*, 566 U.S. 377 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . 13

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . 31, 32

*Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hartman v. Moore*, 547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mississippi Univ. for Women v. Hogan*, 458 U.S. 718 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mullenix v. Luna*, 136 S. Ct. 305 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27, 29

*Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Orgain v. City of Salisbury, Md.*, 305 F. App'x 90 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 22, 23

*Pearson v. Callahan*, 555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 6, 31

*Reichle v. Howards*, 566 U.S. 658 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Richardson v. McKnight*, 521 U.S. 399 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Saucier v. Katz*, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Savina v. Gebhart*, 497 F. Supp. 65 (D. Md. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Scott v. Harris*, 550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Hogan*, 794 F.3d 249 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Thurman v. City of Torrington*, 595 F. Supp. 1521 (D. Conn. 1984) . . . . . . . . . . . . . . . . . . . . . . 8

*Truax v. Corrigan*, 257 U.S. 312 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 29

*United States v. Booker*, 728 F.3d 535 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Virginia*, 518 U.S. 515 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) . . . . . . . . . . . . 16

*Wakat v. Harlib*, 253 F.2d 59 (7th Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 29

*Washington v. Davis*, 426 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*White v. Pauly*, 137 S. Ct. 548, 551 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282 (11th Cir. 2007) . . . . . . . . 12

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

## Statutes

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

20 U.S.C. §1681 ("Title IX") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

## Rules

Federal Rule of Civil Procedure 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Federal Rules of Evidence 801-807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Federal Rule of Evidence 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fourth Circuit Local Rule 32.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Local Rule 105.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 105.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

### United States Government Publications

U.S. Dep't of Just., Off. of Just. Progs., Bureau of Just. Stats., Rennison, C. M., *Rape and* . 17, 27
*sexual assault: Reporting to police and medical attention, 1992-2000* (Aug. 2002),
https://www.bjs.gov/content/pub/pdf/rsarp00.pdf.).

U.S. Dep't of Just., Fed. Bureau of Investigation, Uniform Crime Report, Hate Crime . . . . . . . . 17
Statistics, 2017: Victims, https://ucr.fbi.gov/hate-crime/2017/topic-pages/victims.pdf.

U.S. Dep't of Just., Fed. Bureau of Investigation, Uniform Crime Report, Hate Crime . . . . . . . . 17
Statistics, 2016: Victims, https://ucr.fbi.gov/hate-crime/2016/topic-pages/victims.pdf.

U.S. Census Bureau, American Fact Finder, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.

### Maryland Attorneys' Rules of Professional Conduct

Maryland Rule 19-302.4(a) (Rule 2.4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Maryland Rule 19-301.12(a) (Rule 1.12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF MARYLAND</u>

| | | |
|---|---|---|
| ANNA BORKOWSKI, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.:  <u>1:18-cv2809-DKC</u> |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | * | |
| | * | [Hearing Requested] |
| Defendants. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT BERNADETTE</u>
<u>HUNTON'S MOTION TO DISMISS AND REQUEST FOR HEARING</u>

Plaintiffs Anna Borkowski, Annemarie Hendler, Katelyn Frank, Marcella Fegler, and

Kaila Noland ("Plaintiffs"), on their own behalf and on behalf of those similarly situated, by and

through their attorneys, Rignal W. Baldwin V, Stephen C. Rigg, and BaldwinLaw LLC, file

pursuant to Rule 6(c), Local Rule 105.2, and this Court's orders regarding a filing schedule, this

Plaintiffs' Memorandum in Opposition to Defendant Bernadette Hunton's Motion to Dismiss And

Request for Hearing.

<u>Prefatory Statement</u>

Each Defendant, including Defendant Hunton, owes a duty to women not to act under

color of law to interfere with equal protection and other rights established by law.  Each

Defendant, including Defendant Hunton, violated that duty and intentionally deprived a

particularly vulnerable class of people of their rights and equal protection.  All Defendants,

including Defendant Hunton, can and should be held accountable by this Court.

<u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) allows this Court to dismiss a complaint only

for "failure to state a claim upon which relief can be granted."  Dismissal pursuant to Federal

Rule of Civil Procedure 12(b)(6) is only appropriate when, "accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, 'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (quoting *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Under this standard, Defendant Hunton's Motion to Dismiss must be denied because the Second Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs have "plead[] factual content that allows th[is C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Factual Background

Plaintiffs have alleged that all Defendants, including Defendant Hunton, were engaged in a years-long effort to discourage women from reporting sexual assaults and to marginalize and discredit the women who did come forward.[1]  Sec. Am. Compl. ¶¶809-816.  Defendant Hunton was employed by other Defendants, including Defendant University of Maryland, Baltimore County ("UMBC"), "to investigate and prepare [] Title IX Draft Report[s] and Final Report[s]," and "to absolve Defendants UMBC and Hrabowski of any responsibility." Sec. Am. Compl. ¶371.  Of the Plaintiffs in this case, Defendant Hunton investigated the assaults of Katelyn Frank, Kaila Noland, and many potential class members.  Sec. Am. Compl. ¶¶31, 3016-10, 366-71.

---

[1] Because of the breadth and length of the unlawful practices, a full discussion of all Defendants in the conspiracy would be prohibitively lengthy.  To the extent that the other Defendants' acts are relevant, they are discussed where appropriate.

I.   <u>Defendant Hunton's Investigation of The Sexual Assault of Katelyn Frank</u>

Defendant Hunton's investigation into the sexual assault of Katelyn Frank "was a pre-ordained sham." Sec. Am. Compl. ¶681.  For example, Defendant Hunton instructed Ms. Frank, "not to attempt to retrieve certain text messages, as Defendant Hunton would not consider them as evidence." Sec. Am. Compl. ¶329.  "Defendant Hunton then [reported] that Ms. Frank had spoliated the text messages" that "Defendant Hunton instructed Ms. Frank not to recover." Sec. Am. Compl. ¶330.  In contrast, "Defendant Hunton refused to draw an adverse inference against the [male] assailant, who selectively deleted incriminating text messages." Sec. Am. Compl. ¶698.   The inference of discrimination in this disparate treatment is inescapable.

As a result of Defendant Hunton's biased investigating, Ms. Frank's assailant, who lied to Defendant Hunton about a package of illegal drugs he received hours before assaulting Ms. Frank (Sec. Am. Compl. ¶282), was cleared of any wrongdoing and was allowed to return to campus.  Sec. Am. Compl. ¶683.  Ms. Frank was driven from the University as a result.  Sec. Am. Compl. ¶727.

II.   <u>Defendant Hunton's Investigation of The Sexual Assault of Kaila Noland</u>

Defendant Hunton's investigation into Ms. Noland's sexual assault was an example of minimizing sexual assaults she could not deny.  As the result of Defendant Hunton's biased investigating and recommendations, Ms. Noland's assailant, who *admitted* to raping Ms. Noland (Sec. Am. Compl. ¶793), was not punished or removed from campus.  Sec. Am. Compl. ¶826.  Ms. Noland's assailant, at Defendant Hunton's insistence, was given only a single counseling session, and the assault "reduced to" a "learning experience." Sec. Am. Compl. ¶826, 377.  Ms. Noland was driven from the University as a result.  Sec. Am. Compl. ¶827.

