Six Recommendations in February 1, 2017 Memorandum of Findings and Recommendations from Kevin B. Kamenetz Re: Review of Baltimore County Unfounded Rape Cases.

1. Sex Crimes detectives are conducting interviews with both victims and suspects in sexual assault cases that are handled by SVT. The report references "Subtitle 3, Sexual crimes, sexual abuse crimes in subtitle 6, and in cases involving sex trafficking with the exception of misdemeanors based upon age." Without having the remainder of the document that is referenced, I can't answer for sure whether we should be handling more investigations than are currently our investigative responsibility.
2. Maryland's sexual assault statutes were updated and took effect on October 1, 2017 broadly expanding the definitions of various degrees of rape. The terms "by force, or the threat of force, without the consent of the other" still appears in both First Degree Rape CR 3-303 and Second Degree Rape CR 3-304. In my interpretation, resistance to the force is not required to meet the elements of the crime; however, resistance is usually discussed while staffing the case with the SAO. I do not know how resistance does, or does not, affect the SAO's decision to prosecute.
3. The Baltimore County Police Department does track cases received from various residential facilities as these are captured during FBR procedures using the SF codes and location codes. I have met with Crime Analysis Director Tricia Rothlingshofer about developing a regular search that would give a snapshot of these reports. This should also enable them to identify similarities in cases and potentially identify serial offenders. We are meeting later this week to discuss the format and timeframe of these searches.
4. A. The Baltimore County Police Department does receive training in responding to individuals with mental illness and cognitive disabilities. Our department has conducted training for over twenty years specifically geared toward this topic and has evolved that training over time. This training has involved a multitude of experts in the field as well as advocacy groups for affected individuals. I personally have been involved in this training for most of the twenty years since my brother's suicide as the result of mental illness.
B. The Baltimore County Police Department has received training in Trauma-informed interviewing. BCoPD's 2018 In-Service training program has a segment dedicated to this topic and is currently taught by Cpl Mo Greenberg of CACU.
C. I am unaware of any specific training that is conducted as it relates to cases involving intoxication. I do know that the SAFE program at GBMC typically does not conduct their exams nor interviews while the victim is in a current state of intoxication. SVT detectives will typically try to garner what information they can in the early stages of an investigation regardless of the state of intoxication because of the urgency in identifying, protecting and preserving crime scenes. Follow up interviews are then conducted after the victim is of clearer mind.
5. Communication between the Police Department and SAO has increased with formal staffing of all cases. These meeting occur bi-weekly at the SVT office and are documented in detail in the SAO records and summarized in a spreadsheet maintained in SVT. Further, the results of the staffing should be captured in an FBR supplement in each individual case. All cases are staffed and discussions include force used, resistance offered by victim, mental capacity of victims and any other facet in the case that is necessary in determining the elements of the crime, thoroughness of the investigation and viability of prosecution.

6. The Police Department plays an active role in the county's SART. Multiple members of SVT and CACU attend meetings regularly and contribute to meaningful discussions as well as action items. I am on the email distribution list for the group and recently asked for a recent topic to be put on the agenda, actively participating in the group's mission. Further, I have made my contact information available to every member of the SART on a 24 hour basis. I recently wrote a letter in support of continued funding of this committee.

I believe the memorandum raises a few questions where the solution is ongoing. SVT detectives were sent to training for specialized interview techniques shortly after these findings were presented. I would like to formalize a training requirement for any new members of SVT in the future to ensure continued adherence to these guidelines.

Currently under review:

1. Case tracking, file review and file storage
2. Continuity of Case status and UCR disposition reporting
3. Wording of, and use of, the Release Authorization form. Interpretation and implementation of the VAWA laws.
4. Proper training of all detectives and supervisors
5. Audio/video recording of victims as well as suspects
6. Properly delivering advocacy services while performing the investigative role
7. Continuing to access personnel levels as well as sufficient supervision.
8. Preparing statistical justification to apply for cold-case grant funding and/or personnel
9. Continuing to improve upon customer service and the victim centered approached to investigations.