Baltimore County Sexual Assault Investigations Task Force

# Report of Findings and Recommendations

September 2019

# Table of Contents

Introduction ........................................................................................................................ 2

Audit ................................................................................................................................... 4

    Audit of Case Files ........................................................................................................ 4

    Audit of 911 Calls for Service ...................................................................................... 6

    Response to 2017 Audit of Unfounded Cases .............................................................. 7

Best Practices ..................................................................................................................... 8

    Inventory of Best Practices ........................................................................................... 8

    Forensic Laboratory Policies and Procedures .......................................................... 10

Recommendations ............................................................................................................ 11

Glossary ............................................................................................................................ 21

Exhibits ............................................................................................................................. 24

## Introduction

On February 25, 2019, Baltimore County Executive Johnny Olszewski, Jr. announced the formation of a Sexual Assault Investigations Task Force.  The Task Force was convened to review, revise, and improve practices and procedures related to sexual assault investigations and prosecution of allegations of sexual assault.

The Task Force was asked to do the following:

- Review data related to sexual assault investigations, ensuring proper tracking and accountability mechanisms are in place.
- Assess resources available for investigating sexual assault complaints and testing old and new rape kits, and make adjustments as necessary.
- Examine current investigation and prosecution policies, practices, and training related to sexual assault complaints.
- Make adjustments to police and prosecution policies and practices as appropriate to align with national best practices.
- Review training for law enforcement officials involved in the response to sexual assault allegations, ensuring investigations are victim-centered and trauma-informed.
- Research and recommend implementation of national best practices including the International Association of Chiefs of Police (IACP) Trauma Informed Sexual Assault Investigation Training, which provides law enforcement and multi-disciplinary partners with information on the neurobiology of trauma and investigative strategies to respond to sexual assault crimes in a victim-centered, trauma-informed manner.
- Support the work of the SART (Sexual Assault Review Team).

The Task Force members are:

- Sheryl Goldstein, Task Force Chair
- David Thomas, Program Manager, International Association of Chiefs of Police
- Rosalyn Branson, CEO of TurnAround, Inc.
- Laura Clary, Program Manager, GBMC SAFE Program
- John Cox, Deputy State's Attorney, Baltimore County State's Attorney's Office
- Lt. Brian Edwards, Commander of the Baltimore County Police Department's Special Victims Unit
- Nadia BenAissa, student at UMBC, co-chair of the Retriever Courage Student Advisory Committee and president of UMBC's We Believe You survivor activist and advocacy group

In addition, Drew Vetter, Deputy County Administrative Officer, and Lisa Morris, Legal Secretary, provided staff support to the Task Force.  Katherine McMullen, Analyst at the Abell Foundation, provided significant support to the Task Force including designing the audit database, analyzing the audit data, drafting the audit report, conducting the best practice

review regarding Sexual Assault Forensic Exam ("SAFE") kit testing and documenting these findings and assisted in drafting this final report.

The Task Force held four meetings (March 15, April 26, May 31 and June 28, 2019) and created an audit committee, a best practices committee, and a training committee.  In between meetings, members worked on assessing local and national best practices and conducting an extensive audit of sexual assault cases. The audit committee produced a detailed audit report and the best practices group created a document that summarizes current practices in Baltimore County and national best practices.

This report contains the audit findings, the best practices review, a statewide assessment of SAFE kit testing protocols, and recommendations for Baltimore County's sexual assault system.

# Audit

## Audit of Case Files

Sheryl Goldstein, John Cox, Brian Edwards, Rosalyn Branson, Nadia BenAissa, Drew Vetter and Katherine McMullen were members of the audit committee and participated in the audit. Laura Clary was on call for any audit committee questions related to GBMC's role in particular cases.[1]

In order to determine which cases to include in the audit, the Task Force agreed to review a subset of all sexual assault cases that were reported during the three-year period between 2016 and 2018.  During this three year period, there were 649 sexual assault cases, including 114 cases of First Degree Rape or Sex Offense and 535 cases of Second Degree Rape or Sex Offense.[2] The Task Force decided to exclude all cases handled by the Crimes Against Children Unit ("CACU"), which handles all cases with victims younger than 12, since the Task Force was focused on practices within the Special Victims Unit ("SVU").[3]  Of these 649 cases:

- 15% resulted in arrest (99 cases)
- 29% were exceptionally cleared (191 cases)
- 12% were unfounded (80 cases)
- <1% involved juveniles waived to adult status (5 cases)
- 42% were still open as of April 2019 (274 cases)

The Task Force determined that the audit committee would audit all First Degree cases from the time period (114), along with all Second Degree Unfounded cases (68 cases), and a random selection of 50 Second Degree Exceptionally Cleared cases. The Task Force decided to review all of the First Degree cases since they are the most serious sex offense that may be charged.  The remaining cases reviewed were either unfounded or exceptionally cleared in order for the Task Force to gain a deeper understanding about the policies and practices that result in cases being coded unfounded or exceptionally cleared.  The Task Force focused its review on closed cases and cases that were not subject to an active, current investigation. There were 213 cases selected for the audit which represents 36% of the total universe of cases for the three-year period.  The audit committee used the form attached as Exhibit 1 to conduct the audit.

Of the 213 cases reviewed, 99 were First Degree cases and 114 were Second Degree cases. Because the Task Force was interested in reviewing cases that had been unfounded or exceptionally cleared, the sample of cases is overly representative of these outcomes and is not

---

[1] The Audit Committee would like to thank the Baltimore County Police Department for their work in preparing for the audit, and responsiveness to follow-up questions. The Audit Committee would also like to extend a specific thank you to Police Assistant Jeff Ray, who provided extensive logistical support and information to the Task Force throughout the audit.

[2] See Maryland Criminal Law Sections §3–303 to §3–312 available at https://www.dpscs.state.md.us/onlineservs/sor/sor_crimes_article.shtml#_Toc280276142.

[3] See the Glossary Section for definitions of these terms.

representative of the outcomes for all sexual assault cases in Baltimore County from 2016-2018.

Of the 213 cases reviewed:
- o   13% resulted in arrest (27 cases)
- o   33% were exceptionally cleared (70 cases)
- o   1% were open–active (3 cases)
- o   21% were open–suspended (45 cases)
- o   32% were unfounded (68 cases)

As a result, the majority of cases reviewed in the audit (65%) were exceptionally cleared or unfounded. The Audit Committee collected both objective and subjective information in the audit and found that in *most* cases reviewed:

- A full or partial investigation was conducted by the police department (75%)
- The victim initiated the police investigation of the case (64%) (as opposed to a third party, such as a parent or school counselor, initiating police contact with the victim)
- In cases in which an investigation was conducted, it was found to be unbiased and offender focused 79% of the time
- If a rape kit was collected as part of the investigation, the kit was not tested (78% of 72 kits collected)
- A suspect was identified (80%)

In addition:

- There was not a consultation with a prosecutor regarding whether the case should be charged in at least 52% of cases.[4]
- If there was a consultation with a prosecutor, the prosecutor declined to charge the case in 56% of the 76 cases reviewed.
- If the case was prosecuted, the defendant was found guilty in 64% of the 33 cases.

Waiver forms were signed in 36% of all cases reviewed. Waiver forms were used by Baltimore County Police Department when documenting sexual assault victims' declination of a police investigation and/or a SAFE exam. By signing the waiver form, the victim gave consent for the police to immediately stop investigating the case. In January 2019, the Baltimore County Police Department ceased the practice of using waiver forms.

Qualitatively, the audit found:
- Police and prosecutors experienced challenges interviewing victims with disabilities and mental health issues which may have impacted investigations and charging decisions.

---

[4] There was definitively not a consultation with a prosecutor in 52% of cases. In an additional 24% of cases, it was unclear as to whether there was a consultation. In 23% of cases, the auditors were able to confirm a consultation with a prosecutor occurred.

- Police experienced challenges interviewing victims under the age 16 and investigating these cases
- Cases that involved delayed reporting were rarely charged.
- Despite recent changes in the law in October of 2017 clarifying that resistance by the victim is _not necessary_ to legally meet the definition of rape, in some case files reviewed from 2016-2018 where the case was not pursued, there were questions about the lack of resistance including information suggesting that some police and prosecutors continue to consider resistance when pursuing investigations and prosecutions[5].
- Training and education about victim responses to trauma would benefit all system partners.

The audit provided invaluable information that helped inform many of the recommendations in this report.  The audit report, with specific findings is attached to this report as Exhibit 3.

## Audit of 911 Calls for Service

In an effort to go beyond the audit, the Task Force engaged John Skinner, Criminal Justice Professor at Towson University and retired Deputy Police Commissioner and 21-year veteran of the Baltimore City Police Department, to conduct an analysis of 911 calls for service from 2016-2018 that were related to allegations of sexual assault. Mr. Skinner identified 187 calls for service with an allegation of sexual assault that were handled and closed at the patrol level. The analysis found that patrol officers had a wide range of discretion in the response and disposition to calls for sexual assault, most notably whether or not to write a police report, and/or how to classify a police report.

In addition, it appeared that there was no uniformity in how the officers documented their findings and results. Though these cases may have been handled properly by the patrol officers, the analysis revealed a system where incidents of sexual assault could be downgraded or potentially mishandled prior to receiving the attention and response from an SVU detective. Further, Mr. Skinner identified similar concerns in a number of calls involving child victims.

Mr. Skinner also noted that Baltimore County's 911 call takers collect and provide a wider breadth of more detailed information than other jurisdictions for which he has performed audits. The more detailed call notes are a positive, and highlight that the team answering 911 calls is well-trained.

---

[5] In the sexual assault context, force does not always refer to physical force. Perpetrators may use other means such as emotional or psychological coercion, or other intimidation tactics.  The lack of physical resistance does not equate to consent.  The updated section of the law is attached as Exhibit 2 to this report.

Mr. Skinner recommended the following:

1. The Baltimore County Police Department should consider eliminating the level of discretion patrol officers have when responding to calls for service for incidents of sexual assault. This could take the form of requiring the patrol officer to consult with SVU before making a determination about the case and requiring the patrol officer to write a report of the incident.  By making the process more controlled, the opportunities for incidents of sexual assault to slip through the cracks would be decreased.
2. The Department should perform an audit of calls for service for incidents of sexual assault annually. In order to efficiently perform these audits, the Department should streamline the coding in its calls for service management system so that audit process of the calls does not require extensive data cleaning work to perform.


## Response to 2017 Audit of Unfounded Cases

In January of 2017, a review was conducted of 124 unfounded sexual assault cases in Baltimore County from 2013-2015 at the request of then County Executive Kevin Kamenetz.  The results of the 2017 audit included a series of six recommendations:

1. A continuation of the policy requiring sex crimes detectives to interview both victims and suspects in sexual assault cases. As part of this policy, cases involving a complaint of sexual assault should not be labeled "unfounded" unless a sex crimes detective has reviewed the case after investigation.
2. Maryland's sexual assault statutes should be clarified and modernized to make it clear that rape victims are not required to physically resist sexual assault.
3. The BCPD should implement a tracking system for cases originating from residential facilities, such as assisted facilities, nursing homes, residential treatment centers, etc., to track trends and identify possible serial cases.
4. The BCPD should receive intensive training in the following areas:
   a. Responding to individuals with mental illness and cognitive disabilities;
   b. Trauma-informed interviewing
   c. Cases involving intoxication (drug and alcohol facilitated sexual assault)
5. Communication between sex crimes detectives and the Baltimore County State's Attorney's Office should be increased and documented.
6. The County's Sexual Assault Response Team (SART) should be strengthened and law enforcement should be required to attend.

While there has been progress on these recommendations, there is still work to be done with respect to recommendations 3, 4 and 5.  More detail about the status of these recommendations can be found at the end of this report.