Discovery will almost certainly show that Defendant Hunton's unconstitutional acts unfairly drove many other women from UMBC.

<u>Argument</u>

Plaintiffs' claims are, and always have been, that Defendant Hunton, wielding the State's power, sought to (and did) deny Plaintiffs their rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.[2]  The particular avenue available to vindicate those rights against Defendant Hunton, an individual, is 42 U.S.C. §1983, *et seq.*, which allow recovery against persons, *including private citizens*, acting under color of law, where those persons act to deny rights afforded by the Constitution or laws of the United States, against those who conspired to do so, or against those who could have stopped such a conspiracy.  42 U.S.C. §§1983, 1985, 1986.

I.   <u>Plaintiffs Have Stated A Claim Pursuant to 42 U.S.C. §1983</u>

42 U.S.C. §1983 allows suits against *any* person, public official or otherwise, who, under color of law, "subjects, or causes to be subjected," any person within United States jurisdiction "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983.

Defendant Hunton argues that she is not amenable to suit under 42 U.S.C. §1983 because she was not a state actor, that Plaintiffs have not alleged any deprivation their of rights by Defendant Hunton, and finally, that she is entitled to qualified immunity.  Def.'s Mem. 10.  The Second Amended Complaint shows that Defendant Hunton is incorrect.  "If the Fourteenth Amendment is not to be displaced," then the Amendment's "ambit cannot be a simple line

---

[2] Defendant Hunton correctly notes that Plaintiffs amended the First Amended Complaint in response to her doubts as to the validity of Title IX claims against Defendant Hunton.  Deprived of her best legal argument, Defendant Hunton cites to the First Amended Complaint at least four times in her motion.

between States and people operating outside formally governmental organizations." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

A. Defendant Hunton Was A State Actor When She Violated The Fourteenth Amendment to The United States Constitution

"Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law," and are "state actors." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "Otherwise, for instance, police could take a suspect to a local town thug who enjoyed beating people up, and let the suspect take a pounding until he gave the location of the loot." *United States v. Booker*, 728 F.3d 535, 540 (6th Cir. 2013). Defendant Hunton does not address this test, because under the test she is a state actor for the purposes of a 42 U.S.C. §1983 *et seq.* lawsuit.

Defendant Hunton instead argues that contracting with UMBC does not transform her into a state actor (Def.'s Mem. 24), and that being licensed by the State as an attorney does not make her a state actor. Def.'s Mem. 14.

Plaintiffs agree that the above is true, but it is irrelevant to the question of whether Plaintiffs have properly alleged the extent of the State's participation in Defendant Hunton's actions. While contracting with or being licensed by the State alone is not grounds to consider Defendant Hunton a state actor, Defendant Hunton's arguments do not address the allegations in the Second Amended Complaint.

Defendant Hunton did not just contract with the State, she assumed one of the State's duties and acted accordingly, and the State participated in her unlawful conduct. Sec. Am. Compl. ¶¶318-20, 356, 371. Defendant Hunton did not provide legal services to UMBC, she exercised its power as her own. Sec. Am. Compl. ¶¶318-19, 328, 334, 371-78.

Because Ms. Frank's and Ms. Noland's exercise of their federally-secured rights depended on Defendant Hunton, who was acting for the State, Defendant Hunton was a state actor, acting under color of law, when she intentionally deprived Ms. Frank and Ms. Noland of those rights.

    1.  <u>Defendant Hunton Acted under Color of Law by Assuming A State Function And Acting for, And with, The Participation of, The State</u>

Defendant Hunton admits that she was contracted by the State to perform a state function. Def.'s Mem. 2-3.  However, Defendant Hunton claims that, because she was not a government employee, she is not responsible for the Constitutional violations she and her conspirators committed.  Def.'s Mem. 14.

The Supreme Court has rejected Defendant Hunton's arguments, holding that "[t]he Nation's basic charter cannot be contracted away like this. . . .  To hold that the political branches may switch the Constitution on or off at will would lead to a regime in which they, not this Court, say 'what the law is.'" *Boumediene v. Bush*, 553 U.S. 723, 727 (2008) (quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).  The question is not whether Defendant Hunton was a government employee or a government contractor, but whether she acted "under color of law."  42 U.S.C. §1983.

As Defendant Hunton acknowledges, "[t]he statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement – and the analysis for each is identical."  Def.'s Mem. 11 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  Where a private individual acts on behalf of the state, "[t]he test," for "whether the conduct" of the government and the individual "was such as to make [the individual's] actions their actions for purposes of the Fourth and Fourteenth Amendments" is "whether [the

individual], in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971).[3]

Defendant Hunton was paid to perform a statutorily-required investigation, and wielded the power of the State to do so. Sec. Am. Compl. ¶318 ("UMBC paid Defendant Hunton, an attorney specializing in defending colleges and universities from allegations of sexual misconduct, to investigate and prepare the Title IX Draft Report and Final Report."). Defendant Hunton was an "instrument or agent of the Government." *Skinner*, 489 U.S. at 614 (1989) ("[T]he [Constitution] protects against such intrusions if the private party acted as an instrument or agent of the Government.").

2. The "Finality" of Defendant Hunton's Unconstitutional Acts Is Irrelevant, As The Acts Themselves Violated The Equal Protection Clause

Plaintiffs properly allege that Defendant Hunton violated their rights by intentionally performing a biased investigation and skewing the results in favor of male perpetrators of sexual assault, to the detriment of the Fourteenth Amendment rights of Ms. Frank, Ms. Noland, and members of the Class. Sec. Am. Compl. ¶¶318-44, 371-78.

Defendant Hunton argues that she could not have violated Plaintiffs' rights, as she "cannot be a state actor because she did not take (and had no authority to take) any final action on the Plaintiffs' complaints or against the alleged assailants." Def.'s Mem. 10. Whether Defendant Hunton took any "final" action is irrelevant to whether she undertook that action as a

---

[3] The "state action requirement" arises regularly in determining whether the Fourth Amendment's prohibitions against unreasonable searches and seizures applies to a situation. For example, when police hire a citizen who breaks the law to obtain evidence, that evidence must be suppressed, because that (formerly purely) private citizen became a state actor. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) ("[T]he [Fourth] Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government.") (citing *United States v. Jacobsen*, 466 U.S. 109, 113–114 (1984)). The same reasoning applies to Defendant Hunton's conduct.

state actor.[4]  "It is well settled that the equal protection clause is applicable not only to discriminatory legislative action, but also to discriminatory governmental action in administration and enforcement of the law," and "a pattern or practice of affording inadequate protection, or no protection at all, to women who have complained of having been abused . . . is tantamount to an administrative classification used to implement the law in a discriminatory fashion." *Thurman v. City of Torrington*, 595 F. Supp. 1521, 1527 (D. Conn. 1984) (citing, *inter alia*, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

   3.   Even if Finality Were A Requirement, Defendant Hunton's Actions Would Suffice

   While "final" action is not required to state a claim, Defendant Hunton had the final say on investigative and evidentiary matters.  *See* Sec Am. Compl. ¶¶330, 371, 372.  Defendant Hunton used this power to prejudice investigations against female victims of sexual assault.  Sec. Am. Compl. ¶687 ("The irregularities were part of an intentional effort to manipulate the outcome and conceal complaints of sexual assault.").  Defendant Hunton's final say on evidence was typically dispositive for the entire Title IX process.  Sec. Am. Compl. ¶¶329-30 ("Defendant Hunton instructed Ms. Frank not to attempt to retrieve certain text messages, as Defendant Hunton would not consider them as evidence.").