# Best Practices

## Inventory of Best Practices

The Task Force conducted an inventory of existing agency practices and researched national best practices on sexual assault investigations and prosecutions.  The chart on the next page includes this information. The Task Force also conducted a review of local and national best practices related to testing rape kits, which is attached as Exhibit 4.

| Organization | Current Policies | National Best Practice |
|---|---|---|
| Baltimore County Police Department | No formal written stand-alone policy on Rape and Sexual Assault investigations.<br>Some written policies included in Field Manual.<br>Some written directives from SVU supervisor.<br>Special Order 2017-2 regarding preservation of biological evidence in sex offense and rape cases. | Adopt a formal written policy for Rape and Sexual Assault Investigations<br>Resources:<br>IACP Model Policy (October 2017)<br>https://www.evawintl.org/Library/DocumentLibraryHandler.ashx?id=93<br><br>Baltimore City Police Department Rape and Sexual Assault Policy (December 2018)<br><br>PERF Executive Guidebook<br>https://www.policeforum.org/assets/SexualAssaultResponseExecutiveGuidebook.pdf<br><br>IACP Sexual Assault Supplemental<br><br>TIVI Guidelines<br><br>IACP Training Guide 509 on Drug Facilitated Sexual Assaults |
| Baltimore County Office of the State's Attorney | No written policies.<br>There are four prosecutors in the Sex Offense and Child Abuse unit. Prosecutors in other divisions, including Juvenile and Domestic | Vertical Prosecution<br><br>Aequitas Model Response to Sexual Violence for Prosecutors<br>https://aequitasresource.org/wp-content/uploads/2018/09/Model-Response-to-Sexual-Violence-for-Prosecutors-RSVP-An-Invitation-to-Lead.pdf |

| | Violence, also handle sexual assault cases. | National Sexual Assault Investigation and Prosecution Best Practices Guide (NDAA, 2018)<br><br>National Sexual Assault Violence Resource Center Best Practices for Prosecution 2018<br>https://www.nsvrc.org/sites/default/files/publications/2018-09/Best%20Practices%20for%20Prosecution.pdf |
|---|---|---|
| GBMC | Written policies on training requirements and how to process cases based on decision tree. Written legal policies in concert with the National Protocol for Conducting Medical Forensic Exams. | A National Protocol for Sexual Assault Medical Forensic Examinations Adults/Adolescents (OVW, April 2013)<br><br>National Training Standards for Sexual Assault Medical Forensic Examiners (OVW, August 2018) |
| TurnAround | Provided HelpLine Protocol | VAWA Model Policy on Confidentiality and Privacy for Community-Based Domestic Violence/Sexual Assault Advocacy Programs (2005)<br><br>Police Executive Research Forum Executive Guidebook<br>https://www.policeforum.org/assets/SexualAssaultResponseExecutiveGuidebook.pdf |
| UMBC | UMBC has written policies regarding sexual misconduct, interpersonal violence, and related misconduct. These policies were last revised on August 28, 2019.<br><br>https://courage.umbc.edu/policies/ | American Association of University Professors Campus Sexual Assault Suggested Policies and Procedures<br>https://www.aaup.org/report/campus-sexual-assault-suggested-policies-and-procedures<br><br>National Association of Independent Colleges and Universities<br>https://www.naicu.edu/policy-advocacy/issue-brief-index/regulation/sexual-assault-on-campus |

## Forensic Laboratory Policies and Procedures

The Task Force also explored statewide lab practices for handling and testing SAFE kits.  There are six law enforcement operated laboratories in Maryland that test SAFE kits.[6]  There is a great deal of disparity between the way each lab handled testing of kits.  Attached as Exhibit 5 to this report is a chart demonstrating prior lab practices.[7] The new State legislation should result in more uniformity in testing practices throughout Maryland (please see Exhibit 6 for a copy of this legislation).

The Baltimore County Police Department Crime Lab engaged in the following practices:
- Kits are tested only at the request of the investigating detective. In other words, the detective has the responsibility to request the lab test the kit. This leaves open the possibility that a kit was not tested based on the discretion of a detective.
- The forensic lab does both serology and DNA analysis, but is moving towards a direct-to-DNA approach wherein the most probative samples would be put forward to DNA analysis immediately. This should improve turnaround time.
- The lab tests kits in-house but outsources some testing to BODE Technology Group due to resource constraints.
- The costs for testing kits in Baltimore County ranges from $978-$5000 per kit.  The cost varies depending on the number of samples tested and other factors.  The national average for testing kits is $1000-1500.
- The average turnaround time for testing a kit is six to nine months. This timeframe is longer than national and Maryland averages.
- The lab's retention policies, set by Baltimore County Police Department, now conform to state law, with twenty years being the standard. The Department's policy goes beyond the state mandate to retain SAFE kits for 20 years and requires that biological evidence in rape investigations to be retained for 75 years if the suspect is unidentified. Previously, the Baltimore County Police Department did not have a publicly available written retention policy specific to SAFE kits. Prior to 2017, retention practices included retaining anonymous kits for one year. If the victim did not contact the police department to initiate an investigation within the one year period, the kit was destroyed. Based on anecdotal reports, it appears that some SAFE kits were retained for the full year, but some were not. As there was no definitive retention policy specific to SAFE kits, the Task Force did not assess past retention practices.
- Baltimore County's lab tested 41 SAFE kits between 2016 and 2018.  It expects to test up to 150 kits per year with the implementation of the revised version of Maryland Code, Criminal Procedure § 11-926.
- The lab had two vacancies in its DNA unit as of June 2019.
- SVU and the biology unit have a shared spreadsheet tracking the status of each kit, its testing status, and whether it has been entered into CODIS.

---

[6] There are also several private labs which the law enforcement and the public labs contract with to test kits.
[7] The Task Force would like to thank the directors of the crime labs for their willingness to share their time, knowledge and practices.

## Recommendations

The Task Force recognizes that under the leadership of County Executive Olszewski and Lieutenant Brian Edwards, the Baltimore County Police Department implemented changes prior to and during the tenure of this Task Force.  These changes to policy and practice are noted in this section of the report.

**Recommendation 1:**  The Baltimore County Police Department should draft and implement a comprehensive sexual assault investigations policy to govern all sexual assault cases.  This policy should be modeled after the IACP Model Policy and Baltimore City Police Department's policy.

**Status:**  The Baltimore County Police Department has created a project plan and tracking mechanism to create this policy.  Lieutenant Edwards is leading this effort and working closely with the Planning and Research Department.

**Anticipated Completion Date:**  January 2020

**Recommendation 2:**  The Baltimore County Police Department should improve work and interview spaces at headquarters to support the SVU.

**Status:**  The Baltimore County Police Department has developed a plan to construct a new victim interview room to create a more appropriate environment for victim interviews.  There is also a plan to create improved space for the unit and its staff.  Currently, the Department has improved one of its existing interview rooms, but recognizes the importance of constructing a room that has clear separation from suspect interview rooms and is more victim centered. Baltimore County Building Services, partnered with The Police Department and Mission 14, a nonprofit group, for the interior design of the interview suite. The result was a comprehensive plan to locate space, design, build and decorate a 'soft' interview room for victims of sexual assault and human trafficking. The estimated start date of the project is October 1, 2019 with an estimated completion date November 11, 2019.

GBMC has a victim-friendly interview room at the hospital which Baltimore County SVU detectives are using as appropriate to interview sexual assault victims who come to the hospital for a Safe Exam.  GBMC is currently constructing a new "SAFE wing" in the hospital.  This wing will include two exam rooms (with full private bathrooms), a conference center, a family waiting room and a victim interview room that will be outfitted with audio visual capabilities for police interviews.  The wing is scheduled to be completed in February of 2020.  Once the Police Department has built the new interview room, detectives will be able to use both interview rooms (the one at police headquarters and the one at GBMC).

**Anticipated Completion Date:** The construction of the Baltimore Police Department's victim interview room is estimated to be complete by November 11, 2019.

**Recommendation 3:**  Baltimore County should consider having the CACU accept primary investigative responsibility for all sex offense cases where the victim is under the age of 16. This represents national best practice.

**Status:**  Under review

**Anticipated Completion Date:**  January 2020

**Recommendation 4:**  Baltimore County should consult with a national training expert to develop a multi-disciplinary training plan.

**Status:**  Lieutenant Edwards met with Tom Tremblay on July 18, 2019 to discuss development of a training plan for SVU and other County sexual assault partners.  Tremblay serves as a faculty member for both the International Association of Chiefs of Police National Law Enforcement Leadership Initiative on Violence Against Women Crimes and the National Center for Campus Public Safety Trauma Informed Sexual Assault Investigations and Adjudication Training.  He is a national leader in the development and delivery of Trauma Informed Sexual Assault Investigations Training.  The training plan will include the following topics:

- Myths/Misconceptions/Bias related to sexual assault investigations
- Rape Culture
- Neuro-Biology of Trauma
- Trauma-Informed Victim Interviewing
- First Response Interview
- Formal Interview
- Forensic Exam
- Investigative Strategies
- Offender Realities
- Offender Behaviors
- What Constitutes Force
- Report Writing
- Drug Facilitated Sexual Assault
- State Specific Laws
- Agency Specific Policies
- Role of Advocacy
- Resiliency

**Anticipated Completion Date:**  January 2020

**Recommendation 5:**  The Baltimore County Police Department and State's Attorney's Office would benefit from training in the following areas:
- Interviewing victims with mental health issues and other disabilities

12

- Investigating and prosecuting sexual assault cases where the victims is under the influence of drugs and/or alcohol
- Best practices for investigating and prosecuting cases where there is delayed reporting

Aequitas, a national non-profit, is particularly well equipped to provide technical and policy development assistance and facilitate these trainings. The Task Force recommends that the Baltimore County Police Department and the State's Attorney's Office consider reaching out to Aequitas for assistance. The Task Force also recommends that there be regular training for all detectives and prosecutors that handle sexual assault cases.

**Status:**  Since the 2017 audit, some members of the Baltimore County SVU have participated in the following trainings:

- Department-wide 1-hour presentation at In-Service Training 2018 on Trauma Informed/Victim Centered Investigations
- Trauma Informed Victim Interviewing/Neurobiology of Trauma – Russell Strand
- Trauma Informed Interviewing in Black Communities – IACP/Tom Tremblay
- Child First FETI (Maryland's forensic interviewing certification course)
- GBMC Sexual Assault Forensic Exam School
- Drug Facilitated Sexual Assault DFSA – Marc LeBeau, FBI
- Dallas Conference on Violence Against Women
- End Violence Against Women International (EVAWI)
- Reid School of Interview Technique
- Intellectual/Developmental Disability training offered by Pathfinders for Autism
- Criminal Intelligence School
- Exploring the Sexual Offender and Physical Abuser
- Basic Historical Cell Site and CDR Analysis (FBI-CAST)
- Criminal Investigator School
- Prostitution and Human Trafficking Seminar

The Baltimore County Police Department is currently in the process of developing the following courses:

- Autism Awareness – Investigative Interviews (scheduled for October 2019)
- Trauma Informed Sexual Assault Investigations – MCASA/BCOPD/Tom Tremblay September 4th and 5th
- MPCTC Course on Trauma Informed/Victim Centered/Offender Focused Sexual Assault Investigations
- Long Term Plan to develop a MPCTC Sexual Assault Investigations course (discussions with BCPD/MCoPD/HCPD/IACP to date)

Some prosecutors in the Baltimore County State's Attorney's Office have participated in the following trainings:

- Trauma Informed Training presented by Laura Clary to help recognize the effect of trauma on sexual assault victims.
- Resiliency Training provided by Dr. Michelle Chudow to address the effects of involvement in Sexual Assault and Child Abuse on Investigators and Prosecutors.
- Child First Training- this is a five-day course which a large number of our prosecutors have attended.  It is oriented toward the proper interview technique for the forensic interview of a child victim of abuse.
- A Drug Facilitated Sexual Assault Training in College Park, MD
- Crimes Against Women and Children Conference in Dallas, Texas.
- Juvenile Sex Trafficking Conference
- Child Abuse and Maltreatment Conference in San Diego, California
- Trauma Informed Victim Interviewing/Neurobiology of Trauma
- GBMC Sexual Assault Forensic Exam School (instructing)
- Intellectual/Developmental Disability Training with emphasis on autism
- Prostitution and Human Trafficking Seminar
- Inter-Office trainings presented with some frequency on issues related to sexual assault

**Anticipated Completion Date:** The Baltimore Police Department is working to develop a comprehensive training plan that addresses ongoing needs of SVU personnel as well as to prepare new and prospective detectives for an assignment to SVU. This plan comes with significant expense due to the need for expert training from individuals, or organizations that are teaching the most current best practices. In recent years, the Police Department has relied on funding from their charitable partner, the Baltimore County Police Foundation. SVU is currently seeking grant funding as well as a private donation to address current needs. The police department should identify funding needs and address those needs through the fiscal planning process.  Significant progress is being made on this ongoing project.

**Recommendation 6:**  The Baltimore County Police Department should develop and implement a uniform and centralized records system for its sexual assault cases.  During the audit, we found that documents existed in multiple locations including both computer and paper files. There should be one complete case file and case documentation should be uniform across all case files.  There should also be standardized coding protocols for the status of cases. During the audit, we found that case file documents were coded differently than the final UCR code.

**Status:**  A new case file format was put into place in 2019 that standardizes the format of all SVU case files. It also captures the investigative tasks pending, who is responsible for each task and the final status of each. This cover sheet also memorializes supervisors' reviews of the case. Further, after a case is completed, a supervisor completes the final supplemental report that establishes the final UCR Coding and Case Status. This removes the responsibility from the detectives and creates more uniformity and accountability.

On a broader scale, the Baltimore County Police Department is migrating to a new records management and field based reporting system. This system will be expanded in the future to

14

include a case management system. The needs of SVU will be included in the design and implementation of that case management system.

**Anticipated Completion Date:** Preliminary action has been taken within the Unit.  The new records/case management system will likely take several years for implementation.