   Defendant Hunton had the final say on which interviews to take, when to schedule them, and who would be allowed to attend, a power she unfairly used to the detriment of female victims of sexual assault.  Sec. Am. Compl. ¶¶327-28 ("Defendant Hunton inexplicably invoked a sequestration rule that does not apply in a Title IX context," and "then chose not to interview

---

[4] Analogously, a police officer is liable for investigative misconduct, despite having no "authority to take[] any final action" regarding charges or prosecution.  *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (recognizing the liability of police officers who conduct misconduct during an investigation, and extending that liability to prosecutors).

the suitemate Defendant Hunton had excluded.").  Defendant Hunton unconstitutionally and unlawfully retaliated against Ms. Frank, and others, for disagreeing with her assessments.  *See, e.g.*, Sec. Am. Compl. ¶339 ("Defendant Hunton stated that Ms. Frank's disagreements with the Draft Report damaged Ms. Frank's credibility."); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.").

Defendant Hunton exercised the power and authority of the State.  Defendant Hunton can and must be held accountable for related misconduct.

### 4.   Defendant Hunton Was Not UMBC's Attorney, As She Now Argues

Defendant Hunton claims that, at least according to the Second Amended Complaint, she was an attorney for Defendant UMBC.  Def.'s Mem. 2 fn.3.  Defendant Hunton misrepresents the Second Amended Complaint, and no such allegation is made.

Plaintiffs allege in the Second Amended Complaint that "Defendant Bernadette Hunton was a contractor or subcontractor for Defendant UMBC, retained to investigate Ms. Frank's, Ms. Noland's, and Class Members' complaints of sexual misconduct."  Sec. Am. Compl. ¶ 31. Instead of acting as an attorney, "Defendant Hunton acted as a purported 'Independent Investigator.'"  Sec. Am. Compl. ¶31.  Plaintiffs do allege that Defendant Hunton is an attorney, but only to as proof of her bias, in that her usual practice is "specializing in defending colleges and universities from allegations of sexual misconduct."  Sec. Am. Compl. ¶318.  Defendant Hunton's identity as an attorney was only relevant because, and was only mentioned to establish that, "[h]iring an attorney who defends against claims of sexual misconduct made by women against men further demonstrates Defendants UMBC and Hrabowski's institutionalized gender bias."  Sec. Am. Compl. ¶320.  The reasonable inference is that Defendant Hunton was at least a

willing and knowing participant in Defendants UMBC and Hrabowski's institutionalized gender bias.[5]

Nowhere does the Second Amended Complaint say that Defendant Hunton was hired *as an attorney*, entered into an attorney-client relationship with Defendant UMBC (or any other Defendant), or officially engaged to provide anything other than an "[i]ndependent [i]nvestigat[ion]." Sec. Am. Compl. ¶31.  The closest the Second Amended Complaint comes to this is when noting that "Defendant Hrabowski exercises his discretion to approve or disapprove UMBC policies, including the policy of retaining a biased attorney to investigate allegations of sexual assault." Sec. Am. Compl. ¶828.  Even here, the reference is to retaining "a biased attorney *to investigate allegations of sexual assault*," not to enter into an attorney-client relationship.  Sec. Am. Compl. ¶828 (emphasis added).

The Second Amended Complaint does not allege that Defendant Hunton was UMBC's attorney, because she was not.

Additionally, UMBC's polices, which Defendant Hunton has attached to her motion to dismiss, required that a UMBC Title IX Investigator avoid conflicts of interest.  *See* Ex. 4 to Def.'s Mot.  This is in order to "ensure a fair and impartial process."  Ex. 4 to Def.'s Mot. §VIII.  Further, "[t]he investigation is designed to provide an adequate, reliable, prompt, and impartial gathering of the facts by a trained and neutral Investigator."  Ex. 4 to Def.'s Mot. §X.D.2.

An attorney retained to represent the University would be barred from being a neutral party.  *See, e.g.*, Rule 19-302.4(a), Maryland Attorneys' Rules of Professional Conduct ("MRPC"), Rule 2.4 ("An attorney serves as a third-party neutral when the attorney assists two

---

[5] UMBC, apparently not realizing how transparent the biased "expert" sham is, has, since the initiation of this suit, hired two Title IX defense consultants to "review" its Title IX policy.

or more persons who are not clients of the attorney."); Rule 19-301.12(a) ("[A]n attorney shall

not represent anyone in connection with a matter in which the attorney participated personally

and substantially as a . . . third-party neutral, unless all parties to the proceeding give informed

consent") (MRPC 1.12(a)).  By her own argument, Defendant Hunton could not have been a

neutral investigator, and was biased against the (predominately-female) victims of sexual assault.

B. Defendant Hunton Violated Well-Established Rights While Acting under Color of Law

   1. Defendant Hunton Violated Plaintiffs' Rights Pursuant to The Fourteenth Amendment
      to The United States Constitution

The Fourteenth Amendment to the United States Constitution guarantees equal protection

under the law to all persons in, or under the jurisdiction of, the United States.  U.S. Const.

amend. XIV, §1.  Defendant Hunton, wielding the authority of the State, violated that guarantee,

and this Court should reject Defendant Hunton's argument that she cannot be held accountable.

The Fourteenth Amendment guarantees "the equal protection of the laws."  U.S. Const.

amend. XIV, §1.  Plaintiffs were denied that protection because of their gender.  *See generally*

Sec. Am. Compl.; *see also, e.g.*, Sec. Am. Compl. ¶588 ("Defendants' illegal policies are sex and

gender-based and their adverse effects reflect invidious sex and gender-based discrimination.")

Plaintiffs have alleged that Defendant Hunton actively participated in the discrimination,

skewing her investigations in favor of male perpetrators of sexual assault to deny the female

Plaintiffs the equal protection she was required to afford them.  *See, e.g.*, Sec. Am. Compl. ¶688

(describing disparate treatment between the male and female parties to a supposedly impartial

investigation); ¶¶645-52.  "[G]ender bias was a motivating factor behind the erroneous finding,"

because "[t]he particular circumstances of University Defendants['] investigation, including the

pre-ordained conclusions of Defendant Hunton, indicate that.").  Sec. Am. Compl. ¶711.

Plaintiffs have plausibly alleged that Defendant Hunton, acting under color of law, violated their right to equal protection.[6]

2.   Defendant Hunton Violated Plaintiffs' Rights Pursuant to Title IX

42 U.S.C. §1983 also protects against violations of "rights, privileges, [and] immunities secured by the . . . laws." 42. U.S.C. §1983.  Title IX, codified at 20 U.S.C. §1681, is one of the laws, and it secures various rights and privileges.  They are not exclusive, and "there is no evidence that Congress intended to foreclose the use of §1983 to redress violations of Title IX."[7] *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir. 1996)).