**Recommendation 7:**  The Baltimore County State's Attorney's Office should consider having all sexual assault cases reviewed by the Sex Offense and Child Abuse Division.  Currently, sexual assault cases are reviewed and handled by the Sex Offense and Child Abuse Division, the Domestic Violence Unit (if it is domestic related) and in some instances, prosecutors in other units.  If sexual assault cases will continue to be reviewed and handled by multiple units, the Office should require consultation with the Sex Offense and Child Abuse Division.  In addition, all prosecutors that review, make charging decisions or prosecute sexual assault cases should receive specialized training.

**Status:** The States Attorney's Office has considered the recommendation that all sexual assault cases be reviewed and handled by the Sex Offense and Child Abuse Division of the office and has elected to not adopt the recommendation in total.  The office does commit to having all cases in which there is an allegation of a felony sexual assault reviewed or consulted with by a prosecutor in the Sex Offense and Child Abuse Division or a prosecutor with specialized training in the field for the purpose of making a charging decision.

**Anticipated Completion Date:** October 1, 2019

**Recommendation 8:**  The Baltimore County State's Attorney's Office should review the national best practice information provided by the Task Force and institute policies consistent with these best practices.  The Baltimore County State's Attorney's Office does not have formal written policies on sexual assault cases (which is not uncommon).  However, the Task Force encourages the Baltimore County State's Attorney's Office to consider adopting some written policies to provide clear guidance to prosecutors on best practices regarding review and prosecution of sex offense cases.  This could be particularly helpful with respect to cases involving delayed reporting, where the victim has inconsistencies in his/her story, and where the victim and the suspect had pre and/or post interaction or communication.

**Status:**  The States Attorney's Office currently follows and in its' practice acts consistent with the large majority of the "best practice" guidance provided in the guidelines supplied by the Task Force.  Although it is possible that there are some best practices addressed by those guidelines with which the office may disagree, those practices which the office does not follow are primarily due to a lack of funding and staffing to be able to perform the tasks recommended.  In the event that the office is provided with increased and sufficient funding to do so, the office will adopt those additional practices.  A decision on whether or not to adopt written policies cannot be addressed without knowing there would be sufficient funding and staffing to accomplish this objective also.  This cannot be accomplished until at least some period after the next budget is submitted.

15

**Anticipated Completion Date:** January 1, 2021

**Recommendation 9:** The Baltimore County State's Attorney's Office should require all prosecutors that review and staff sexual assault cases to complete its "Staffing Form." The Staffing Form provides a written record of the consultation between the prosecutor and police regarding sexual assault cases. During the audit, we found that this document was not always used or completed. This document should be retained for all cases (both in the case file and in a central location).

**Status:** The SAO has agreed to and implemented this recommendation.

**Anticipated Completion Date:** Completed

**Recommendation 10:** Baltimore County should work to fill the two vacant analyst positions in its crime lab. It should also assess if the lab has the resources needed to comply with the new SAFE kit testing requirements under Maryland Code, Criminal Procedure § 11-926. And, it should continue to seek funding to test old, untested kits.

**Status:** Funding is being released shortly from the 2018 DOJ SAKI grant. This funding will cover a portion of the pre-April 30, 2018 untested kits in the Baltimore County Police inventory. The State will be applying for the balance of funding in the 2020 SAKI grant cycle. Funding is currently being sought to test other biological evidence and kits that are outside the parameters and funding priorities of the 2018 SAKI grant program. As part of this effort, the Police Department has been awarded a $45,000 grant from the National Institute for Justice Capacity Enhancement for Backlog Reduction Program to facilitate testing of this evidence related to past sexual assault cases.

**Anticipated Completion Date:** The two vacant positions are posted and the Police Department continues to seek grant funds to outsource and test old untested kits and other biological evidence.

**Recommendation 11:** The Baltimore County Police Department Crime Lab should adopt written policies for retaining and testing SAFE kits that conform with the newly revised version of Maryland Code, Criminal Procedure § 11-926.

**Status:** The Police Department has adopted a new retention policy that complies with the new state law. A copy of this policy is attached as Exhibit 7.

**Anticipated Completion Date:** Completed

**Recommendation 12:** The Baltimore County Police Department should develop a centralized method to inventory and track SAFE kits and other biological evidence related to sexual assault cases.

**Status:** The Police Department has taken the following steps to improve inventory and tracking processes for SAFE kits:

- Created a specific room in Spring 2019 and outfitted it to be part of the Evidence Management Unit (EMU)
- Pulled all SAFE kits from various evidence storage locations and co-located them all in this room, in chronological order
- Hand-checked these kits and electronically collected data from the labeling
- Created a SharePoint document that is shared by CACU/SVU/EMU/Forensics to track data associated with SAFE kits
- Hired a Police Assistant who spearheads this effort
- Hosted OAG SAEK Inventory inspectors for SAFE kit audit
- Implemented the same system on all kits received that are newer than the SAEK inventory period (after 4/30/2018)
- Implemented redundant systems to ensure all SAFE kits make it into the system properly (including monthly hand checks of the room)
- Forensics is re-negotiating contract with BODE to accommodate SAKI Grant Testing and upcoming legislatively mandated testing (effective October 1, 2019)
- Sit on OAG's SAEK Sub-committee on Testing prioritization and statewide tracking system implementation
- Researching various SAFE kit tracking systems available for adoption
- Created system to communicate with MSP CODIS coordinator on offender profile data/status
- Reviewing incidents with an untested SAFE kit to determine suitability for testing

**Anticipated Completion Date:** The Baltimore County Police Department has created an inventory and internal tracking system. The Department plans to work with the State to adopt the Statewide system when it is available.

**Recommendation 13:** The Baltimore County Police Department should work with victim advocacy organizations and other non-profits, including TurnAround, Inc., to create a standardized protocol process for engaging with victims.

**Status:** In process

**Anticipated Completion Date:** This will be an ongoing process as the Police Department develops new partnerships.  It plans to have protocols in place with Turnaround and GBMC by December 2019.

**Recommendation 14:** The Baltimore County Police Department should immediately cease usage of waiver forms for victims of sexual assault.

**Status:** Complete

**Completion Date:** January 2019

**Recommendation 15:** The Baltimore County Police Department should implement memorandums of understanding (MOUs) with all institutions of higher education within its jurisdiction, so as to establish standard procedures for handling incidents of sexual assault on campuses or involving victims associated with these institutions.

**Status:** The Baltimore County Police Department has reached an agreement with six universities (UMBC, Towson, Goucher, Stevenson, CCBC and Loyola) and the Chief of the Police Department has signed the agreement.

**Completion Date:**  Completed September 2019

**Recommendation 16:** The Baltimore County Police Department should increase its staffing of the SVU, in order to better manage the caseload and best serve victims.

**Status:** Historically, the SVU was staffed with 1 lieutenant, 1 sergeant, 1 corporal and 6 detectives.  At that time, the lieutenant had responsibility for SVU and another investigative unit. In 2017, the authorized staffing was increased by 2 detectives and 1 sergeant.  In October 2018, the other unit was removed from the responsibility of the lieutenant to increase supervision and focus on SVU.  In May 2019, staffing was increased again by adding one sergeant and 2 detectives.  As of July 2019, SVU had 1 lieutenant, 3 sergeants, 1 corporal and 10 detectives.  The Department plans to add 1 corporal and 2 detectives in order to formalize a cold case squad in the near future. The unit also incorporates college interns on a regular basis. In August of 2018, Jeff Ray began volunteering with the unit. He was hired as a Police Assistant in January of 2019. That Police Assistant position is now a permanent authorized position in SVU.

**Completion Date:** Complete

**Recommendation 17:** The Baltimore County Police Department and the State's Attorneys' Office should increase their level of communication and document their interactions.

**Status:** BCPD and the Baltimore County SAO meet biweekly, with SVU presenting cases as they are ready to be reviewed. Cases to be reviewed should be completely investigated, documented and prepared for review. They should be reviewed/approved by a supervisor prior to being submitted to the SAO for staffing. Should a case be an urgent or more complex matter, a special meeting can be scheduled to discuss the case. These meetings are documented, with

copies of the document available to both the SAO and BCPD, and a copy placed in the relevant BCPD case file of each case presented at the meeting.

**Completion Date:** This process began in fall 2017. A conference room is in the design phase for the Special Victims Unit office space. This room will include the ability to fully review all digital evidence in a case such as audio/video recorded interviews, video surveillance and any other associated digital evidence.  This will allow police and prosecutors to view all recorded evidence while meeting and reviewing cases.

**Recommendation 18:** The Baltimore County Police Department should eliminate the level of discretion patrol officers are exercising when responding to calls for service for incidents of sexual assault. This should take the form of requiring the patrol officer to consult with their supervisor and/or SVU/CACU before making a determination about the case and requiring the patrol officer to write a report of the incident. The consultation with the supervisor should include a comprehensive discussion about the incident, the potential crime scene(s), evidence preservation, victim safety and proper titling and routing of the report.

**Status:** Current policy requires officers to complete an Incident Report (Field Manual 1-5.4). It does not appear that this policy is consistently followed.  In addition, the Baltimore County Police Department will consider supervisor and/or SVU review of patrol officer coding decisions.

**Anticipated Completion Date:** December 2019

**Recommendation 19:** The Department should perform an audit of 911 calls for service for incidents of sexual assault annually. In order to efficiently perform these audits, the Department should streamline the coding in its calls for service records management system so that the audit of the calls does not require extensive data cleaning work to perform.

**Status:** The Baltimore County Police Department is developing an audit process and plans to implement audits quarterly.

**Anticipated Completion Date:** January 2020

**Recommendation 20:** As recommended in the 2017 audit recommendations, a system should be put in place to track cases received from residential facilities, including mental health facilities, nursing homes, etc., to track and identify possible serial cases.

**Status:** A formalized system has not yet been put in place, but efforts have been made toward tracking these cases in a standardized way. A project has been opened with Crime Analysis to formalize and standardize this tracking.

**Anticipated Completion Date:** October 2019

**Recommendation 21:** The Baltimore County Police Department and State's Attorney's Office should continue to move towards a trauma-informed, victim-centered and offender-focused model of investigations. The State's Attorney's Office should continue and expand its work on maintaining an environment of offender-focused prosecutions.

**Status:** Training on victim-centered and offender-focused investigations and prosecutions are critical to progress on this recommendation. The Police Department provided agency-wide neuro-biology of trauma training (1 hour) in 2018.  It will provide an agency-wide victim centered and offender-focused investigations training in 2020.  On September 4th and 5th, the police department provided a multi-disciplinary victim-centered and offender-focused investigations training.  It was provided to all police investigative units, prosecutors, Title 9 investigators, campus police and advocates.  The Police Department will also develop an evaluation tool to determine the impact of the training. Additionally, efforts will be made to be able to create an MPCTC course on this material so that it can be taught regularly throughout the state.

**Anticipated Completion Date:** This is an ongoing effort that will be reinforced through supervision and training.

**Recommendation 22:** The Baltimore County Executive's Office should assume responsibility for overseeing the implementation of these recommendations through CountyStat.   The SART, through a subcommittee, should consider conducting ongoing case audits.

**Status:** The County Executive's Office has agreed to take responsibility for overseeing the implementation of these recommendations through its newly created CountyStat Office.

**Anticipated Completion Date:** Ongoing

**Recommendation 23:**  In January of 2021, this Task Force should reconvene to do a random audit of fifty cases and obtain an update regarding the status of these recommendations.

**Status:** Task Force members have agreed to this recommendation.

**Anticipated Completion Date:**  January 2021

## Glossary

| | |
|---|---|
| **BCPD** | Baltimore County Police Department |
| **CACU** | Crimes Against Children Unit (Formerly Family Crimes) Handles offenses involving children ranging from physical, sexual child abuse, child pornography, missing children etc. Works in a Child Advocacy Center with multi-disciplinary resources such as Health Department, Department of Social Services, Child Protective Services |
| **Charge Dismissed** | The prosecutor dismisses the charges against the suspect. |
| **Decline to Charge** | The prosecutor decides not to charge the suspect for the offense. |
| **Exceptionally Cleared** | To code a complaint as exceptionally cleared, investigating officers must have thoroughly investigated a case, including establishing the identity and location of a suspect, and finding enough information to support an arrest, charge, or turning over of the suspect to the court for prosecution. Once these requirements have been met, a case may be exceptionally cleared for the following reasons: |

1. Suicide of the offender. (The person who committed the offense is dead.)

2. Double murder. (Two persons kill each other.)

3. Deathbed confession.

4. Offender killed by police or citizen.

5. Offender is prosecuted by state or local authorities in another city for a different offense or is prosecuted in another city or state by the federal government for an offense which may be the same.

6. Extradition denied/In Custody of Other Jurisdiction.  The suspect is in the custody of another jurisdiction, usually for a more serious offense, and the extradition was either denied or not pursued.

7. Victim refuses to cooperate in the prosecution. (This action alone does not unfound the offense. The answer must

also be yes to questions 1, 2, and 3 in the section Cleared by Exceptional Means.)