Defendant Hunton's argument relating to the interplay between Title IX and 42 U.S.C. §1983 was refuted by the Supreme Court in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009).  The Supreme Court definitively held, a decade ago, that "Congress did not intend Title IX to preclude §1983 constitutional suits." *Id.*

*Fitzgerald* established that 42 U.S.C. §1983 and Title IX complement each other, as separate expressions of the Fourteenth Amendment's guarantees.  For example, where "the same facts that undergirded [the plaintiff's] Title IX claims of gender discrimination" "buttress his §1983 claim," the two claims were both sufficiently pleaded.  *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018).

---

[6] The plausibility of this well-pled allegation is further discussed in Section II.C., *infra* (discussing the unconstitutional conspiracy in which Defendant Hunton participated).

[7] Prior to 2009, some courts wrongly held that Title IX precluded a 42 U.S.C. §1983 suit if the 1983 suit arose from the same set of factual circumstances.  *See, e.g., Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 757 (2d Cir. 1998); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007).

Title IX, one expression of the Fourteenth Amendment's guarantee of equal protection, clearly establishes several rights Defendant Hunton violated.  *See, e.g.*, *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 732 (1982) ("Section 5 of the Fourteenth Amendment gives Congress broad power indeed to enforce the command of the Amendment and 'to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion.'"); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 (1976) (noting that Title VII, closely related to Title IX, was "passed pursuant to Congress' authority under s[ection] 5 of the Fourteenth Amendment"); *see also* Sec. Am. Compl. ¶¶733-34.

For example, it is clearly established that, where an employee or agent of an institution "retaliates against a person because [s]he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).  The Second Amended Complaint alleges that "Defendant Hunton stated that Ms. Frank's disagreements with the Draft Report damaged Ms. Frank's credibility."  Sec. Am. Compl. ¶339.  This unfounded retaliation against Ms. Frank is just one example of Defendant Hunton's discrimination "on the basis of sex." *Jackson*, 544 U.S. at 174.

3. Defendant Hunton's Biased Treatment of Plaintiffs' Sexual Assault Complaints Violated Plaintiffs' Fourteenth Amendment Rights

It is clearly established that the right to avoid disparate treatment based on gender may be violated even where "a single school administrator with authority to take corrective action responded to harassment with deliberate indifference." *Fitzgerald*, 555 U.S. at 257 (describing the Fourteenth Amendment's expression in a Title IX context) (citing *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998)).  The Complaint has flatly alleged that Defendant Hunton, while exercising the power of the state, violated the guarantees spelled out

under Title IX.  Sec. Am. Compl. ¶¶73, 285-365, 366-78, 551-62, 703-07, 718, 738-742.

Defendant Hunton violated Plaintiffs' clearly established rights.

II.  The Second Amended Complaint Plausibly Alleges A Far-Reaching Conspiracy, of Which Defendant Hunton Was A Part

Defendant Hunton claims to be unable to ascertain the basis for Plaintiffs' catch-all 42 U.S.C. §1985 action, Count XVIII, and attempts to pigeon-hole the Count into one subsection before dismissing it.  Def.'s Mem. 29.  A claim under 42 U.S.C. §1985 requires one of several sets of elements, most of which are alleged in the Second Amended Complaint.

Count XVIII states a claim under 42 U.S.C. §1983(2) against those who conspire "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  Count XVIII also states a claim against those who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."  42 U.S.C. §1983(3).

A.  Class-Based, Invidiously Discriminatory Animus Is Only Necessary for Private Conspiracies under 42 U.S.C. §1985(3)

Defendant Hunton argues that the Second Amended Complaint "fails to allege any class-based, invidiously discriminatory animus because a comparison between female victims of sexual assault and victims of other crimes does not implicate gender discrimination."  Def.'s Mem. 10.  Defendant Hunton unconvincingly argues that there can be no 42 U.S.C. §1985 claim based on her unconstitutional conduct.  Def.'s Mem. 10.

It is long-settled that "if [42 U.S.C.] §1985 extends to a conspiracy to deny to plaintiff equal protection of the laws, it is not necessary, to justify the result in the district court, to point to any class of which he was a member." *Wakat v. Harlib*, 253 F.2d 59, 65 (7th Cir. 1958) (citing *Truax v. Corrigan*, 257 U.S. 312, 332 (1921)).  Defendant Hunton argues that state actors should be free to conspire to deprive *any* particular person of their right to equal protection, so long as that person cannot prove that the deprivation was due to their membership in a protected class.  State actors, even those acting under contract, are not free to ignore the Constitution.  *See Id.*

The necessity for invidious discrimination arises where *private* action is put forth as the basis for a 1985(3) claim.  "The language" in the statute "requiring intent to deprive of equal protection, *or equal privileges and immunities*," language which is not present in 42 U.S.C. §1985(2), "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added).  To the extent that state actors, including Defendant Hunton, have attempted to expand this to other 1985 claims, or to state actors, it is misleading.  *Id.*

Where any person acting under color of law conspires to deny "the right of any person, or class of persons, to the equal protection of the laws," Defendant Hunton's attempt to graft an "invidiously discriminatory animus" requirement is unfounded.  42 U.S.C. §1985(2).  Defendant Hunton was a state actor, and the Second Amended Complaint need not allege her particular animus towards women.

B.  <u>Plaintiffs Have Properly Alleged That Defendant Hunton's Acts Were Undertaken with Discriminatory Intent</u>

While Defendant Hunton need not have acted due to any particular discriminatory animus (*see supra*), the Second Amended Complaint properly alleges that she has done so.  As it is

impossible to read a Defendant's mind, especially without conducting any discovery, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b). Plaintiffs have met, and surpassed, this standard.

For example,  Plaintiffs alleged that the "circumstances of University Defendants' investigation, including the pre-ordained conclusions of Defendant Hunton, indicate that gender bias was a motivating factor behind the erroneous finding."  Sec. Am. Compl. ¶¶711, 832. Defendant Hunton was "a biased investigator" assigned "to pantomime an investigation."  Sec. Am. Compl. ¶¶681, 803.  Plaintiffs have properly alleged the "conditions of [Defendant Hunton's] mind" pursuant to Rule 9(b).

Discrimination is rarely as apparent as it is here, and it is even more rarely apparent on the face of official policies.[8]  Instead, a rule or policy "otherwise neutral on its face, must not be applied so as invidiously to discriminate."  *Washington v. Davis*, 426 U.S. 229, 241 (1976) (citing *Yick Wo*, 118 U.S. 356).  Unequal application of the rules can show intentional discrimination.  *See Washington*, 426 U.S. at 241.  The Second Amended Complaint properly alleges such unequal application.  *See* Sec. Am. Compl. ¶56 ("Different practices exist for crimes that do not disproportionately affect women."); ¶47 (Defendant's conduct "is a violation of equal protection as it intentionally discriminates against victims of crimes that disproportionately affect female victims, including Named Plaintiffs Frank, Fegler, and the Class."); ¶705 (Defendant Hunton's "[f]alsely deflating the number of sexual assaults victims . . . has a disproportionate impact on women, who are more often the victims of sexual assault.").