8. Warrant is outstanding for felon but before being arrested the offender dies.

9. The handling of a juvenile offender either orally or by written notice to parents in instances involving minor offenses such as petty larceny. No referral is made to juvenile court as a matter of publicly accepted law enforcement policy.

10.  Prosecution declined (for other than the lack of probable cause).

*Definition taken from U.S. Department of Justice, Uniform Crime Reporting Program, Summary Reporting System User Manual (6/20/13), p.116.*

| | |
|---|---|
| **Juvenile Waived to Adult Status** | A person under 18 at the time of the alleged offense who is charged as an adult based upon the specific crime(s) charged or is waived to adult court after consideration by a Judge regarding the crime(s) and background of the offender. |
| **Nolle Prosequi** | A Latin term meaning the prosecutor declines to prosecute the count charged. This term applies once a suspect is charged and in the court system and the decision is made to drop the charges. |
| **Partially Tested** | Partially tested SAFE kits can include kits that were only serologically tested, or otherwise not taken all the way to DNA analysis. |
| **SAFE or SAK Kit** | Sexual Assault Kit and Sexual Assault Forensic Exam Kit. These kits contain samples and other evidence (including photographs) collected during SAFE exams. |
| **SAFE Exam** | A sexual assault forensic exam administered by a dedicated SAFE nurse to collect samples for potential DNA analysis. |
| **SAO** | State's Attorney's Office |
| **STET** | An indefinite postponement. No guilty verdict is entered, but the defendant may be asked to accept condition set down by the court. The defendant must waive his/her right to a speedy trial. A case on the stet docket may be re-opened for |

| | |
|---|---|
| | any reason during the first year and for violation of any of the specific conditions within three years |
| **SVU** | Special Victims Unit (Formerly Special Victims Team, formerly Sex Crimes) Handles 1st and 2nd Degree Rapes of all victims age 18 and above. Also handles 1st and 2nd Degree rapes of victims aged 13-17 if there is no care and custody conditions or familial relationship between the suspect and the victim. |
| **UCR** | Uniform Crime Reporting. The standards and definitions set by the FBI for reporting crimes. The FBI's Uniform Crime Reporting (UCR) Program is a nationwide, cooperative statistical effort of nearly 18,000 city, university and college, county, state, tribal, and federal law enforcement agencies voluntarily reporting data on crimes brought to their attention. |
| **Unfounded** | False or baseless complaints. False would mean that an investigation proves that the claims that were made were indeed false. Baseless would mean that the elements of a crime were not able to be identified and/or proven. The label unfounded is used for both scenarios. |
| **Waiver Form** | A form that was used by BCPD until January 2019. It was used when documenting sexual assault victims' declination of a police investigation and/or a SAFE exam. The form's use was under review in the year leading up to its discontinued use. Best practices documents suggested a form like this not be used. The form was discontinued at the same time as a procedural update allowed for consensual audio/video recording of victim interviews. |

Exhibits

# Audit Form

Baltimore County Sexual Assault Case Review Audit Form

*Required

1. **Your Name:** *
   *Mark only one oval.*

   ⬭ Sheryl Goldstein

   ⬭ Brian Edwards

   ⬭ John Cox

   ⬭ Rosalyn Bronson

   ⬭ Nadia Benaissa

   ⬭ Drew Vetter

   ⬭ Laura Clary

   ⬭ Katherine McMullen

2. **Case Number** *

   _____

3. **Date of Case:**

   _____
   *Example: December 15, 2012*

4. **Case Status:** *
   *Mark only one oval.*

   ⬭ Open - Active

   ⬭ Open - Suspended

   ⬭ Arrest

   ⬭ Unfounded

   ⬭ Exceptional Clearance

5. **Detective Assigned:**
*Check all that apply.*

☐ Det. A

☐ Det. B

☐ Det. C

☐ Det. D

☐ Det. E

☐ Det. F

☐ Det. G

☐ Det. H

☐ Det. I

☐ Det. J

☐ Det. K

☐ Det. L

☐ Det. M

☐ Det. N

☐ Det. O

☐ Det. P

☐ Det. Q

☐ Det. R

☐ Det. S

☐ Other: _____

6. **Rape Kit Collected:** *
*Mark only one oval.*

⬭ Yes

⬭ No

7. **Rape Kit Status:**
*Mark only one oval.*

⬭ Tested

⬭ Partially Tested (Serology only or other partial)

⬭ Untested

⬭ Destroyed

⬭ Unknown

⬭ N/A - No kit

8. **How was the case initiated? \***

*Mark only one oval.*

◯ Victim initiated

◯ Initiated by third party

9. **Investigation Conducted: \***

*Mark only one oval.*

◯ Yes

◯ No

◯ Partial

10. **Victim Interviewed: \***

*Mark only one oval.*

◯ Yes

◯ No

11. **Was the investigation unbiased and offender-focused? \***

*Mark only one oval.*

◯ Yes

◯ No

◯ N/A - no Investigation

12. **Suspect Identified: \***

*Mark only one oval.*

◯ Yes

◯ No

13. **Suspect Interviewed: \***

*Mark only one oval.*

◯ Yes

◯ No

◯ N/A

14. **If the suspect was not interviewed, was there a reason given?**

*Mark only one oval.*

◯ Yes

◯ No

15. **If a reason was given, what was the reason?**

_____

16. **Waiver Form Signed:** *
*Mark only one oval.*

◯ Yes

◯ No

17. **Consultation with Prosecutor:** *
*Mark only one oval.*

◯ Yes

◯ No

◯ Unknown

◯ More information needed from SAO (for follow-up purposes)

18. **Name of Prosecutor (please be sure to include last name):**

_____

19. **Outcome of Legal Review:**
*Mark only one oval.*

◯ Charge

◯ Decline to Charge

◯ Further Investigation Required

◯ Charge Reduced

◯ Charge Dismissed

20. **Prosecution Case Outcome:**
*Mark only one oval.*

◯ Guilty

◯ Nolle Prosequi

◯ STET

◯ Dismissed

◯ Unknown

21. **Do you think this case needs a second look by another reviewer?** *
*Mark only one oval.*

◯ Yes

◯ No

22. **Case Review Notes:**

_____

_____

_____

_____

_____

Powered by
Google Forms

LAWRENCE J. HOGAN, JR., Governor                    Ch. 160

Chapter 160

## (Senate Bill 217)

AN ACT concerning

## Criminal Law – Sexual Offenses – Physical Resistance

FOR the purpose of establishing that evidence of physical resistance by a certain victim is not required to prove that a certain sexual crime was committed; establishing that a certain provision of this Act may not be construed to affect the admissibility of evidence of actual physical resistance by a certain victim; altering certain definitions; and generally relating to sexual offenses.

BY repealing and reenacting, with amendments,
       Article – Criminal Law
       Section 3–301
       Annotated Code of Maryland
       (2012 Replacement Volume and 2016 Supplement)

BY adding to
       Article – Criminal Law
       Section 3–319.1
       Annotated Code of Maryland
       (2012 Replacement Volume and 2016 Supplement)

   SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

## Article – Criminal Law

3–301.

   (a)    In this subtitle the following words have the meanings indicated.

   (b)    "Mentally incapacitated individual" means an individual who, because of the influence of a drug, narcotic, or intoxicating substance, or because of an act committed on the individual without the individual's consent or awareness, is rendered substantially incapable of:

       (1)    appraising the nature of the individual's conduct; or

       (2)    [resisting] COMMUNICATING ABOUT vaginal intercourse, a sexual act, or sexual contact.

   (c)    "Physically helpless individual" means an individual who:

– 1 –

(1)     is unconscious; or

(2)     (i)     does not consent to vaginal intercourse, a sexual act, or sexual contact; and

(ii)     is physically unable to **[**resist, or communicate unwillingness to submit to.**] COMMUNICATE ABOUT** vaginal intercourse, a sexual act, or sexual contact.

(d)     (1)     "Sexual act" means any of the following acts, regardless of whether semen is emitted:

(i)     analingus;

(ii)     cunnilingus;

(iii)     fellatio;

(iv)     anal intercourse, including penetration, however slight, of the anus; or

(v)     an act:

1.     in which an object or part of an individual's body penetrates, however slightly, into another individual's genital opening or anus; and

2.     that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party.

(2)     "Sexual act" does not include:

(i)     vaginal intercourse; or

(ii)     an act in which an object or part of an individual's body penetrates an individual's genital opening or anus for an accepted medical purpose.

(e)     (1)     "Sexual contact", as used in §§ 3–307, 3–308, and 3–314 of this subtitle, means an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party.

(2)     "Sexual contact" does not include:

(i)     a common expression of familial or friendly affection; or

(ii)     an act for an accepted medical purpose.

LAWRENCE J. HOGAN, JR., Governor                Ch. 160

(f)    "Substantially cognitively impaired individual" means an individual who suffers from an intellectual disability or a mental disorder, either of which temporarily or permanently renders the individual substantially incapable of:

(1)    appraising the nature of the individual's conduct; **OR**

(2)    **[**resisting vaginal intercourse, a sexual act, or sexual contact; or

(3)    communicating unwillingness to submit to**] COMMUNICATING ABOUT** vaginal intercourse, a sexual act, or sexual contact.

(g)    (1)    "Vaginal intercourse" means genital copulation, whether or not semen is emitted.

(2)    "Vaginal intercourse" includes penetration, however slight, of the vagina.

**3–319.1.**

(A)    EVIDENCE OF PHYSICAL RESISTANCE BY THE VICTIM IS NOT REQUIRED TO PROVE THAT A CRIME UNDER THIS SUBTITLE WAS COMMITTED.

(B)    THE PROVISIONS OF SUBSECTION (A) OF THIS SECTION MAY NOT BE CONSTRUED TO AFFECT THE ADMISSIBILITY OF EVIDENCE OF ACTUAL PHYSICAL RESISTANCE BY THE VICTIM.

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 2017.

**Approved by the Governor, April 18, 2017.**

Exhibit 3

# Baltimore County Sexual Assault Audit

- The Task Force conducted an audit of sexual assault cases reported in a three year period – 2016, 2017 and 2018.

- During that time period, there were a total of 649 cases of sexual assault that could have been reviewed by the audit team.

- 114 cases were for 1st Degree Rape or Sex Offense and 535 cases were for 2nd Degree Rape or Sex Offense.

# Baltimore County Sexual Assault Audit

Of the 649 cases:
- 15% resulted in arrest (99 cases)
- 29% were exceptionally cleared (191 cases)
- 12% were unfounded (80 cases)
- <1% involved juveniles waived to adult status (5 cases)
- 42% were still open as of April 2019 (274 cases)

- The 649 cases exclude those which were handled by CACU (Crimes Against Children Unit), which handles cases for victims younger than age 12.

# Cases Selected for Audit

- The task force decided to audit all 1st Degree Cases (114), all 2nd Degree Unfounded Cases (68), and 50 randomly selected 2nd Degree Exceptionally Cleared Cases from 2016-2018.

- Of these cases, 24 were not available for audit.
  - 23 of these cases were still actively being investigated, pending trial, or otherwise working through the system.
  - 1 of the 24 was a Child Abuse (CACU) case outside the scope of the audit.

- 5 additional 2nd Degree Cases were added to the audit (coded in UCR as arrest (3), exceptionally cleared (1), open (1)).

- Ultimately, we audited 213 cases.

# Cases Audited

- Of the 213 cases that we reviewed:
  - 13% (27) resulted in arrest
  - 33% (70) were exceptionally cleared
  - 1% (3) were open – active
  - 21% (45) were open – suspended
  - 32% (68) were unfounded

# UCR Status v. Audit Status



UCR Case Status



Audit Status

Of the 213 in UCR:

    16% (35) resulted in arrest

    31% (65) were exceptionally cleared

    17% (37) were open

    1% (3) had juveniles waived to adult status

    34% (73) were unfounded

Of the 213 in the audit:

    13% (27) resulted in arrest

    33% (70) were exceptionally cleared

    1% (3) were open – active

    21% (45) were open – suspended

    32% (68) were unfounded

# Select Detectives by Case Status

Detectives who saw more than 10 cases within the audited set.



# Select Detectives by Victim Centered Investigation

Detectives who saw more than 10 cases within the audited set.

| Detective | Number of Cases Investigated | Yes – Victim Centered & Offender Focused | No – Not Victim Centered & Offender Focused | N/A – No Investigation Conducted |
|---|---|---|---|---|
| Det. A | 19 | 63% (12) | 11% (2) | 26% (5) |
| Det. B | 25 | 52% (13) | 16% (4) | 32% (8) |
| Det. C | 26 | 46% (12) | 8% (2) | 46% (12) |
| Det. D | 29 | 66% (19) | 31% (9) | 4% (1) |
| Det. E | 31 | 65% (20) | 13% (4) | 23% (7) |
| Det. F | 36 | 56% (20) | 11% (5) | 33% (11) |
| All Cases Audited | 213 | 58% (124) | 16% (33) | 26% (56) |

39

# Was the investigation unbiased and offender focused?

213 Responses



In cases in which an investigation was conducted, it was found to be unbiased and offender focused 79% of the time; overall the cases were found to be unbiased 58% of the time.