---

[8] Discriminatory intent is also a fact-intensive question, not appropriately resolved before discovery.  *See generally Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

C. <u>The Second Amended Complaint Properly Alleges A Conspiracy to Violate Female Victims' Civil Rights</u>

The Second Amended Complaint plausibly alleges that women are overwhelmingly, but not solely, the victim of rape and sexual assault.  Sec. Am. Compl. p.5 ("Nine percent (9%) of sexual assault victims are male, while ninety-one percent (91%) of sexual assault victims are female.") (citing U.S. Dep't of Just., Off. of Just. Progs., Bureau of Just. Stats., Rennison, C. M., *Rape and sexual assault: Reporting to police and medical attention, 1992-2000* (Aug. 2002), https://www.bjs.gov/content/pub/pdf/rsarp00.pdf.).  Women, despite making up approximately half of the population, are ten times more likely to be the victims of sexual assault than the rest of the population.  *Id.*

African Americans are disproportionately, but not overwhelmingly, victims of hate crimes, with their race being the motivation for approximately 30% of all hate crimes.[9] "African-Americans make up somewhere between 12.5% and 15% of the population.[10]  Thus an African-American is at least twice as likely to be the victim of a hate crime as the rest of the population.

---

[9] Pursuant to Federal Rule of Evidence 201(b), the Court may take judicial notice that, according to the FBI, in 2017, 48.6 percent of those targeted based on their "race/ethnicity/ancestry" (59.6% of the total) were "victims of crimes motivated by their offenders' anti-Black or African American bias," or 29.0% of the total.  U.S. Dep't of Just., Fed. Bureau of Investigation, Uniform Crime Report, Hate Crime Statistics, 2017: Victims, https://ucr.fbi.gov/hate-crime/2017/topic-pages/victims.pdf.  In 2016, that number was 50.2 percent of those targeted based on their "race/ethnicity/ancestry," or 29.5% of the total.  U.S. Dep't of Just., Fed. Bureau of Investigation, Uniform Crime Report, Hate Crime Statistics, 2016: Victims, https://ucr.fbi.gov/hate-crime/2016/topic-pages/victims.pdf.

[10] 12.6% of the population identified as solely "Black or African American" for the 2010 Census. U.S. Census Bureau, American Fact Finder, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.  A further 2.9% identified as two or more races.  *Id.*

Defendant Hunton's failure to treat a sexual assault fairly is much more likely to impact the victim based on her gender than a failure to treat a hate crime victim fairly is to impact a victim based on their race.  Nonetheless, if a police department or university, or their agents, decided and conspired to:

- Try to intimidate victims of hate crimes into abandoning investigations;

- Refuse to interview witness, or even suspects positively identified by victims;

- Fail to test physical evidence left at the scene of reported hate crimes, and then destroy the evidence;

- Advocate for, and impose, one counseling session in response to an admitted hate crime;

- Try to convince victims they were at fault for being drunk or otherwise impaired at the time of the crime;

- "Warn" victims of hate crimes that, should they choose to go forward with reports, they would be shamed and publicized on social media;

- Yell at victims who called the police to inquire as to the status of the investigation into their case;

- Instruct court officials to ignore victims, cutting off victims' access to the courts;

- Go into other jurisdictions to harass victims and other witnesses;

- Mislead victims into not pressing charges, even while they were still in the hospital, possibly intoxicated;

- Treat hate crimes as a "learning experience";

- Refuse to deal with victims' attorneys; and

- Misreport the numbers of hate crimes and their outcomes to deceive residents or students with a false sense of security;

There would be no rational argument against this behavior violating well-established constitutional and statutory protections, even if the Supreme Court or Fourth Circuit had not yet ruled on that precise situation.  Protecting racial minorities from government indifference and exploitation, even if a private party commits the underlying tortious or illegal act,[11] as not a controversial.  For example, where plaintiffs were threatened and assaulted, a 42 U.S.C. §1983 action was appropriate when, due to the plaintiffs' race, "[d]espite numerous requests made by the [plaintiffs] to the sheriff for help, the evidence indicates that very little in the way of an investigation was carried out and no written report of the incident was ever filed by [the sheriff]," and the sheriff dismissed the plaintiffs, telling them they "had started the problem and they ought to have to finish it."  *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983).

The Second Amended Complaint alleges that there was a broad conspiracy, of which Defendant Hunton was an essential part,[12] involving:[13]

- Intimidating victims of rape into abandoning investigations (Sec. Am. Compl., pp. 8, 10; ¶¶19, 28, 51, 255, 491, 505, 506);

---

[11] Here, the refusal to investigate sexual assaults, and the active undermining of investigations, is itself a Constitutional violation.  Even if it were not intentionally creating and allowing the conditions leading up to those sexual assaults would suffice to state a claim.  *See, e.g., Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 641 (1999) (agreeing that a school may not "remain idle in the face of known student-on-student harassment.").

[12] Briefly, once the other Defendants convinced a female victim of sexual assault that the Title IX process was simpler, easier, and more likely to result in removing their assailant from campus (*see, e.g.*, Sec. Am. Compl. ¶¶291-94), Defendant Hunton ensured that the Title IX process produced the desired result.  Sec. Am. Compl. ¶¶330, 681.  It worked.  "Defendant UMBC has not expelled a student for a sexual misconduct violation since at least before the 2015-2016 academic year."  Sec. Am. Compl. ¶29.

[13] The following citations to the Second Amended Complaint are extensive but, for the sake of readability, not exhaustive.

- Refusing to interview witness, or even suspects positively identified by victims (Sec. Am. Compl. ¶¶52, 272, 328, 405; 423);

- Failing to test physical evidence left at the scene of reported rape crimes, and then destroying the evidence (Sec. Am. Compl. ¶¶45, 329-30, 421, 583(c)-(g), 646, 688);

- Advocating for, and imposing, one counseling session in response to an admitted sexual assault (Sec. Am. Compl. ¶¶372-374);

- Trying to convince victims they were at fault for being drunk or otherwise impaired at the time of the crime (Sec. Am. Compl. ¶241 ("On multiple occasions, female victims of sexual assault, including minors, were told . . . that rape was an appropriate consequence for irresponsible behavior."));

- "Warning" victims of rape crimes that, should they choose to go forward with reports, they would be shamed and publicized on social media (Sec. Am. Compl. ¶243);

- Yelling at victims who called the police to inquire as to the status of the investigation into their case (Sec. Am. Compl. ¶246);

- Instructing court officials to ignore victims, cutting off victims' access to the courts (Sec. Am. Compl ¶¶459-569, 495);

- Going into other jurisdictions to harass victims and witnesses (Sec. Am. Compl. ¶¶491-523);

- Misleading victims into not pressing charges, even while they were still in the hospital, possibly intoxicated (Sec. Am. Compl. ¶¶232, 397);

- Treating sexual assaults as a "learning experience" (Sec. Am. Compl. ¶377; *see also* ¶241 ("[F]emale victims of sexual assault, including minors, were told . . . that hopefully they had 'learned a lesson' about drinking.");

- Refusing to deal with victims' attorneys (Sec. Am. Compl. ¶¶520-23); and

- Misreporting the numbers of rape crimes and their outcomes to deceive residents or students with a false sense of security.