40

# Rape Kit Collected

213 Responses



# Rape Kit Status

72 Responses



# How was the case initiated?

213 Responses



# Case Initiated by Waiver Signing

### Waiver Form Signed when Case Initiated by Third Party (77 Cases)



Yes
36%
28 Cases

No
64%
49 Cases

### Waiver Form Signed when Case Initiated by Victim (136 Cases)



Yes
36%
49 Cases

No
64%
87 Cases

*Waiver forms were discontinued in January of 2019. For the period audited from 2016-2018, the Audit Committee reviewed 77 cases in which a waiver form was signed.*

44

# Investigation Conducted

213 Responses



45

# Victim Interviewed

213 Responses



No
5%
11 Cases

Yes
95%
202 Cases

# Cases where the victim was not interviewed

- Of the cases audited, 11 cases were selected as 'victim not interviewed'

- In 8 of these 11 cases, the victims declined to be interviewed by police

# Suspect Identified

213 Responses



# Suspect Interviewed

213 Responses



49

# If a suspect was not interviewed, was there a reason given?

69 Responses



50

# Reasons for not interviewing suspects

36 Responses

- Victim declined investigation proceeding further (11 cases) or signed waiver form (6 cases)
  - In one case, the victim declined police investigation, but requested Title IX investigators interview the suspect
- Suspect retained or invoked counsel (4 cases) or was read Miranda Rights and declined to speak further (1 case)
- Suspect was unable to be located or contacted (3 cases) or not identified (3 cases)
- The detective unfounded the case (3 cases)
- Other:
  - The events described did not meet the standard for a crime (1 case)
  - The victim was disproven by video footage or other (2 cases)
  - The suspect was interviewed, but not about the assault (1 case)
  - There were mental health or other extenuating circumstances (1 case)

# Consultation with Prosecutor

213 Responses



# Outcome of Prosecutor Consultations

56 responses that named prosecutors

| Of the three prosecutors who consulted or co-consulted on the most cases (33): | | | | |
|---|---|---|---|---|
| | # Cases Consulted or Co-Consulted on | Charged | Declined to Charge | Dismissed |
| ASA #1 | 17 | 1 | 13 | 3 |
| ASA #2 | 8 | | 8 | |
| ASA #3 | 8 | 2 | 6 | |

| Of the remaining 21 cases that named prosecutors: | |
|---|---|
| Charged | Declined to Charge |
| 10 | 11 |

*For the remaining 2 cases which had audit responses naming prosecutors, one was charged for robbery, but not for sexual assault, following the legal review. The SAO did not have records of the consultation for the other case.*

# Outcome of Legal Review:

76 Responses



54

# Prosecution Case Outcome:

33 Responses



# Do you think this case needs a second look?

213 Responses



# Glossary

| | |
|---|---|
| **Unfounded** | False or baseless complaints. False would mean that an investigation proves that the claims that were made were indeed false. Baseless would mean that the elements of a crime were not able to be identified and/or proven. The label unfounded is used for both scenarios. |
| **Exceptionally Cleared**<br><br>*Definition taken from U.S. Department of Justice, Uniform Crime Reporting Program, Summary Reporting System User Manual (6/20/13), p.116.* | To code a complaint as exceptionally cleared, investigating officers must have thoroughly investigated a case, including establishing the identity and location of a suspect, and finding enough information to support an arrest, charge, or turning over of the suspect to the court for prosecution. Once these requirements have been met, a case may be exceptionally cleared for the following reasons:<br>1. Suicide of the offender. (The person who committed the offense is dead.)<br>2. Double murder. (Two persons kill each other.)<br>3. Deathbed confession.<br>4. Offender killed by police or citizen.<br>5. Offender is prosecuted by state or local authorities in another city for a different offense or is prosecuted in another city or state by the federal government for an offense which may be the same .<br>6. Extradition denied/In Custody of Other Jurisdiction.  The suspect is in the custody of another jurisdiction, usually for a more serious offense, and the extradition was either denied or not pursued.<br>7. Victim refuses to cooperate in the prosecution. (This action alone does not unfound the offense. The answer must also be yes to questions 1, 2, and 3 in the section Cleared by Exceptional Means.)<br>8. Warrant is outstanding for felon but before being arrested the offender dies.<br>9. The handling of a juvenile offender either orally or by written notice to parents in instances involving minor offenses such as petty larceny. No referral is made to juvenile court as a matter of publicly accepted law enforcement policy.<br>10.  Prosecution declined (for other than the lack of probable cause). |

# Glossary

| | |
|---|---|
| **Juvenile Waived to Adult Status** | A person under 18 at the time of the alleged offense who is charged as an adult based upon the specific crime(s) charged or is waived to adult court after consideration  by a Judge regarding the crime(s) and background of the offender. |
| **Nolle Prosequi** | A Latin term meaning the prosecutor declines to prosecute the count charged. This term applies once a suspect is charged and in the court system and the decision is made to drop the charges. |
| **STET** | An indefinite postponement. No guilty verdict is entered, but the defendant may be asked to accept condition set down by the court. The defendant must waive his/her right to a speedy trial. A case on the stet docket may be re-opened for any reason during the first year and for violation of any of the specific conditions within three years |
| **Decline to Charge** | The prosecutor decides not to charge the suspect for the offense. |
| **Charge Dismissed** | The prosecutor dismisses the charges against the suspect. |
| **Waiver Form** | A form that was used by BCPD until January 2019. It was used when documenting sexual assault victims' declination of a police investigation and/or a SAFE exam. The form's use was under review in the year leading up to its discontinued use. Best practices documents suggested a form like this not be used. The form was discontinued at the same time as a procedural update allowed for consensual audio/video recording of victim interviews. |

# Glossary

| | |
|---|---|
| **SAFE Exam** | A sexual assault forensic exam administered by a dedicated SAFE nurse to collect samples for potential DNA analysis. |
| **SAK or SAFE Kit** | Sexual Assault Kit and Sexual Assault Forensic Exam Kit. These kits contain samples and other evidence (including photographs) collected during SAFE exams. |
| **Partially Tested** | Partially tested SAKs can include kits that were only serologically tested, or otherwise not taken all the way to DNA analysis. |
| **SVU** | Special Victims Unit (Formerly Special Victims Team, formerly Sex Crimes) Handles 1st and 2nd Degree Rapes of all victims age 18 and above. Also handles 1st and 2nd Degree rapes of victims aged 13-17 if there is no care and custody conditions or familial relationship between the suspect and the victim. |
| **CACU** | Crimes Against Children Unit (Formerly Family Crimes) Handles offenses involving children ranging from physical, sexual child abuse, child pornography, missing children etc. Works in a Child Advocacy Center with multi-disciplinary resources such as Health Department, Department of Social Services, Child Protective Services |
| **UCR** | Uniform Crime Reporting. The standards and definitions set by the FBI for reporting crimes. The FBI's Uniform Crime Reporting (UCR) Program is a nationwide, cooperative statistical effort of nearly 18,000 city, university and college, county, state, tribal, and federal law enforcement agencies voluntarily reporting data on crimes brought to their attention. |

Exhibit 4

**Sexual Assault Kits Maryland and National Best Practices**

| | National Best Practice | Maryland |
|---|---|---|
| Transfer of SAFE kit from the performing health agency to law enforcement | ASAP or within three days ("National Best Practices for Sexual Assault Kits: A Multidisciplinary Approach" 2017) | Within thirty days (reaffirmed in HB 1096 in 2019) |
| Transfer of SAFE kit from law enforcement to forensic laboratory | Within 7 days (ibid.) | Within thirty days of receipt of kit (HB 1096) |
| Which SAFE/SAK kits should be tested? | All kits should be tested, as long as the victim has consented. (ibid.) | All kits should be tested unless:<br>(1) There is clear evidence disproving the allegation of sexual assault<br>(2) The facts alleged, if true, do not meet the standard for sexual assault<br>(3) The victim declines to give consent for analysis of the kit<br>(4) The suspect is in CODIS already *and* has pleaded guilty to offense associated with the SAFE kit test. (HB 1096) |
| When does a DNA profile get entered into CODIS? | DNA is entered into CODIS if a crime has been committed and consensual sexual partners are eliminated or samples have been requested (ibid.) | Entered into CODIS unless does not meet standard (HB 1096) |
| Lab turnaround time | No national best practice, but some states have 60 days, 90 days, 120 days and six-month cutoffs (ibid.) | "in a timely manner" (HB 1096) |
| Retention of unreported SAK/SAFE kits | Statute of limitations or a maximum of 20 years (ibid.) | Retain for minimum of 20 years unless the case for which the evidence was collected resulted in a conviction and the sentence has been completed *or* all suspects identified by testing a sexual assault evidence collection kit are deceased (HB 255 2017) |
| For reported cases that are uncharged or unsolved | Statute of limitations or 50 years, whichever is greater (ibid.) | Retain kit for minimum twenty years unless all suspects identified by testing a sexual assault evidence collection kit are deceased. (02.08.01.04) |

**Maryland Forensic Lab Information Sheet June 2019**

| Testing Process | Baltimore County | Maryland State Police | Baltimore City | Anne Arundel | Montgomery | Prince George's |
|---|---|---|---|---|---|---|
| Which kits are tested? | Kits are tested only upon request of the detective. | Test all kits. | All kits are brought to the lab and are tested unless the kits do not pass a screen for suitability, where declines are predominantly science-based, or are otherwise declined. | Since 2016, all kits are tested unless they are anonymous kits or consent not given by victim. Prior to 2016, were testing on the request of a detective. | SVU decides whether the information in the kit will be relevant to the case, 239 form, and then put into the lab's queue. | Every kit should technically be submitted to the lab for testing, but around 15-20% of cases have a detective telling the lab no analysis is needed. This will change with the new law. |
| Serology or Direct to DNA? | Serology - cut all swabs, then DNA on the most probative. Moving toward Direct-to-DNA. | Serology. | Serology. | Direct-to-DNA as of end of 2017. | Direct to DNA. | Serology, but evaluating Direct-to-DNA. |
| Are all materials tested or only swabs? | Generally test swabs, but discuss with the SAO whether other materials should be tested. | Every item and swab is taken through serology, determining which items are most probative and taken all the way to DNA typing. | Most probative samples from the serology screening are taken forward to DNA. | Swabs are looked at to determine if male DNA is present. Then, swab with most DNA present taken to DNA for typing. | With direct-to-DNA, look for male DNA and then send to DNA typing. If no male DNA is present, then go back and look at the other samples in the kit. If cannot determine in-house, then send to BODE for Y STR testing. | Take forward best samples for DNA typing. |
| In-House v. Outsourcing | In-house, but outsource some to BODE. | Do not outsource kits currently. | Do all testing in-house. | Outsourcing for older cases but no outsourcing now. | Try to test all new kits in-house. Older backlogged kits under grant funding are outsourced to BODE. | Try to do as much in-house as possible because it makes the testing process easier, and is faster than outsourcing. If kits get older, then outsource with grant funding to BODE. |
| Cost of Testing Kits | | | | | | |
| In-House | Up to $5000 per kit | $3000-4000 with some costing less at around $1000 | $1200 in house | $240/kit for operating cost | Have not formally calculated an in-house price, but do not know how $1395 is covering Bode's costs for outsourcing. | $500-600 (re-agent cost only) |
| Outsource | $978 for some, but generally $860/sample with 3 samples per kit (>$2500 per kit) | Estimate that on average it costs $3000 to outsource. Previous negotiated rate related to the SAKI grants was $685, now >$1000/kit. | $150-200/swab with total around $1500 | N/A | $1395 negotiated price for old kits. $2000-4000 for new kits. | $1500 for 3 samples with 2 taken all the way |
| Time to process a kit through the lab | 4 weeks to screen, 3 months for DNA, total turnaround time 6-9 months on average, with rush cases different. | 45-60 days on average, 2 months is conservative estimate. Outsourcing takes 4 months because of prep work in-house on both ends. | Between 90 and 150 days unless rushed. | 2-3 months for a 'fast' turnaround, 4-6 weeks is fastest. | Could be <30 or >180 days. | 6-8 week turnaround unless for a pressing court date or kit spends time in the queue |
| Existence of Backlog | | | | | | |
| Of Recent Cases | Yes | No | Yes | Yes | No | Yes |
| Of Older Cases | Yes | Yes | No | Yes | Yes | Yes |
| Retention Policies | | | | | | |
| Currently | The lab's policies comply with the new law passed. | 20 Years | Retain all kits. | 80 Years | Evidence retained for 50 years. | Recently changed practices to follow the new law. |
| Previously | N/A | Prior to 2016, no policy. In 2016, added 18 month retention policy, which has been increased to 20 year. | N/A | In the early 2000s, some were sent out for testing and then destroyed after the 10-15 year mark. | Evidence retained for 50 years. | Previously, kits were to be held for 10-15 years. |
| Jane Doe Kits | The lab's policies comply with the new law passed. | 20 Years | Do not destroy Jane Doe kits. | Hold for 80 years. (Previously, 180 days then up to 1 year.) | Evidence retained for 50 years. | Were held for a different amount of time in accordance with the old law. |
| CODIS Practices | Enter all eligible into CODIS. | Enter all eligible into CODIS. | Enter almost everything into CODIS. Exceptions include if DNA profile does not meet quality standards (rare) or if there is a known profile already in CODIS. If the case is unfounded, it does not go into CODIS. | Everything goes in to CODIS if it follows the CODIS guidelines. Even if the SAO declines to prosecute, the DNA sample is still entered into CODIS. | Follow NDIS guidelines. Lab enters the information into CODIS. | Follow FBI requirements for submitting entries to CODIS. (All samples are submitted.) |
| Staffing Levels | Fully staffed would be 7, but 2 openings currently. Fully staffed: 1 supervisor, 1 tech, and 5 analysts trained on both serology and DNA. | 25 in total: 9 are dedicated full time to serology and DNA casework, 3 split time between casework and technical duties, and 2 split time between casework and DNA Database duties. | 7 DNA analysts, 2 DNA technicians, 1 Case Manager, 7 Forensic Screeners and 1 Forensic Screening Lab Assistant | 2 people who are both filling dual roles at the moment. Looking to add a 3rd analyst asap. | 9 personnel including 7 DNA analysts. Additional analyst to be hired. | 1 Manager, 2 Full-Time Analysts, 1 Trainee |
| Case Load | Over the period 2016-2018, the lab tested 41 SAFE kits. The lab also performed testing of non-SAFE KIT SA materials in addition to the 41 SAFE kits tested. The lab expects that under new law, it will be testing 150+ SAFE kits per year. | 120 SAKI kits per year, but 1000 total DNA cases. Expect that under new law, will be testing 240 kits per year. | ~20 kits per month (240-250+ per year) | ~90 per year | N/A | ~140 kits per year |
| Other practices of note | SVU and Biology Unit have a shared spread sheet to track kits, testing status and CODIS entry. | Maintain a SAFE Kit Master Inventory Log - a shared file accessible by multiple internal parties to give a live status of the kit. Conduct quarterly inventories of all SAKI kits | | The labs and the detectives are all shared on the same live spreadsheet where they can see in real-time where the kits are in the process. | Track cases by hand. | |