Plaintiffs' allegations, especially as to Defendant Hunton, are sufficient to warrant discovery.  There is no rational basis to allow discrimination against female victims of rape crimes but not victims of other class-based crimes.

Plaintiffs alleged that there was a conspiracy which involved the widespread, foreseeable, intentional denial of female victims' rights.  Sec. Am. Compl.

D.  <u>Defendant Hunton Participated in The Conspiracy</u>

A key element in a conspiracy is that the Defendants conspire, an element Defendant Hunton contends is missing.  Def.'s Mem. 3 fn.4.  (The Second Amended Complaint "is devoid of any factual allegations that UMBC imposed limitations . . . or otherwise sought to control or influence either investigation in any way.").  Defendant Hunton is incorrect, and Plaintiffs have properly alleged the existence of a conspiracy.

The Second Amended Complaint alleges that "Defendant Hunton's conduct throughout the proceedings reflected an intent to absolve the assailant and, thereby, her employer, Defendant UMBC, of any responsibility."  Sec. Am. Compl. ¶704.  Defendant Hunton's conclusions were "pre-ordained."  Sec. Am. Compl. ¶¶711, 832.  "The recommendation contained in the Final Report was the result Defendant UMBC had hired Defendant Hunton to obtain."  Sec. Am. Compl. ¶341.  Simply put, there was "an intentional effort by Defendants Hunton and UMBC to manipulate the outcome and conceal complaints of sexual assault, to the benefit of Defendant UMBC."  Sec. Am. Compl. ¶831.

Even had Plaintiffs not specifically alleged the conspiratorial links between Defendant Hunton and other Defendants, the circumstances surrounding her actions are so well coordinated with the other Defendants' acts and interests to lead to a plausible inference of conspiracy.  *See generally* Sec. Am. Compl.; *see also* Section II.C, *supra*.  For this reason, the conspiracy claims are well-pled.  Because of these interrelated acts and goals, the Second Amended Complaint sets forth "plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Twombly*, 550 U.S. at 556.[14]

E.  Defendant Hunton's Claim That She Is Incapable of Violating The Fourteenth Amendment Because She Is Female Should Be Rejected

1.  Defendant Hunton Must Be Held to Account for Her Fourteenth Amendment Violations, Regardless of Her Gender And The Gender of Her Victims

Playing to outdated stereotypes, Defendant Hunton argues that "contending that Hunton, who is female, would act intentionally to disadvantage other females only further highlights the frivolity of these claims."  Def.'s Mem. ¶24 fn.12.  Plaintiffs' allegations, while shocking, are not frivolous.

In support of her contention that her gender shields her from accountability, Defendant Hunton cites *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 103 (4th Cir. 2008).  Defendant Hunton argues that, even though, when "a [decision-maker] is a member of the same protected class as the plaintiff[s] does not preclude a successful discrimination claim, it substantially

---

[14] In *Twombly*, the plaintiffs were unable to state a conspiracy claim because the defendants had no business relations, and the facts alleged were entirely consistent with the defendants undertaking unrelated illegal acts, because those acts were "only natural anyway."  *Twombly*, 550 U.S. at 566.  Defendant Hunton's illegal acts alleged were not "what was only natural," she was an agent of UMBC, and it is implausible that she could have been able to discriminate so fragrantly without the other Defendants' agreement.  *Id.*

weakens any inference of discrimination."  Def.'s Mem. 24 fn.12 (quoting *Orgain*, 305 F. App'x at 103).  The language plucked from *Orgain* is dicta, unnecessary to the holding.  *Orgain* upheld *summary judgment* in the District Court because, after extensive discovery, the plaintiffs were unable to find any evidence to support their claims.  *Orgain*, 305 F. App'x at 103.  *Orgain* is inapposite, inappropriate, and should not have been cited in Defendant's motion.[15]

If the Court were to apply *Orgain* as a matter of law, as Defendant urges, civil rights violators could escape liability by hiring a protected class member who was willing to advance a discriminatory scheme.  *Orgain*, 305 F. App'x at 103.  Perhaps Defendants thought they had accomplished just this result.

### 2.  Defendant Hunton Was Hired to Give The Appearance of Non-Discrimination

This Court should reject Defendant Hunton's cynical view and evaluate the allegations in the Second Amended Complaint regarding Defendant Hunton with the proper presumption, *i.e.*, that they are true.  *See, e.g.*, Sec. Am. Compl. ¶681 ("Defendants were deliberately indifferent to Ms. Frank's rape in that they assigned a biased investigator to pantomime an investigation into the misconduct complaint made by Ms. Frank.  The investigation was a pre-ordained sham."); ¶704 ("Defendant Hunton's conduct throughout the proceedings reflected an intent to absolve the assailant and, thereby, her employer, Defendant UMBC, of any responsibility."); ¶334 ("Ms. Hunton acknowledged, and then ignored, the assailant's lie because the implications were incompatible with her goal of producing a report favorable to Defendant UMBC."); ¶344 ("Defendant UMBC's scheme to control and determine the outcome was successful.").

---

[15] Fourth Circuit Local Rule 32.1 ("Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored.").

Allowing Defendant Hunton to deny women their Constitutional and other legal rights because she happens to be a woman would be wrong.

III.   <u>Liability Pursuant to 42 U.S.C. §1986 Is Broader Than Liability Under 42 U.S.C. §1983</u>

Plaintiffs agree that their claim 42 U.S.C. §1986 against Defendant Hunton "is dependent upon the existence of a claim under §1985." Def.'s Mem. 31 (quoting *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985)).  Plaintiffs' 42 U.S.C. §1986 claim is not contingent, however, on Defendant Hunton's *participation* in the §1985 conspiracy, only in her "power [and failure] to prevent or aid in preventing the commission of the" conspiracy.  42 U.S.C. §1986.

Liability pursuant to 42 U.S.C. §1986 "for all damages caused" is broader than liability under §1983, and is appropriate against "[e]very person" who knew about a conspiracy and could have "prevent[ed] or aid[ed] in preventing the commission of the same."  42 U.S.C. §1986.  A defendant need not be a state actor, or even operating "under color of law," to be liable.

Thus, whether or not Defendant Hunton was a part of the conspiracy (which she was), is irrelevant.  What is relevant in the §1986 context is that Defendant Hunton could have stopped the conspiracy, which, as is properly alleged, she could.  *See, e.g.*, Sec. Am. Compl. ¶818.  Specifically, Defendant Hunton could have stopped, or lessened, the conspiracy by not participating or by speaking out against the injustice she was hired to perpetrate.  *See, e.g.*, Sec. Am. Compl. ¶¶318-334.

IV.   <u>Defendant Hunton Not Entitled to Qualified Immunity Because She Knowingly Violated Clearly Established Rights</u>

"§1983 immunity does not automatically follow §1983 liability."  *Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (There is "nothing special enough about the job or about its organizational structure that would warrant providing these private prison guards with a governmental immunity," despite being hired by the State to perform an essential State

function.).  This Court must still determine "[w]hether the immunity doctrine's *purposes* warrant immunity."  *Id.* at 407.