LAWRENCE J. HOGAN, JR., Governor                    Ch. 33

Chapter 33

## (Senate Bill 767)

AN ACT concerning

## Criminal Procedure – Sexual Assault Evidence Collection Kits – Analysis

FOR the purpose of requiring a sexual assault evidence collection kit to be submitted to a forensic laboratory for analysis unless a certain requirement is met; requiring a certain victim to be ~~given the option to consent to submission of a certain sexual assault evidence collection kit for analysis without making a certain commitment~~ <u>informed that the victim may initiate a criminal complaint under certain circumstances; authorizing the termination or discontinuance of testing of a sexual assault evidence collection kit under certain circumstances</u>; requiring a certain law enforcement agency that receives a sexual assault evidence collection kit to take certain actions under certain circumstances; requiring a forensic laboratory that receives a sexual assault evidence collection kit for analysis to take certain actions ~~within a certain number of days of receipt~~ <u>in a timely manner; providing that the failure to take certain actions in a timely manner may not constitute the basis for excluding certain evidence</u>; requiring that the eligible results of a certain analysis be entered into the Combined DNA Index System (CODIS); <u>requiring a forensic laboratory to report to the Maryland Sexual Assault Evidence Kit Policy and Funding Committee annually regarding the duration necessary to complete testing of sexual assault evidence collection kits; prohibiting a certain use of ~~a~~ certain ~~victim's~~ DNA under certain circumstances</u>; requiring the Maryland Sexual Assault Evidence Kit Policy and Funding Committee to establish a certain process to review and make recommendations regarding a certain decision of a law enforcement agency; requiring the Attorney General to adopt certain regulations on or before a certain date; <u>providing for a delayed effective date;</u> and generally relating to sexual assault evidence collection kits.

BY repealing and reenacting, with amendments,
    Article – Criminal Procedure
    Section 11–926 and 11–927(e)(1)
    Annotated Code of Maryland
    (2018 Replacement Volume)

BY repealing and reenacting, without amendments,
    Article – Criminal Procedure
    Section 11–927(a)
    Annotated Code of Maryland
    (2018 Replacement Volume)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Ch. 33                     2019 LAWS OF MARYLAND

## Article – Criminal Procedure

11–926.

(a)     (1)     In this section the following words have the meanings indicated.

(2)     "Child advocacy center" has the meaning stated in § 13–2201 of the Health – General Article.

(3)     "Hospital" has the meaning stated in § 19–301 of the Health – General Article.

(b)     A health care provider that performs a sexual assault evidence collection kit exam on a victim of sexual assault shall provide the victim with:

(1)     contact information for the investigating law enforcement agency that the victim may contact about the status and results of the kit analysis; and

(2)     written information describing the laws and policies governing the testing, preservation, and disposal of a sexual assault evidence collection kit.

(c)     An investigating law enforcement agency that receives a sexual assault evidence collection kit, within 30 days after a request by the victim from whom the evidence was collected, shall provide the victim with:

(1)     information about the status of the kit analysis; and

(2)     all available results of the kit analysis except results that would impede or compromise an ongoing investigation.

(d)     (1)     A sexual assault evidence collection kit shall be transferred to a law enforcement agency:

(i)     by a hospital or a child advocacy center within 30 days after the exam is performed; or

(ii)     by a government agency in possession of a kit, unless the agency is otherwise required to retain the kit by law or court rule.

(2)     Except as provided in paragraph (3) of this subsection, within 20 years after the evidence is collected, a law enforcement agency may not destroy or dispose of:

(i)     a sexual assault evidence collection kit; or

(ii)     other crime scene evidence relating to a sexual assault that has been identified by the State's Attorney as relevant to prosecution.

– 2 –

(3)     A law enforcement agency is not required to comply with the requirements in paragraph (2) of this subsection if:

(i)     the case for which the evidence was collected resulted in a conviction and the sentence has been completed; or

(ii)    all suspects identified by testing a sexual assault evidence collection kit are deceased.

(4)     On written request by the victim from whom the evidence was collected, a law enforcement agency with custody of a sexual assault evidence collection kit or other crime scene evidence relating to a sexual assault shall:

(i)     notify the victim no later than 60 days before the date of intended destruction or disposal of the evidence; or

(ii)    retain the evidence for 12 months longer than the time period specified in paragraph (2) of this subsection or for a time period agreed to by the victim and the law enforcement agency.

(E)     A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL BE SUBMITTED TO A FORENSIC LABORATORY FOR ANALYSIS UNLESS:

(1)     THERE IS CLEAR EVIDENCE DISPROVING THE ALLEGATION OF SEXUAL ASSAULT;

(2)     THE FACTS ALLEGED, IF TRUE, COULD NOT BE INTERPRETED TO VIOLATE A PROVISION OF TITLE 3, SUBTITLE 2, TITLE 3, SUBTITLE 3, TITLE 3, SUBTITLE 6, OR TITLE 11, SUBTITLE 3 OF THE CRIMINAL LAW ARTICLE;

~~(3)     THE KIT CONTAINS AN INSUFFICIENT AMOUNT OF FORENSIC EVIDENCE TO ENABLE AN ANALYSIS TO BE PERFORMED;~~

~~(4)~~ (3)     THE VICTIM FROM WHOM THE EVIDENCE WAS COLLECTED DECLINES TO GIVE CONSENT FOR ANALYSIS; OR

~~(5)~~ (4)     THE SUSPECT'S PROFILE ~~IS CONTAINED~~ HAS BEEN COLLECTED FOR ENTRY AS A CONVICTED OFFENDER FOR A QUALIFYING OFFENSE IN THE COMBINED DNA INDEX SYSTEM (CODIS) MAINTAINED BY THE FEDERAL BUREAU OF INVESTIGATION AND THE SUSPECT ~~ADMITTED TO CONSENSUAL SEX WITH THE VICTIM DURING THE INCIDENT~~ HAS PLEADED GUILTY TO THE OFFENSE THAT LED TO THE ~~FORENSIC EXAMINATION~~ SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

(F)   (1)   ~~A VICTIM OF SEXUAL ASSAULT WHO WISHES TO REMAIN ANONYMOUS SHALL BE GIVEN THE OPTION TO CONSENT TO SUBMISSION OF THE VICTIM'S SEXUAL ASSAULT EVIDENCE COLLECTION KIT FOR ANALYSIS WITHOUT MAKING ANY COMMITMENT TO TAKING FURTHER ACTION~~ IF A VICTIM OF SEXUAL ASSAULT WISHES TO REMAIN ANONYMOUS AND NOT FILE A CRIMINAL COMPLAINT, THE VICTIM SHALL BE INFORMED THAT THE VICTIM MAY FILE A CRIMINAL COMPLAINT AT A FUTURE TIME.

(2)   IF A PROVISION OF SUBSECTION (E) OF THIS SECTION IS DETERMINED TO BE SATISFIED AFTER THE SUBMISSION OF THE VICTIM'S SEXUAL ASSAULT EVIDENCE COLLECTION KIT FOR ANALYSIS, TESTING MAY BE TERMINATED OR NOT INITIATED.

(G)   EXCEPT AS PROVIDED IN SUBSECTION (E) OF THIS SECTION, AN INVESTIGATING LAW ENFORCEMENT AGENCY THAT RECEIVES A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL:

(1)   SUBMIT THE KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS TO A FORENSIC LABORATORY FOR ANALYSIS WITHIN 30 DAYS OF RECEIPT OF THE KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS; AND

(2)   MAKE USE OF CERTIFIED SEXUAL ASSAULT CRISIS PROGRAMS OR OTHER QUALIFIED COMMUNITY–BASED SEXUAL ASSAULT VICTIM SERVICE ORGANIZATIONS THAT CAN PROVIDE SERVICES AND SUPPORT TO SURVIVORS OF SEXUAL ASSAULT.

(H)   (1)   (I)   A FORENSIC LABORATORY THAT RECEIVES A SEXUAL ASSAULT EVIDENCE COLLECTION KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS FOR ANALYSIS SHALL DETERMINE SUITABILITY AND COMPLETE SCREENING, TESTING, AND ANALYSIS ~~WITHIN 150 DAYS OF RECEIPT~~ IN A TIMELY MANNER.

(II)   FAILURE TO COMPLETE THE SCREENING, TESTING, AND ANALYSIS IN A TIMELY MANNER AS REQUIRED UNDER SUBPARAGRAPH (I) OF THIS PARAGRAPH MAY NOT CONSTITUTE THE BASIS FOR EXCLUDING THE ANALYSIS OR RESULTS AS EVIDENCE IN A CRIMINAL PROCEEDING.

(2)   FORENSIC LABORATORIES SHALL REPORT ANNUALLY TO THE MARYLAND SEXUAL ASSAULT EVIDENCE KIT POLICY AND FUNDING COMMITTEE REGARDING THE DURATION REQUIRED TO COMPLETE TESTING, BEGINNING WITH RECEIPT OF THE KIT UNTIL A REPORT IS PREPARED, OF EACH SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

LAWRENCE J. HOGAN, JR., Governor                    Ch. 33

    **(I)**   <u>**(1)**</u>   THE ELIGIBLE RESULTS OF AN ANALYSIS OF A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL BE ENTERED INTO <u>CODIS.</u>

    <u>**(2)**</u>   <u>THE DNA COLLECTED FROM A VICTIM UNDER THIS SECTION MAY NOT BE USED FOR ANY PURPOSE EXCEPT AS AUTHORIZED BY THIS SECTION.</u>

    **[**(e)**] (J)**   The Attorney General shall adopt regulations for uniform statewide implementation of this section.

11–927.

    (a)   In this section, "Committee" means the Maryland Sexual Assault Evidence Kit Policy and Funding Committee.

    (e)   (1)   The Committee shall develop and disseminate best practices information and recommendations regarding:

        (i)   the testing and retention of sexual assault evidence collection kits;

        (ii)   coordination between State agencies, victim services providers, local law enforcement, and local sexual assault response teams;

        (iii)   payment for sexual assault evidence collection kits;

        (iv)   increasing the availability of sexual assault evidence collection exams for alleged victims of sexual assault;

        (v)   reducing the shortage of forensic nurse examiners;

        (vi)   increasing the availability of information to sexual assault victims regarding:

            1.   criminal prosecutions of sexual assault crimes;

            2.   civil law remedies available to victims of sexual assault;

            3.   sexual assault evidence collection kits; and

            4.   victim rights; **[**and**]**

        (vii)   creating and operating a statewide sexual assault evidence collection kit tracking system that is accessible to victims of sexual assault and law enforcement**; AND**

2019 LAWS OF MARYLAND

(VIII) ESTABLISHING AN INDEPENDENT PROCESS TO REVIEW AND MAKE RECOMMENDATIONS REGARDING A DECISION OF A LAW ENFORCEMENT AGENCY NOT TO TEST A SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

SECTION 2. AND BE IT FURTHER ENACTED, That the Attorney General shall adopt regulations for implementation of § 11–926(e) through (i) of the Criminal Procedure Article, as enacted by Section 1 of this Act, on or before ~~January 1, 2020~~ *December 1, 2019*.