Whether because qualified immunity is not appropriate for those in Defendant Hunton's position, because of her bad-faith and knowing violations of clearly established rights, or her complete lack of justification for gender-based discrimination, she is not entitled to qualified immunity.

A.  Defendant Hunton Is Not Automatically Entitled to Qualified Immunity

Defendant Hunton contends that "she is entitled to qualified immunity under a wealth of precedent, including the Supreme Court's unanimous decision in *Filarsky v. Delia*, 566 U.S. 377 (2012)."  *Filarsky*, at most, holds that Defendant Hunton *may* be entitled to "*seek* the protection of qualified immunity."  *Filarsky*, 566 U.S. at 393-94 (emphasis added); *see also id.* at 394-95 ("Qualified immunity may be overcome [where] the defendant knew or should have known that his conduct violated a right 'clearly established' at the time.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Ginsburg, J., Concurring).

Defendant Hunton may be entitled to *seek* qualified immunity.  She would not qualify for it, however.

B.  Defendant Hunton Is Not Entitled to Qualified Immunity Because She Knowingly
     Violated Clearly Established Rights

Under the doctrine of qualified immunity, public officials are shielded from liability under 42 U.S.C. §1983, and similar statutes, only where "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity is most often applied where government employees guess poorly,

but not unreasonably, where there was no clear answer.[16]   Qualified immunity is designed to

protect government officials, who are otherwise acting in good faith to perform their duties, from

close calls in gray areas, especially when snap judgments are required.  *Iko v. Shreve*, 535 F.3d

225, 238 (4th Cir. 2008) ("Officials are not liable for bad guesses in gray areas.").  Defendant

Hunton was operating in neither good faith[17] nor "gray areas."  Defendant Hunton was not

required to make snap judgments; to the contrary, her purported mandate was to perform

"independent investigations on behalf of [a] higher educational institution."  Def.'s Mem. 2.

1.   Defendant Hunton Cannot Use Qualified Immunity to Avoid The Heavy Burden of
     Justifying Gender-Based Discrimination.

"Parties who seek to defend gender-based government action must demonstrate an

'exceedingly persuasive justification' for that action."  *United States v. Virginia*, 518 U.S. 515,

531 (1996).  Defendant Hunton's qualified immunity hinges on whether "a reasonable person

would have" believed Defendant Hunton's "gender-based government action" had "an

'exceedingly persuasive justification.'"  *Id.*; *Mullenix*, 136 S. Ct. at 308.  No reasonable person

could have believed Defendant Hunton's gender-based action alleged in the Second Amended

Complaint was justified, much less with an "exceedingly persuasive justification."  *Virginia*, 518

U.S. at 531; *see also* Sec. Am. Compl.

Defendant Hunton cannot justify disparate treatment based on gender, and does not try to.

Instead, Defendant Hunton contends that "[c]omparing female victims of sexual assault to

---

[16] *See, e.g.*, *Scott v. Harris*, 550 U.S. 372 (2007) (use of force in ending a car chase); *Pearson*, 555 U.S. 223 (entering a house after a suspect has given consent to an undercover informant, who saw contraband in plain view); *Saucier v. Katz*, 533 U.S. 194, 196 (2001) (use of force in removing a protester).

[17] In any event, good faith is a question for a fact finder.  *Savina v. Gebhart*, 497 F. Supp. 65, 67 (D. Md. 1980) ("[T]he very concept of good faith denotes a conclusion reached after an evaluation of the facts of the case.").

victims of other crimes does not establish a sex- or gender-based classification."  Def.'s Mem. 10.

However, as the Second Amended Complaint properly alleges, "Nine percent (9%) of sexual

assault victims are male, while ninety-one percent (91%) of sexual assault victims are female."

Sec. Am. Compl. p.5 (citing U.S. Dep't of Just., Off. of Just. Progs., Bureau of Just. Stats.,

Rennison, C. M., *Rape and sexual assault: Reporting to police and medical attention, 1992-2000*

(Aug. 2002)).

Defendant Hunton also contends that "Plaintiffs have failed to identify any similarly

situated class of people whose legal rights were protected to a greater degree."  Def.'s Mem. 21.

However, "[d]ifferent practices exist for crimes that do not disproportionately affect women."

Sec. Am. Compl. ¶56; *see also* Sec. Am. Compl. ¶363 ("Defendants [] treat prison rape, which

disproportionately affects men, seriously.").

Defendant Hunton did not, and cannot, justify her disparate treatment.

2. Qualified Immunity Does Not Protect The Plainly Incompetent Or Those Who
   Knowingly Violate The Law

Qualified immunity cannot, and does not, protect those who knowingly infringe the rights

of a person or group, even if they cannot identify exactly which rights they are trampling.  *White*

*v. Pauly*, 137 S. Ct. 548, 551 (2017) (noting that qualified immunity does not protect "'the plainly

incompetent or those who knowingly violate the law'") (quoting *Mullenix*, 136 S. Ct. at 308).

Plaintiffs have identified and plausibly alleged Defendant Hunton's wrongful acts, acts

Defendant Hunton knew (and reasonably should have known) were wrongful.  For that reason

alone, Defendant Hunton's 12(b)(6) motion fails.  If Defendant Hunton committed such acts, as

alleged in the Second Amended Complaint, she was either "plainly incompetent," or she

"knowingly violated the law."  *White*, 137 S. Ct. at 551.  Defendant Hunton seeks qualified

immunity because no one has ever been caught doing something quite as brazen as these

Defendants.[18]  Nor has anyone ever continued violating women's rights after multiple exposés, ignored or bypassed "independent" reviews, outright threatened crime victims based on who those victims are, and blamed victims for what a criminal has done to them.

> 3.  The Second Amended Complaint Alleges That Defendant Hunton And The Other Defendants Were Knowingly Violating The Law

No reasonable person could have believed that an admitted rapist deserved a single counseling session, while allowing him to remain on campus and forcing his victim, Ms. Noland, off campus.  Sec. Am. Compl. ¶¶826-27.

No reasonable person could have believed that it was acceptable to conduct a statutorily-mandated Title IX Investigation, as a supposedly independent party, with a preordained conclusion (and while, as she now claims, possibly representing the University).  Sec. Am. Compl. ¶711.

No reasonable person could have believed that it was acceptable to deceitfully "create[] a false impression that the campus was relatively free of sexual assaults on women."  Sec. Am. Compl. ¶706.

No reasonable person could have believed that it was acceptable to "allow[] and encourage[] Ms. Frank's roommate's mother to make statements to Defendant Hunton regarding the roommate's supposed (and entirely uncorroborated) belief that Ms. Frank 'brought it [the

---

[18] Excepting, of course, most of these Defendants.  *See* Sec. Am. Compl. ¶102 ("On October 13, 2015, the Baltimore Post Examiner published an article that detailed UMBC's failure to record valid reports of rape and sexual assault on campus."); ¶103 ("[O]n September 8, 2016, the website 'Buzzfeed' reported that rape victims were [still] being mistreated in Baltimore County."); ¶¶117-25 (describing the Report on the findings of the 2016 Audit, including Defendants' "victim blaming," evidence destruction, inappropriate questioning, "inadequate investigation," and "deliberate refusal to investigate the actual elements of sexual assault crimes.").

violent rape] on herself,'" and intentionally "den[y] Ms. Frank any opportunity to cross examine the roommate or the mother regarding these purported statements."  Sec. Am. Compl. ¶¶701-02.