*SECTION 3. AND BE IT FURTHER ENACTED, That Section 1 of this Act shall take effect January 1, 2020.*

SECTION ~~3.~~ *4.* AND BE IT FURTHER ENACTED, That*, except as provided in Section 3 of this Act,* this Act shall take effect ~~October 1, 2019~~ ~~January 1, 2020~~ *June 1, 2019*.

**Approved by the Governor, April 18, 2019.**

LAWRENCE J. HOGAN, JR., Governor                    Ch. 34

Chapter 34

## (House Bill 1096)

AN ACT concerning

### Criminal Procedure – Sexual Assault Evidence Collection Kits – Analysis

FOR the purpose of requiring a sexual assault evidence collection kit to be submitted to a forensic laboratory for analysis unless a certain requirement is met; requiring a certain victim to be ~~given the option to consent to submission of a certain sexual assault evidence collection kit for analysis without making a certain commitment~~ <u>informed that the victim may initiate a criminal complaint under certain circumstances; authorizing the termination or discontinuance of testing of a sexual assault evidence collection kit under certain circumstances</u>; requiring a certain law enforcement agency that receives a sexual assault evidence collection kit to take certain actions under certain circumstances; requiring a forensic laboratory that receives a sexual assault evidence collection kit for analysis to take certain actions ~~within a certain number of days of receipt~~ <u>in a timely manner</u>; *<u>providing that the failure to take certain actions in a timely manner may not constitute the basis for excluding certain evidence;</u>* requiring that the eligible results of a certain analysis be entered into the Combined DNA Index System (CODIS); <u>requiring a forensic laboratory to report to the Maryland Sexual Assault Evidence Kit Policy and Funding Committee annually regarding the duration necessary to complete testing of sexual assault evidence collection kits; prohibiting a certain use of</u> ~~a certain victim's~~ *certain* <u>DNA under certain circumstances;</u> requiring the Maryland Sexual Assault Evidence Kit Policy and Funding Committee to establish a certain process to review and make recommendations regarding a certain decision of a law enforcement agency; requiring the Attorney General to adopt certain regulations on or before a certain date; <u>providing for a delayed effective date</u> ~~for certain provisions of this Act~~; and generally relating to sexual assault evidence collection kits.

BY repealing and reenacting, with amendments,
 Article – Criminal Procedure
 Section 11–926 and 11–927(e)(1)
 Annotated Code of Maryland
 (2018 Replacement Volume)

BY repealing and reenacting, without amendments,
 Article – Criminal Procedure
 Section 11–927(a)
 Annotated Code of Maryland
 (2018 Replacement Volume)

 SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

## Article – Criminal Procedure

11–926.

(a)     (1)     In this section the following words have the meanings indicated.

(2)     "Child advocacy center" has the meaning stated in § 13–2201 of the Health – General Article.

(3)     "Hospital" has the meaning stated in § 19–301 of the Health – General Article.

(b)     A health care provider that performs a sexual assault evidence collection kit exam on a victim of sexual assault shall provide the victim with:

(1)     contact information for the investigating law enforcement agency that the victim may contact about the status and results of the kit analysis; and

(2)     written information describing the laws and policies governing the testing, preservation, and disposal of a sexual assault evidence collection kit.

(c)     An investigating law enforcement agency that receives a sexual assault evidence collection kit, within 30 days after a request by the victim from whom the evidence was collected, shall provide the victim with:

(1)     information about the status of the kit analysis; and

(2)     all available results of the kit analysis except results that would impede or compromise an ongoing investigation.

(d)     (1)     A sexual assault evidence collection kit shall be transferred to a law enforcement agency:

(i)     by a hospital or a child advocacy center within 30 days after the exam is performed; or

(ii)     by a government agency in possession of a kit, unless the agency is otherwise required to retain the kit by law or court rule.

(2)     Except as provided in paragraph (3) of this subsection, within 20 years after the evidence is collected, a law enforcement agency may not destroy or dispose of:

(i)     a sexual assault evidence collection kit; or

(ii)     other crime scene evidence relating to a sexual assault that has been identified by the State's Attorney as relevant to prosecution.

LAWRENCE J. HOGAN, JR., Governor                    Ch. 34

(3)     A law enforcement agency is not required to comply with the requirements in paragraph (2) of this subsection if:

(i)     the case for which the evidence was collected resulted in a conviction and the sentence has been completed; or

(ii)    all suspects identified by testing a sexual assault evidence collection kit are deceased.

(4)     On written request by the victim from whom the evidence was collected, a law enforcement agency with custody of a sexual assault evidence collection kit or other crime scene evidence relating to a sexual assault shall:

(i)     notify the victim no later than 60 days before the date of intended destruction or disposal of the evidence; or

(ii)    retain the evidence for 12 months longer than the time period specified in paragraph (2) of this subsection or for a time period agreed to by the victim and the law enforcement agency.

(E)   A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL BE SUBMITTED TO A FORENSIC LABORATORY FOR ANALYSIS UNLESS:

(1)   THERE IS CLEAR EVIDENCE DISPROVING THE ALLEGATION OF SEXUAL ASSAULT;

(2)   THE FACTS ALLEGED, IF TRUE, COULD NOT BE INTERPRETED TO VIOLATE A PROVISION OF TITLE 3, SUBTITLE 2, TITLE 3, SUBTITLE 3, TITLE 3, SUBTITLE 6, OR TITLE 11, SUBTITLE 3 OF THE CRIMINAL LAW ARTICLE;

~~(3)   THE KIT CONTAINS AN INSUFFICIENT AMOUNT OF FORENSIC EVIDENCE TO ENABLE AN ANALYSIS TO BE PERFORMED;~~

~~(4)~~ (3)     THE VICTIM FROM WHOM THE EVIDENCE WAS COLLECTED DECLINES TO GIVE CONSENT FOR ANALYSIS; OR

~~(5)~~ (4)     THE SUSPECT'S PROFILE ~~IS CONTAINED~~ HAS BEEN COLLECTED FOR ENTRY AS A CONVICTED OFFENDER FOR A QUALIFYING OFFENSE IN THE COMBINED DNA INDEX SYSTEM (CODIS) MAINTAINED BY THE FEDERAL BUREAU OF INVESTIGATION AND THE SUSPECT ~~ADMITTED TO CONSENSUAL SEX WITH THE VICTIM DURING THE INCIDENT~~ HAS PLEADED GUILTY TO THE OFFENSE THAT LED TO THE ~~FORENSIC EXAMINATION~~ SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

(F)   (1)   ~~A VICTIM OF SEXUAL ASSAULT WHO WISHES TO REMAIN ANONYMOUS SHALL BE GIVEN THE OPTION TO CONSENT TO SUBMISSION OF THE VICTIM'S SEXUAL ASSAULT EVIDENCE COLLECTION KIT FOR ANALYSIS WITHOUT MAKING ANY COMMITMENT TO TAKING FURTHER ACTION~~ IF A VICTIM OF SEXUAL ASSAULT WISHES TO REMAIN ANONYMOUS AND NOT FILE A CRIMINAL COMPLAINT, THE VICTIM SHALL BE INFORMED THAT THE VICTIM MAY FILE A CRIMINAL COMPLAINT AT A FUTURE TIME.

(2)   IF A PROVISION OF SUBSECTION (E) OF THIS SECTION IS DETERMINED TO BE SATISFIED AFTER THE SUBMISSION OF THE VICTIM'S SEXUAL ASSAULT EVIDENCE COLLECTION KIT FOR ANALYSIS, TESTING MAY BE TERMINATED OR NOT INITIATED.

(G)   EXCEPT AS PROVIDED IN SUBSECTION (E) OF THIS SECTION, AN INVESTIGATING LAW ENFORCEMENT AGENCY THAT RECEIVES A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL:

(1)   SUBMIT THE KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS TO A FORENSIC LABORATORY FOR ANALYSIS WITHIN 30 DAYS OF RECEIPT OF THE KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS; AND

(2)   MAKE USE OF CERTIFIED SEXUAL ASSAULT CRISIS PROGRAMS OR OTHER QUALIFIED COMMUNITY–BASED SEXUAL ASSAULT VICTIM SERVICE ORGANIZATIONS THAT CAN PROVIDE SERVICES AND SUPPORT TO SURVIVORS OF SEXUAL ASSAULT.

(H)   (1)   *(I)*   A FORENSIC LABORATORY THAT RECEIVES A SEXUAL ASSAULT EVIDENCE COLLECTION KIT AND ALL REQUESTED ASSOCIATED REFERENCE STANDARDS FOR ANALYSIS SHALL DETERMINE SUITABILITY AND COMPLETE SCREENING, TESTING, AND ANALYSIS ~~WITHIN 150 DAYS OF RECEIPT~~ IN A TIMELY MANNER.

*(II)   FAILURE TO COMPLETE THE SCREENING, TESTING, AND ANALYSIS IN A TIMELY MANNER AS REQUIRED IN SUBPARAGRAPH (I) OF THIS PARAGRAPH MAY NOT CONSTITUTE THE BASIS FOR EXCLUDING THE ANALYSIS OR RESULTS AS EVIDENCE IN A CRIMINAL PROCEEDING.*

(2)   FORENSIC LABORATORIES SHALL REPORT ANNUALLY TO THE MARYLAND SEXUAL ASSAULT EVIDENCE KIT POLICY AND FUNDING COMMITTEE REGARDING THE DURATION REQUIRED TO COMPLETE TESTING, BEGINNING WITH RECEIPT OF THE KIT UNTIL A REPORT IS PREPARED, OF EACH SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

LAWRENCE J. HOGAN, JR., Governor          Ch. 34

**(I)**      **(1)**      **THE ELIGIBLE RESULTS OF AN ANALYSIS OF A SEXUAL ASSAULT EVIDENCE COLLECTION KIT SHALL BE ENTERED INTO CODIS.**

**(2)**      **THE DNA COLLECTED FROM A VICTIM UNDER THIS SECTION MAY NOT BE USED FOR ANY PURPOSE EXCEPT AS AUTHORIZED BY THIS SECTION.**

[(e)] **(J)**      The Attorney General shall adopt regulations for uniform statewide implementation of this section.

11–927.

(a)      In this section, "Committee" means the Maryland Sexual Assault Evidence Kit Policy and Funding Committee.

(e)      (1)      The Committee shall develop and disseminate best practices information and recommendations regarding:

(i)      the testing and retention of sexual assault evidence collection kits;

(ii)      coordination between State agencies, victim services providers, local law enforcement, and local sexual assault response teams;

(iii)      payment for sexual assault evidence collection kits;

(iv)      increasing the availability of sexual assault evidence collection exams for alleged victims of sexual assault;

(v)      reducing the shortage of forensic nurse examiners;

(vi)      increasing the availability of information to sexual assault victims regarding:

1.      criminal prosecutions of sexual assault crimes;

2.      civil law remedies available to victims of sexual assault;

3.      sexual assault evidence collection kits; and

4.      victim rights; **[and]**

(vii)      creating and operating a statewide sexual assault evidence collection kit tracking system that is accessible to victims of sexual assault and law enforcement**; AND**

– 5 –

(VIII) ESTABLISHING AN INDEPENDENT PROCESS TO REVIEW AND MAKE RECOMMENDATIONS REGARDING A DECISION OF A LAW ENFORCEMENT AGENCY NOT TO TEST A SEXUAL ASSAULT EVIDENCE COLLECTION KIT.

SECTION 2. AND BE IT FURTHER ENACTED, That the Attorney General shall adopt regulations for implementation of § 11–926(e) through (i) of the Criminal Procedure Article, as enacted by Section 1 of this Act, on or before ~~January 1, 2020.~~ December 1, 2019.

SECTION 3. AND BE IT FURTHER ENACTED, That Section 1 of this Act shall take effect January 1, 2020.

SECTION ~~3.~~ 4. AND BE IT FURTHER ENACTED, That, except as provided in Section 3 of this Act, this Act shall take effect ~~October 1, 2019~~ June 1, 2019.