Defendant Hunton did all of these, and more (*supra*, Sections I.B, II.C), and now seeks to short-circuit the judicial process.[19]

### 4.  Defendant Hunton Has No Justification for Her Gender-Based Government Action

Defendant Hunton's actions plausibly alleged in the Second Amended Complaint constitute discrimination based on gender.  Defendant Hunton advances no justification, "exceedingly persuasive" or otherwise (*Virginia*, 518 U.S. at 531), to intentionally deprive members of a class of persons of an effective government, in violation of their rights, and then conspire to hide that deprivation from the other members of the protected class.  The Constitution does not permit government employees (or their agents) to decide who receives governmental protection and services based on the gender of the victim, without an "exceedingly persuasive justification."  *Virginia*, 518 U.S. at 531.  The Constitution cannot permit investigators to harass and intimidate, based on gender or not.  *Wakat*, 253 F.2d at 65 (citing *Truax*, 257 U.S. at 332).

No reasonable person could have done what Defendant Hunton did and still believed they were acting in a lawful, let alone reasonable, manner.

### 5.  Defendant Hunton Violated Clearly Established Rights

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

---

[19] If this Court is disposed to consider Defendant Hunton's resume, it should conclude that she was not "plainly incompetent," she was malicious.

The rights Defendant Hunton violated are clearly spelled out in caselaw, statutes, the Constitution, and common sense. *See supra*, Section I.B. ("Defendant Hunton Violated Well-Established Rights"); *see also supra*, Section IV.B.3. ("The Second Amended Complaint Alleges That Defendant Hunton And The Other Defendants Were Knowingly Violating The Law").

V.   <u>Summary Judgment Is Inappropriate And Unwanted At This Stage</u>

In non-compliance with the Rules regarding a motion to dismiss, Defendant Hunton has included four exhibits, which purport to be: (1) her "Attorney Profile" with her firm; (2) the Final Investigative Report of Katelyn Frank Allegations; (3) the Final Investigative Report of Kaila Noland Allegations; and (4) UMBC's Interim Procedures for Reporting and Responding to Reports of Sexual Misconduct.[20]   Consideration of matters outside of and not integral to the pleadings would convert the Motion to Dismiss into a Motion for Summary Judgment, though neither Defendant Hunton nor Plaintiffs desire or have requested summary judgment. *See* Rule 12(d).

Summary judgment before any discovery has taken place would be completely unjust. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

---

[20] While UMBC's Sexual Assault Investigation Policies are not integral to the Complaint, Plaintiffs do not object to the Court's consideration of the Policies insofar as the document submitted likely reflects what UMBC's written Title IX Investigation policies were at the time of Defendant Hunton's Investigations.  Plaintiffs do not admit, nor does the exhibit establish, that the policies were fair, reasonable, legally sufficient, followed, or fairly enforced.

Defendant Hunton, apparently in an attempt to prove her defense before it is appropriate, incorrectly argues that the "Court may appropriately consider the exhibits attached to this motion without converting it [in]to one for summary judgment because 'under Rule 12(b)(6), documents explicitly incorporated into the complaint by reference, documents attached as exhibits,[21] and [other] documents submitted by a movant' that 'are integral to the complaint and authentic are considered.'" Def.'s Mem. 2 fn.2 (quoting *Sullivan v. City of Frederick*, 738 F. App'x 198, 199 (4th Cir. 2018)).

Defendant Hunton is incorrect, and consideration of these materials is inappropriate.

A.  Exhibit 1, Defendant Hunton's "Attorney Profile"

Defendant Hunton's "Attorney Profile" is not "integral to the complaint." *Philips*, 572 F.3d at 180.  Because the "Attorney Profile" was not "integral to, and was [not] relied upon in, [the] complaint," it should not have been attached.  *Blankenship v. Manchin*, 471 F.3d 523, 526 fn.1 (4th Cir. 2006) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).  A document being "integral to the complaint" is more than just being referenced (which the Attorney Profile was not).  An integral document must bear some "independent legal significance" in establishing the Plaintiffs' claims.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015)).

Defendant's "Attorney Profile" is not mentioned anywhere in the Complaint, is not attached to the Complaint, and the Attorney Profile is not integral to the complaint itself.  There is no independent legal significance to the Attorney Profile.  *Goines*, 822 F.3d at 166.  The Court should strike the Attorney Profile.

---

[21] There were no documents attached as exhibits to the Second Amended Complaint.

At best, the Attorney Profile is entirely unverified hearsay, and cannot be considered at any stage without verification, at least. *See* Fed. R. Ev. 801-807.

B. <u>Exhibits 2 and 3, The Final Investigative Reports of Katelyn Frank's And Kaila Noland's Allegations</u>

The Final Investigative Reports in the Title IX Investigations are not "integral to the Complaint."  The Second Amended Complaint notes that both the Investigation into Ms. Frank's and Ms. Noland's reports of sexual assault ended in the manner evidenced by these Final Reports.  Sec. Am. Compl. ¶¶338-41, 372-77.  However, neither report bears any "independent legal significance" in establishing the Plaintiffs' claims, as they show the unjust result without fully revealing the unjust process.  *Goines*, 822 F.3d at 166.  The reports are also full of hearsay. Fed. R. Ev. 801-07.

The Final Investigative Reports are not damaging to Plaintiffs' claims, and that Defendant Hunton issued the conclusions in the Final Reports is not in dispute.  *See, e.g.*, Sec. Am. Compl. ¶¶278-365; ¶¶366-378.  Thus, Exhibits 2 and 3 do not contradict the Second Amended Complaint, and even if this Court were inclined to consider them, they could not form the basis for dismissal or summary judgment.

Conclusion

For the reasons stated herein, the Second Amended Complaint plausibly states claims for relief against Defendant Hunton, and the Motion to Dismiss should be denied.

<u>Request for Hearing</u>

Pursuant to Local Rule 105.6, Plaintiffs respectfully request a hearing on the issues

addressed in this Plaintiffs' Memorandum in Opposition to Defendant Bernadette Hunton's

Motion to Dismiss And Request for Hearing.


      <u>    /S/ Rignal W. Baldwin V     </u>
      Rignal W. Baldwin V
      Federal Bar No.: 30136
      Stephen C. Rigg
      Federal Bar No.: 19891
      BaldwinLaw, LLC
      111 South Calvert Street
      Suite 1805
      Baltimore, Maryland 21202
      Telephone: (410) 385-5695
      Facsimile: (443) 703-7772
      *Attorney for Plaintiffs,*
      *Anna Borkowski, Katelyn Frank, Marcella Fegler*
      *Annemarie Hendler, and Kaila Noland*