**Approved by the Governor, April 18, 2019.**



**Terrence B. Sheridan**
**Chief of Police**

**Baltimore County Police Department**
**Headquarters**
**700 E. Joppa Road**
**Towson, MD 21286**
**(410) 887-2214**
**Fax (410) 887-8887**

*"INTEGRITY...FAIRNESS...SERVICE"*

## SPECIAL ORDER # 2017-02

**DATE:   April 12, 2019**

### TO:  All Police Department Personnel.  To be Announced at Roll Call and a Copy Posted on the Department's Intranet Site.

**RE:** Addendum to Evidence Retention.

**EFFECTIVE:** Immediately.

**BACKGROUND:** The amount of evidence stored in the Evidence Management Unit (EMU) is vast and expansive.  The space available to the EMU to store evidence is very limited.  Special Order #2017-02 was released in 2017 to codify procedures for evidence retention and destruction to assist the EMU in efficiently using its storage space.  Numerous discussions were held involving the State's Attorney's Office and various units within the Department, to determine the best practices for our members to follow when determining the disposition of evidence.

A Notice of Intent to Dispose Evidence letter was introduced in Special Order #2017-02.  The letter was crafted by the Legal Section and the policy for its use is detailed within this addendum.  A template of this letter is available on the Department's Intranet for use by the lead officer/detective in certain specified cases.

The Form 128, Disposition of Property/Evidence, was modified in Special Order #2017-02.  The EMU recommended numerous additions in order to assist the Department in determining whether or not evidence should be released/destroyed or continue to be held.  Information provided by the member when completing the Form 128 assists in determining whether or not the evidence has reached the end of its retention period and would therefore no longer need to be held by the Department.  To accomplish the changes needed to the Form 128, it was separated into a Form 128D, Disposal/Destruction of Property/Evidence, and a Form 128R, Retention of Property/Evidence.

This addendum updates Special Order #2017-02 to account for Code of Maryland Regulations (COMAR) 02.08.01.01 through 02.08.01.05, which went into effect on October 8, 2018.  The updated COMAR regulations are intended to ensure uniform statewide implementation of certain procedures related to rape and sex offense investigations.  The regulations expanded victim notification and Sexual Assault Forensic Examination (SAFE) kit retention requirements.  In order to ensure that the Department is in compliance, the Special Order has been revised to include a section that specifically addresses evidence retention requirements for rape and sex offense cases.

A standing letter has been obtained from the State's Attorney's Office agreeing to allow the Department to dispose of sex offense related evidence in all unsolved misdemeanor cases with no SAFE kit or other biological material evidence after one year and one day, if the victim is an adult, and after three years and one day, if the victim is a juvenile.  These time frames mirror the statute of limitations for these cases under Maryland law.

**PURPOSE:** To establish procedures for the retention, destruction, and release of evidence in the custody of the Baltimore County Police Department.

**RELATIONSHIP TO DEPARTMENTAL VALUES:** By ensuring that evidence needed in judicial proceedings is properly maintained, we demonstrate our *SERVICE* to the public.

**POLICY:**

## GENERAL
- Evidence will not be released or destroyed:
  1. Prior to the adjudication of charges in court.
  2. During the length of the defendant's sentence, and any consecutive sentences.
  3. During the length of the defendant's period of parole and/or probation.
  **EXCEPTION:** Controlled Dangerous Substance (CDS) evidence as described below.
  4. When prohibited by law.

## MEMBERS
- Ensure that evidence needed for court and/or appeals is preserved in the EMU.
- Verify that evidence may be released or disposed of when no longer needed.
- Ensure cases involving a follow-up investigation by a specialized unit/team/member are forwarded to that entity for determination of evidence retention or disposal.
- Check the Department's records management system (RMS), Maryland court databases, Judicial Case Search website, and all other related databases when determining if evidence is to be retained.
  **NOTE:** Members will list the databases queried in an Incident Supplement.
- Consult with the State's Attorney's Office when all databases have been checked, all guidelines in this addendum have been reviewed, and they are uncertain if evidence should be retained.
- Ensure the evidence retention schedule is applied to all defendants/suspects, if a case involves multiple defendants/suspects.
- Responding to a Form 128 request from the EMU, or proactively attempting to address evidence being held in the Department's custody after a case has concluded or reached the point of no further investigation, will determine the disposition of evidence based upon the six categories below:
  1. Property to be held after conviction.
  2. Property held when no arrest is made.
  3. Special considerations for cases involving evidence with biological material in unsolved cases.
  4. Special policies when dealing with specific types of evidence.
  5. Rape and sex offense related evidence.
  6. Court ordered property forfeitures.

## NOTICE OF INTENT TO DISPOSE EVIDENCE LETTERS
- Sent by the investigating member/unit, via certified mail regarding homicides, first and second degree rapes, and first and second degree sex offenses.
- Notify defendants of the disposal of evidence associated with their case.
- Sent to the defendant, the defendant's lawyer, and the Office of the Public Defender.
  **NOTE:** If there is any objection, disposal of the items cannot occur without a court order.
- May be sent in other circumstances (i.e., CDS containing Fentanyl/Carfentanil, and computers seized in child pornography cases).

## SUPERVISORS
- Ensure members complete requested Forms 128D or Forms 128R in a timely manner.
- Ensure the State's Attorney's Office is consulted when the retention of evidence is in question.


## *PROPERTY TO BE HELD AFTER CONVICTION*

## GENERAL
- The retention period will be the length of the sentence (i.e., actual jail time served plus any parole and/or probation period).
  **EXAMPLE:**  A subject receives a 10 year sentence.  Five years are suspended, and two years of parole and/or probation are imposed on the subject after release from incarceration. In this case the evidence will be held for seven years (i.e., time served plus parole and/or probation time), and not the original 10 year sentence.
  **EXCEPTION:**  In cases where a rape or sex offense charge was considered, members will refer to the section titled "Rape and Sex Offense Related Evidence," to ensure requirements for destruction of evidence in rape and sex offense cases are met, prior to destruction of evidence, regardless of whether the defendant was found guilty of committing that offense.

## CASES INVOLVING CO-DEFENDANTS
- The retention period for all evidence will be based upon the sentence of the co-defendant with the longest sentence.
- The retention period will be based upon the retention schedule for no arrest made, if an unidentified suspect exists.

**EXCEPTION:**  For rape and sex offense cases refer to the section titled "Rape and Sex Offense Related Evidence."


## *PROPERTY HELD WHERE NO ARREST IS MADE*

## GENERAL
- In cases with no biological material evidence, where no arrest is made, evidence can be disposed of by the investigating unit/team/member:
  1. Robbery, unarmed – after two years.
  2. Robbery, armed – after three years.
  3. First and second degree burglary – after three years.
  4. Third degree burglary – after two years.
  5. Other felony property crimes – after three years.
  6. Rape and sex offenses – refer to section titled "Rape or Sex Offense Related Evidence."
  7. Misdemeanors not listed – After one year and one day.
- For all other cases, the member will consult with the investigative unit responsible for the investigation of the incident.
- The investigating unit/team/member may decide to place a longer retention period on evidence to hold for further investigation.
  **NOTE:**  Justification for the retention will be detailed on the Form 128R.


## *SPECIAL CONSIDERATIONS FOR CASES INVOLVING EVIDENCE WITH BIOLOGICAL MATERIAL IN UNSOLVED CASES*

## GENERAL
- The retention period for all evidence in unsolved misdemeanor cases with biological evidence will be one year and one day.
  **EXCEPTION:** Unsolved misdemeanor sex offense cases.

- The following retention periods will be used for all evidence in **unsolved cases with biological evidence** that has been entered into CODIS:
    1. Unsolved homicides – retention period is 75 years from the date of offense.
    2. Unsolved commercial robberies, arsons, child abuses, kidnappings, first degree assaults with handguns or serious bodily injury, carjackings, home invasions, automobile manslaughters while intoxicated, and homicides by vehicle while intoxicated – retention period is 30 years.
    3. Unsolved street robberies – retention period is 10 years.
    4. Unsolved first and second degree burglaries – retention period is 25 years.
    5. Unsolved felony property crimes in general – retention period is five years.

**NOTE:** For rape and sex offense cases refer to the section titled "Rape and Sex Offense Related Evidence."

- The retention periods established under the heading ***PROPERTY HELD WHERE NO ARREST IS MADE*** will be used when evidence with biological material has been:
    1. Analyzed and no biological material has been found.
    2. Analyzed and biological material found does not meet the criteria for entry into CODIS.
    3. Not been analyzed, because the evidence has not been accepted by the Biology Lab for analysis (Refer to Department's current DNA Analysis policy).

**EXCEPTION:** Rape and sex offense cases (Refer to the section titled "Rape and Sex Offense Related Evidence".)

- Evidence will not be disposed of if a Form 88, Request for Laboratory Examination, has been submitted, and results (i.e., laboratory results, or a determination that items will not be analyzed) have not yet been returned.


## *SPECIAL POLICIES WHEN DEALING WITH SPECIFIC TYPES OF EVIDENCE*

### GENERAL

- Cases adjudicated as "stet" – retention period is three years for felonies and one year for misdemeanors.
- Cases adjudicated as "nolle prosequi" – retention period reverts back to the retention period for the unsolved case unless a special request is made by the lead officer/investigator.

**EXCEPTION:** For rape and sex offense cases refer to the section titled "Rape and Sex Offense Related Evidence."

- Controlled Dangerous Substances (CDS) evidence – the CDS must be photographed prior to being packaged (preferably using the Axon Capture application) at the time of seizure and tested prior to court. The drugs will be held for 30 days post-conviction for appeals and then destroyed.

**EXCEPTION:** Civil marijuana-THC cases will follow the current evidence procedures detailed in Addendum to Special Order #2014-06, Possession of Marijuana-THC – Civil Offenses.

**NOTE:** Fentanyl and Carfentanil will not be transported to court due to the inherent danger of the substances. Evidence containing Fentanyl and Carfentanil will be destroyed after verification of its presence in the analysis report.

- Seized currency:
    1. Containing biological or forensic evidence (e.g., fingerprints, DNA, etc.) – refer to "Special Considerations" section above.
    2. Containing serialized evidence – photograph currency with serial numbers in view and release to the Baltimore County Office of Budget and Finance for deposit.
    3. Not containing biological evidence, forensic evidence, and is not serialized evidence (i.e., used in a controlled buy) – may be released to the Baltimore County Office of Budget and Finance.

    **EXCEPTION:** Bank robbery cases that will be prosecuted in Federal court.

- Computers seized in child pornography cases – after forensic examination, a Notice of Intent to Dispose Evidence letter will be sent advising the computer will be destroyed, or its hard drive wiped in 30 days.

## *RAPE AND SEX OFFENSE RELATED EVIDENCE*

### GENERAL
- Members will consult with the investigative unit responsible for the investigation of the incident, prior to requesting the destruction of any rape or sex offense related evidence.
- When a written request has been received from a victim from whom evidence has been collected, the investigating member will consult with the Legal Section, prior to completion of a Form 128R or 128D, to determine if COMAR regulations have been met (i.e., notification to the victim has been made no later than 60 days before the date of intended destruction or disposal; or retention of the evidence for 12 months longer than the period specified by the COMAR regulation, or for a time period agreed upon by the victim and the Department).
  **EXCEPTION:** Members assigned to the Special Victims Team and the Crimes Against Children Unit do not need to consult the Legal Section, if their commander has reviewed and approved the release or destruction based on the COMAR regulations.

### CASES CONTAINING A SEXUAL ASSAULT FORENSIC EXAMINATION (SAFE) KIT AND/OR OTHER BIOLOGICAL MATERIAL EVIDENCE
- Retention period for all evidence (i.e., SAFE Kit, biological evidence, and all non-biological evidence) in:
  1. Misdemeanor offense cases is 20 years.
  2. Felony offense cases is 75 years.

**EXCEPTIONS:**
  1. When the case for which a SAFE kit was collected resulted in a conviction and the sentence has been completed; or
  2. All suspects identified by testing a SAFE kit are deceased.

### CASES WITH NO SAFE KIT OR OTHER BIOLOGICAL MATERIAL EVIDENCE
- Retention period for all evidence in:
  1. Unsolved misdemeanor offense cases is one year and one day.
     **EXCEPTION:** The retention period will be three years and one day, if the victim is a juvenile.
  2. Misdemeanor cases where a conviction has been made is the length of the sentence (i.e., actual jail time served plus any parole and/or probation period).
  3. Felony cases is no less than 20 years, if the State's Attorney has determined the evidence is relevant to prosecution.
     **NOTE:** The State's Attorney's Office will be consulted on a case by case basis, prior to the completion of a Form 128D or Form 128R.

## *COURT ORDERED PROPERTY FORFEITURES*

### GENERAL
- Guns, CDS, and computers from pornography crimes seized via a court forfeiture supersede the retention period enumerated in this policy.
  **NOTE:** These items may be disposed of immediately.

**IMPLEMENTATION:** This Special Order addendum will be distributed electronically to all Department members. Shift/Unit supervisors will be responsible for the referencing of this Special Order. This Special Order addendum supersedes Special Order #2017-02.

By order of,

Terrence B. Sheridan
*Chief of Police*