IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANNA BORKOWSKI, et al. | : |  |
|  | : |  |
| v. | : | Civil Action No. DKC 18-2809 |
|  | : |  |
| BALTIMORE COUNTY, MARYLAND, et al. | : |  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil
rights case is a motion for summary judgment filed by Defendants
Scott Shellenberger, Lisa Dever, and Bonnie Fox of the State's
Attorney's Office ("SAO") ("SAO Defendants") and Defendants
Kristin Burrows and Nicholas Tomas ("Detective Defendants") (all
collectively "Defendants"). (ECF No. 117). Accompanying the
dispositive motion, Defendants filed two motions for leave to file
audio and video exhibits, (ECF Nos. 116; 132) and two motions to
seal and redact, (ECF Nos. 119; 134). Plaintiff Anna Borkowski
also filed a motion to seal. (ECF No. 130). The issues have been
fully briefed, and the court now rules, no hearing being deemed
necessary. Local Rule 105.6. For the following reasons,
Defendants' non-dispositive motions will be granted, Ms.
Borkowski's motion to seal will be granted in part and denied in
part, and Defendants' motion for summary judgment will be denied.

I.   **Factual Background**

This case began as a putative class action revolving around the investigation and handling of sexual assault allegations by various Baltimore County and University of Maryland affiliated entities and individuals.  After two motions to dismiss, the sole remaining claim is one for First Amendment retaliation brought by Plaintiff Anna Borkowski against the remaining Defendants.

Ms. Borkowski's claim centers on Defendants' response to her efforts in March 2018 to have her alleged rape charged and prosecuted.  The alleged assault occurred over the night of October 19 and into the early morning hours of October 20, 2017.  At the time, Ms. Borkowski was a 21-year-old student at Towson University ("Towson").  (ECF No. 117-5, at 13 (Borkowski Depo.)).[1]  She and a friend met up for happy hour after classes.  (*Id.*, at 19).  They continued to drink throughout the evening and met up later with three men Ms. Borkowski had previously been classmates with.  (*Id.*, at 21, 25-28).  After drinking and dancing together, they went to her friend's apartment.  (*Id.*, at 28-37).  The men encouraged the women to continue drinking.  (*Id.*, at 41-43, 50-51; ECF No. 117-8, at 6 (Incident Report)).

Ms. Borkowski remembers little of what happened next, and her friend has no memory of it, (ECF No. 117-48, at 13, 20-21 (Hendler

---

[1]  Deposition citations are to the transcript page number, rather than the ECF page number.

Depo.)).   As of her January 2021 deposition, Ms. Borkowski has only one brief memory of recognizing that two of the men were having sex with her while the third man had sex with her friend, who appeared to be passed out.   (ECF No. 117-5, at 57-59, 67 (Borkowski Depo.)).   In that moment, Ms. Borkowski "felt like [she] was paralyzed" and feared that she would be physically harmed by the men's actions.   (*Id.*, at 53-54, 70).   Ms. Borkowski does not have any memory of the men either threatening her with force or using force against her.   (*Id.*, at 69).   But both women were injured when they awoke the next day.   (*Id.*, at 71; ECF No. 117-48, at 23 (Hendler Depo.)).   Ms. Borkowski believes that her injuries were consistent with force being used to facilitate sex. (ECF No. 117-5, at 71-72).   Ms. Borkowski and her friend immediately went to the police station to report the incident. (ECF No. 117-8, at 5 (Incident Report)).   At that time, Ms. Borkowski also had a brief memory of sex with two men on the balcony.   (*Id.*, at 7).

The State's Attorney's Office declined to bring charges.   (ECF Nos. 117-5, at 105 (Borkowski Depo.); 117-18, at 87 (Burrows Depo.)).   Ms. Borkowski was upset by the decision and spoke with multiple individuals about it in November and December, including Assistant State's Attorney Dever, Investigator Fox, and Detective Burrows.   (*See* ECF No. 117-5, at 105-07, 111).   Eventually, she decided she "wanted to give it another shot" by requesting that a

District Court Commissioner charge her alleged assailants. (*See id.*, at 129). The Commissioners are "today's equivalent of a magistrate[.]" *Sibley v. Doe*, 227 Md.App. 645, 657 (2016) (quotation omitted). They receive sworn applications for charges and determine whether there is probable cause to issue them. Md. Code Ann., Cts. & Jud. Proc. § 2-607(c)(1); Md.R.Cr. 4-211(b)(1). State's Attorneys may, however, terminate or dismiss a charge by entering a *nolle prosequi*. Md.R.Cr. 4-247(a).

In March 2020, Ms. Borkowski filed two applications with different Commissioners. (ECF Nos. 117-21; 117-22). She believed that charges would issue and hoped that a prosecution would ensue. (ECF No. 117-5, at 130-31 (Borkowski Depo.)). Defendants, however, viewed Ms. Borkowski's attempts to apply for charges as futile, because they would move to dismiss any charges unless Ms. Borkowski had new evidence. (*See, e.g.*, ECF No. 117-20, at 67 (Dever Depo.)). There is no evidence, however, that Defendants told Ms. Borkowski this fact. (*See id.*, at 68-70).

The first application was denied after the Commissioner consulted with Assistant State's Attorney Dever. (ECF No. 117-20, at 53-55). After obtaining representation, Ms. Borkowski added more detail to her second application, including citing to Maryland's first-degree rape statute. (*Compare* ECF No. 117-21, *with* ECF No. 117-22; *see also* ECF No. 117-45, at 4:57-5:18 (Greenberg Interview)). Both applications alleged, however, that

4

the assailants had sex with Ms. Borkowski "by force." (*Id.*).  On March 20, the second application was approved and charges were issued against all three alleged assailants for various offenses, including first-degree rape.  (ECF No. 117-23).

Assistant State's Attorney Dever described her reaction to the charges as follows: "I was very upset. . . . I wanted to try and communicate somehow that she needed to stop going to the Commissioner's Office[.]"  (ECF No. 117-20, at 67-68 (Dever Depo.)).[2]  She consulted with State's Attorney Shellenberger and he instructed Ms. Dever to have detectives speak with Ms. Borkowski.  (ECF No. 117-24, at 12-13, 24-25 (Shellenberger Depo.)).  They wanted an in-person meeting despite having Ms. Borkowski's contact information and knowing that she had an attorney.  (ECF Nos. 117-27, at 30 (Fox Depo.); 117-24, at 83 (Shellenberger Depo.); 117-20, at 57 (Dever Depo.); 117-15, at 2 (Burrows Notes)).  On Ms. Dever's instructions, Investigator Fox asked Detective Burrows "to go talk to Ms. Borkowski, and talk[] to her about no further charges.  . . . [In other words,] asking

---

[2] Ms. Dever's deposition also includes the following exchange: "Q.  And did you instruct Ms. Fox to do anything or not do anything? A.  I wanted to know how we could get it to stop.  Q.  How we could get what to stop?  A.  Get her to stop going to the Commissioner's Office because I had already told her that we weren't going forward with charges.  I had told her mother we weren't going forward with charges.  I told you, as her attorney . . . . I did not understand where this communication [sic] and how it was not being understood, and I wanted -- and so all I asked was how do we get her to stop going to the Commissioner's Office."  (ECF No. 117-20, at 74).

her not to go to another Commissioner or go to the Commissioner to seek charges again." (ECF No. 117-27, at 28-30). Detective Burrows' notes may suggest she believed that she was to tell Ms. Borkowski that she needed to "stop going to comm[issioner]" and that, if she didn't, Ms. Borkowski faced a "civil lawsuit or worse[,] criminal charges[.]" (ECF No. 117-15, at 2). Separately, Defendants subpoenaed Ms. Borkowski's first application and intercepted the summons for her second. (ECF No. 117-18, at 47-50, 61-62, 100-01 (Burrows Depo.); 117-14 (Subpoena)).

On March 22, Detectives Burrows and Tomas obtained Ms. Borkowski's class schedule and went with an armed and uniformed county police officer to Ms. Borkowski's home in Baltimore City at a time she was not supposed to be in class. (ECF Nos. 117-19, at 57 (Tomas Depo.); 117-25, at 8 (Dorfler Depo.)). The officer had never before been asked to accompany or escort county detectives in Baltimore City, nor has he since. (ECF No. 117-25, at 11, 21). Ms. Borkowski's grandmother answered the door. (ECF No. 117-3 (Body Worn Camera Footage); *see also* ECF No. 117-4 (Gonzalez Depo.)). The officer told her she was being recorded and Detective Burrows proceeded to ask her questions about Ms. Borkowski's whereabouts. (*Id.*). The encounter lasted less than two-and-a-half minutes. (*Id.*). The detectives stated that they wanted to speak with Ms. Borkowski about charges she had filed and did not elaborate further. (*Id.*). Ms. Borkowski learned about the

6

encounter from her grandmother later that day. (ECF No. 117-5, at 153, 240-41 (Borkowski Depo.)).

Detective Tomas then called Ms. Borkowski twice, exchanged voicemails with her, but did not speak with her directly. (ECF No. 117-19, at 49 (Tomas Depo.); ECF No. 117-16, at 2 (Tomas Notes); ECF No. 117-5, at 152-53, 155-56 (Borkowski Depo.)). After speaking with Ms. Borkowski's lawyer, he and Detective Burrows informed the SAO Defendants that Ms. Borkowski would only speak to them with her attorney present. (ECF No. 117-19, at 49). State's Attorney Shellenberger then decided "that was the end of it." (ECF No. 117-24, at 26-28 (Shellenberger Depo.)). Defendants concluded that "there was now a lawyer involved, and so [they] did not feel like [a] meeting had any purpose." (*Id.*, at 28). At no time did Defendants explicitly deliver the message to Ms. Borkowski that she should stop filing charges. (ECF Nos. 117-19, at 134-35; 117-5, at 158-59). They successfully dismissed the charges over Ms. Borkowski's objections, however. (ECF No. 117-20, at 123 (Dever Depo.); *see, e.g.*, ECF Nos. 117-28, 117-31 (Motion to Vacate Dismissal and Denial).

## II. Procedural Background

This lawsuit commenced in September 2018. The third amended complaint was filed in December 2019. (ECF No. 81). All of the claims but Ms. Borkowski's remaining First Amendment retaliation claim against Defendants were dismissed in September 2020. (ECF

Nos. 103; 104).  Ms. Borkowski's remaining claim survived over Defendants' arguments that her applications were not protected by the First Amendment, that their own alleged actions were not sufficiently adverse, and that they were entitled to qualified immunity.  (ECF No. 103, at 27-41).  It was narrowed, however, to exclude on prosecutorial immunity grounds Ms. Borkowski's theory centered on SAO Defendants' communications with District Court Commissioners.  (*Id.*, at 26-27 & 27 n.15).

After discovery, Defendants moved jointly for summary judgment.  (ECF No. 117).  Ms. Borkowski opposed, (ECF No. 125), and Defendants replied, (ECF No. 133).  That dispositive motion was accompanied by several non-dispositive ones.  Defendants sought to file audio and video exhibits.  (ECF Nos. 116; 132). Defendants, (ECF Nos. 119; 134), and Plaintiff, (ECF No. 130), sought to file exhibits under seal.  Defendants' motions also requested permission to file unredacted memoranda under seal and to file partially redacted versions publicly.  Defendants' non-dispositive motions are unopposed.  Ms. Borkowski's motion to seal is opposed in part.  (ECF No. 131).

## III. Non-Dispositive Motions

### A.   Leave to File Audio and Video Exhibits

Defendants' unopposed motion for leave to file audio and video exhibits will be granted.

**B.    Leave to File Under Seal and with Partial Redactions**

A motion to seal must comply with Local Rule 105.11, which requires that the proponent include "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections."  This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Defendants' motions will be granted.  All of the exhibits and the proposed redactions in their memoranda contain sensitive medical information that should remain confidential at this time. Exhibits 5B and 39 through 43 (ECF Nos. 118-1; 118-3 through 118-7) are medical records.  Exhibit 38, (ECF No. 118-2), is an excerpt of Ms. Borkowski's deposition that discusses her medical history at length.  The information Defendants propose to redact in their memoranda references the same.  (ECF Nos. 117-1; 133).  Their exhibits cannot be easily redacted.

Ms. Borkowski's motion will be granted in part and denied in part.  Exhibit 3, (ECF No. 128), is a medical record that is also exhibited by Defendants, (ECF No. 118-1), and contains sensitive information that should remain confidential at this time.

Exhibit 1, (ECF No. 126), is Ms. Borkowski's full deposition transcript.  It contains some medical information but could be filed in redacted form.  Ms. Borkowski will be directed to file publicly a version of her deposition transcript that includes redactions only for sensitive medical information.  Exhibit 2, (ECF No. 127), is Ms. Dever's full deposition transcript and contains no sensitive medical information.  The Clerk will be directed to unseal the unredacted version of Ms. Dever's deposition transcript.[3]  Ms. Borkowski will not be permitted to withdraw either deposition because she relies extensively on both in her publicly filed response to Defendants' dispositive motion.

## IV.  Motion for Summary Judgment

Defendants move for summary judgment on three general grounds, two of which they raised at the motion to dismiss.  First, they argue that Ms. Borkowski cannot meet her burden of proof on any element of her First Amendment retaliation claim.  (ECF No. 117-1, at 27-36).  Second, they assert that they are entitled to qualified immunity.  (*Id.*, at 37-38).  If those arguments are rejected, Defendants contend that Ms. Borkowski can only establish

---

[3] In their reply, Defendants redacted part of one sentence from Ms. Dever's transcript, (ECF No. 133, at 10 n.5), likely because Ms. Borkowski moved to seal the entire document.  Rather than deny Defendants' motion to correct this one minor issue, the court provides that the redacted sentence reads: "ASA Dever's testimony is clear, however, that it was her decision – and no one else's – whether to charge.  *See* Defs.' Mem. Ex. 9, at 170:8-21."

that nominal damages were caused by their alleged retaliation. (*Id.*, at 38-40).

### A.    Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgement should be granted only when it is perfectly clear that no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine

dispute as to any material fact.  No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element that he bore the burden to prove.  *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

>    **B.   First Amendment Retaliation Merits**

"As a general matter, public officials may not respond to constitutionally protected activity with conduct or speech that would chill or adversely affect this protected activity.  That is so even if the act, when taken for different reasons, would have been proper." *McClure v. Ports*, 914 F.3d 866, 871 (4th Cir. 2019) (internal quotations omitted).  Ms. Borkowski's First Amendment retaliation claim could arise equally under the Petition Clause or the Free Speech Clause.  The legal framework for retaliation claims is the same for both, even though the protections under each clause are somewhat different.  *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–89 (2011).  "A plaintiff seeking to recover for First Amendment retaliation must [show] that (1) she engaged in First Amendment protected activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there

was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Defendants argue that no genuine dispute of material fact exists, and that they are entitled to judgment as a matter of law, for each element.  For the reasons discussed below, Defendants have not met their burden to show that no dispute exists and therefore are not entitled to judgment.

**1.   Protected Petition or Speech**

The First Amendment protects the right "to petition the government for a redress of grievances" and the "freedom of speech."  U.S. Const. amend I.  Both clauses protect "the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Guarnieri*, 564 U.S. at 387.  All agree that Ms. Borkowski's applications for charges are protected petitions and speech if they are true.

The parties disagree, however, about whether materially false applications for charges are protected by the petition or speech clauses.  Defendants, relying primarily on *McDonald v. Smith*, 472 U.S. 479 (1985), argue that they are unprotected under both clauses if the applicant knowingly, recklessly, or negligently submitted materially false charges.  (ECF No. 117-1, at 28 & 28 n.11).  Defendants do not indicate who bears the burden to show material

13

falsity, or the lack thereof. Ms. Borkowski, by contrast, contends that applications for charges are protected even if they are false. There appear to be three possible bases for Ms. Borkowski's view. She first suggests that the material falsity exception does not apply under the petition clause. (*See* ECF No. 125, at 10). She further suggests that the exception applies only in defamation suits brought by private individuals. As a result, it does not apply where a plaintiff alleges retaliation by means other than a defamation suit or alleges retaliation by a government official. (*See id.*). Ms. Borkowski is silent on the state of mind required where the exception does apply.[4]

It is not necessary to resolve this legal dispute now. Under any proposed standard, there is a genuine dispute of fact regarding the material falsity of Ms. Borkowski's applications and her state of mind when she filed the applications. Defendants argue that Ms. Borkowski falsely alleged that the assailants had sex with her by using force as defined in Maryland's first-degree rape statute. (ECF No. 117-1, at 30-31 & 31 n.12). Not only have Defendants failed to establish this beyond dispute, but their argument turns on Ms. Borkowski's memory, knowledge, and intent at the time she

---

[4] Ms. Borkowski also argues that her applications were protected because her statements were absolutely privileged under Maryland law. (ECF No. 125, at 10 n.3). Whether a petition or speech is protected under the First Amendment is a question of constitutional law and does not turn on Maryland law.

filed her application and must be resolved by a trier of fact. "[A]n award of summary judgment is seldom appropriate in disputes in which particular states of mind are decisive[.]" *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 197 (4th Cir. 2005) (quotation omitted).

First, it is not clear what Ms. Borkowski intended to communicate by her reference to the first-degree rape statute and the word "force." Defendants assert that Ms. Borkowski "swore out charges for first-degree forcible rape[.]" (ECF No. 117-1, at 31). Ms. Borkowski's citation to the statute does not mean she knew the legal elements of the crime or intended to assert that her allegations were consistent with that meaning. Ms. Borkowski denies that she did. (ECF No. 117-5, at 145-46 (Borkowski Depo.)).[5] Even if she did, the citation at most makes a legal assertion that the men violated the first-degree rape statute. Defendants' have not shown, however, that a layperson's legal assertion in an application for charges is material. The responsibility for reaching legal conclusions based on the facts alleged rests with the Commissioners, and not Ms. Borkowski.

---

[5] "Q. Were you aware when you submitted these Applications for Statement of Charges that forceable sex aided and abetted by another is the more serious crime of first-degree rape . . . ? A. I was not. Q. Were you aware that the statute CR [3]-303 is the first-degree rape statute? A. No. I was not. . . . Q. And did you have any understanding at any time . . . as to what the elements of first-degree rape are? A. Forceable sex without consent." (ECF No. 117-5, at 145-46 (Borkowski Depo.)).

The word "force" similarly resolves little.  Again, Ms. Borkowski's mere use of the term does not require that she intended it to have the same meaning as in the first-degree rape statute. Her statements again contradict this view and suggest she may have intended that the term to have a broader, lay meaning.  For example, she testified that she meant that the men had "forceful sex" with her.  (ECF No. 117-5, at 71).  If Ms. Borkowski intended the term to have its lay meaning, a reasonable jury could find her allegations true.  She and her friend suffered injuries during the alleged rape.  In addition, she testified that she did not consent to sex and would not have consented.

Even if Ms. Borkowski intended to allege that force consistent with the first-degree rape statute occurred or may have occurred, her application is not indisputably false.  Defendants argue, and Ms. Borkowski does not dispute, that force under that statute means "more than the mere physical exertion required to engage in a sexual act against the will and without the consent of the other person."  (ECF No. 117-1, at 30 (quotation omitted)).  Defendants rely entirely on Ms. Borkowski's own recollections to argue that her applications falsely allege such force was used.  (*See* ECF No. 117-1, at 30-31).  But everyone concedes that Ms. Borkowski did not have a complete memory of the events.  If she "admitted" anything in her statements, (ECF No. 117-1, at 8), it was only that she did not remember force or threats of force consistent

with first-degree rape (as construed by Defendants). Such testimony cannot establish that no force occurred. For this same reason, any legal conclusions asserted are not demonstrably false either. Nor were they rendered false by Assistant State's Attorney Dever's belief that the evidence did not satisfy the elements of first-degree rape.[6],[7]

Defendants' inability to establish that the applications were false also dooms any attempt to show that, when filing, Ms. Borkowski possessed a state of mind that rendered the applications unprotected. She could not have negligently, recklessly, or knowingly made false assertions of force if her allegations were true. The same logic applies to any legal assertions in Ms. Borkowski's applications.

---

[6] To the extent Defendants also contend that Ms. Borkowski's applications were false because she lacked personal knowledge of force, that argument fails too. Most importantly, Ms. Borkowski knew of injuries consistent with force being used, at least in lay terms, as discussed above. In addition, Defendants have not shown that an applicant's personal knowledge is required for, or material to, an application for charges. Plaintiff suggests that a good faith basis is enough. (ECF No. 125, at 7).

[7] Defendants argue for the first time on reply that Ms. Borkowski's applications were false because she did not recall, during a later police interview and deposition, one of the alleged assailants having sex with her. (ECF No. 133, at 10 n.5). Again, this allegation cannot be established as false based solely on the fragmented memories Ms. Borkowski could recall *after* filing the applications. Indeed, she initially remembered that the man had sex with her when she reported the incident to police. (ECF No. 117-8, at 7 (Incident Report)).

There are genuine disputes of material fact about the truthfulness of Ms. Borkowski's applications for charges and her knowledge when she filed them.    Although it appears that determining whether something is protected by the First Amendment is a question of law, *Garcia v. Montgomery Cnty.*, 145 F.Supp.3d 492, 514 (D.Md. 2015), that determination cannot be made here until the disputes of fact are resolved by a jury.  *See Carter v. Allen*, 762 F.App'x 827, 833 (11th Cir. 2019) (unpublished) (citing *Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018)).  Defendants are not entitled to judgment on protected activity grounds.

### 2.   Adverse Action

An action is considered adverse when "a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case."  *The Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (citation omitted).  This is an objective test. *Garcia*, 145 F.Supp.3d at 515 (citing *Constantine*, 411 F.3d at 500).  A plaintiff "need not actually be deprived of her First Amendment rights" and need not "prove that the alleged retaliatory conduct caused her to cease First Amendment activity[.]"  *Constantine*, 411 F.3d at 500.  "Even minor retaliation can have a chilling effect on future expression."  *Kirby v. City of Elizabeth City*, 388 F.3d 440, 450 n.8 (4th Cir. 2004).  Determining whether an action is sufficiently adverse is "a fact intensive inquiry, that focuses on

18

[1] the status of the speaker, [2] the status of the retaliator, [3] the relationship between the speaker and the retaliator, and [4] the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686.

When, however, "a private citizen is the speaker and a public official is the retaliator," otherwise adverse actions may not be actionable. *McClure*, 914 F.3d at 872; *see also Balt. Sun*, 437 F.3d at 416-17. If the challenged action is government speech, it cannot create liability unless "it was threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Balt. Sun*, 437 F.2d at 417. This limitation "is necessary to balance the government's speech interests with the plaintiff's speech interests." *Id.* This court held in its September 2019 Memorandum Opinion, (ECF No. 103, at 29-30), that Defendants' actions must satisfy this heightened standard because Ms. Borkowski objects to the alleged message they conveyed.

There is a genuine dispute of material fact about whether Defendants' actions, viewed together, conveyed a message that the SAO Defendants and the Detective Defendants would impose negative consequences on Ms. Borkowski if she continued to apply for charges. Both parties acknowledge Defendants did not explicitly tell Ms. Borkowski to stop filing applications or else face civil or criminal punishment. They instead dispute whether Defendants' actions implicitly conveyed that message, pointing primarily to:

(1) the visit by Detectives Burrows and Tomas to the home Ms. Borkowski shared with her grandparents, and (2) the two phone calls made by Detective Tomas to Ms. Borkowski.

A reasonable jury could conclude that Defendants' actions conveyed a message to stop or face consequences. Ms. Borkowski's grandmother told Ms. Borkowski that she "believed that the visit was an [attempt] to intimidate" her regarding her applications for charges. (ECF No. 117-5, at 240-41 (Borkowski Depo.)). Ms. Borkowski believes that her grandmother reached this conclusion "[b]ecause they showed up with an armed officer and they kept asking where I was, when I was due home, if they knew that I had filed charges, and why I had filed charges[.]" (Id.).[8] Ms. Borkowski's grandmother also found the visit confusing because it was unnecessary and didn't seem to achieve anything. From her perspective, the Detectives asked questions to which they should have known the answers and they could easily have resolved over the phone. (Id.; ECF No. 117-4, at 16-20 (Gonzalez Depo.)). This confusion led her to question "[w]hat they were trying to accomplish by [the visit]." (ECF No. 117-4, at 20-21). Ms. Borkowski learned about the visit at approximately the same time

_____

[8]  In the video recording, Detective Burrows tells Ms. Borkowski's grandmother that she "need[ed] to speak with [Ms. Borkowski] in regards to some charges that she had filed at the district court the other day." (ECF No. 117-3, at 1:34-1:41 (Body Worn Camera Footage)).

she received two phone calls and a voicemail from Detective Tomas. (ECF No. 117-5, at 153, 155-56). The voicemail, though "not out of the ordinary," provided little detail about why Detective Tomas wanted to speak with Ms. Borkowski. (*Id.*). It just said, "This is Detective Thomas. Give me a call back." (*Id.*).

In sum, the visit and phone calls occurred unexpectedly, nearly simultaneously, without explanation, and were carried out by detectives and an armed police officer outside their jurisdiction. A reasonable jury could find that these facts amounted to a "gratuitous show of uninvited law enforcement interest" that involved no explicit threats but was implicitly menacing. *See Garcia*, 145 F.Supp.3d at 515 (discussing police officers repeatedly parking outside a journalist's home without reason). It would be a small step to find then that this message was intimidating and could chill First Amendment rights. *See Suarez Corp.*, 202 F.3d at 689 (indicating that a statement is intimidating if it implies that defendants "would utilize their government power to silence" the plaintiff). This conclusion could be supported by the status of, and relationship between, the parties. Ms. Borkowski was a recently traumatized 21-year-old student. Defendants were law enforcement officials accompanied by armed police. In addition, Ms. Borkowski might reasonably have believed that Defendants were antagonistic toward her or did not believe her because they opted not to prosecute her case.

Ms. Borkowski also points to other evidence that could support finding Defendants delivered a threatening message.  Although not necessary because Defendants fail to meet their burden, the evidence strengthens that conclusion.  For example, Ms. Borkowski was also later made aware that Detective Defendants obtained her class schedule.  (ECF No. 117-5, at 242-43 (Borkowski Depo.)).  A jury might also find evidence of Defendants' motives relevant to interpreting any implicit message delivered.  Both Defendants' statements that they wanted to tell Ms. Borkowski to stop filing charges and their abrupt cessation of all contact after Ms. Borkowski insisted that her attorney be present could support an inference that Defendants sought to bully Ms. Borkowski.

The result is not undermined by the fact that Ms. Borkowski's grandmother did not feel threatened by the home visit nor that Ms. Borkowski continued to pursue legal recourse.  As noted above, the test for an adverse retaliatory action is an objective standard. While evidence of someone's subjective response is relevant to the analysis, it is not dispositive. *Constantine*, 411 F.3d at 500. Here, Ms. Borkowski's grandmother's subjective response could be outweighed by other characteristics like Defendants' simultaneity, vagueness, and show of authority.  A jury could also find that Ms. Borkowski was uncommonly committed to her pursuit of justice, as evidenced by her continued efforts to appeal the dismissal of her charges.

Nor does the unique standard of review for video evidence change things. The Fourth Circuit has held that where "the record contains an unchallenged videotape capturing the events in question, [a court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). None of the characteristics described above are contradicted by the videotape. It demonstrates only that the home visit was not carried out in a blatantly intimidating manner. The encounter is brief and the detectives and officer speak in even tones. (ECF No. 117-3 (Body Worn Camera Footage)). At no time do they verbally threaten Ms. Borkowski's grandmother or encroach on her personal space in a threatening manner. (*See id.*). While these features are helpful to Defendants, they are not enough to foreclose a jury finding that the other features highlighted above—simultaneity, vagueness, and show of authority—could communicate a threat.

Because there is a genuine dispute of material fact regarding the message conveyed by Defendants' actions, they are not entitled to judgment on adverse action grounds.

### 3. Causal Connection

In a First Amendment retaliation case, the plaintiff "must show that 'but for' the protected [First Amendment activity] the [government] would not have taken the alleged retaliatory action." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (alteration and

citation omitted).  The First Amendment protected activity was not the "but for" cause if the defendants would have reached the same decision absent the activity. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).  It appears that the proper formulation here may be "whether the defendant would have reached the same decision absent the retaliatory motive" because Defendants actions would not have occurred at all absent Ms. Borkowski's applications, as discussed further below. *See Martin v. Duffy*, 977 F.3d 294, 303-04 (4th Cir. 2020) (describing so-called "unitary event" cases).  The parties do not address this issue in their papers, nor do they indicate whether a burden-shifting framework applies to First Amendment retaliation claims.

Regardless, there is no question that Ms. Borkowski's applications caused Defendants' conduct.  That is not disputed. The sole question is whether Defendants possessed an impermissible retaliatory motive.  There is sufficient evidence for a reasonable jury to conclude that they did.  Defendants learned about the second application on March 22 and Detectives Burrows and Tomas visited Ms. Borkowski's house and called her phone that same day. (*See* ECF No. 117-20, at 84 (Dever Depo.)).  Assistant State's Attorney Dever also testified that she "was very upset" and "wanted to try and communicate somehow that she needed to stop going to the Commissioner's Office[.]" (*Id.*, at 67-68).  Detective Burrows' notes suggest that she may have been instructed to tell Ms.

Borkowski that she faced civil or criminal penalties if she continued to file applications. (ECF No. 117-15, at 2).

Defendants nevertheless argue that they are entitled to summary judgment by pointing to their own testimony that they were motivated instead to act in Ms. Borkowski's best interest and shield her from the risk that she would be held civilly liable to her alleged assailants for filing false charges. (ECF No. 117-1, at 36). This is a quintessential credibility determination that must be resolved by a jury. Defendants are not entitled to judgment on causation grounds.

### C.  Qualified Immunity

Qualified immunity is an affirmative defense to Section 1983 claims that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). The two elements of the defense are whether a constitutional violation occurred and, if so, whether the right in question was clearly established at the time of the alleged misconduct. *Tobey v. Jones*, 706 F.3d 739, 385 (4th Cir. 2013). "To be clearly established, a legal principle must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Feminist*

*Majority Found. v. Hurley*, 911 F.3d 674, 704 (4ᵗʰ Cir. 2018). Although the principle must be particularized, *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014), "a court need not have previously found the specific conduct at issue to have violated an individual's rights," *Feminist Majority*, 911 F.3d at 704.

As discussed above, there is sufficient evidence, taken in the light most favorable to Plaintiff, to prove that a First Amendment violation occurred here. The sole remaining question is whether the law as of March 2018 clearly established that that conduct was prohibited. It did. As this court previously held:

> *Suarez* [] provided notice in 2000 that threats or intimidation (even by speech) violates the First Amendment if done in retaliation of protected speech. *Suarez*, 202 F.3d at 687. Moreover, . . . the First Amendment is violated through "self-censorship" when conduct would deter a person of ordinary firmness from exercising their rights. *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 136 (4ᵗʰ Cir. 2011). Either of these cases disproves the Defendants' claim that "no caselaw" exists clearly establishing this right to be free from intimidation in applying for a statement of charges.

(ECF No. 103, at 40-41).

Fourth Circuit precedent could not be more specific. Indeed, when *Suarez* and *Benham* are read together with more recent decisions, it is clear that individuals have the right to be free

from threats by public officials for filing a facially protected grievance. *See, e.g.*, *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 539-40 (4th Cir. 2017). Ms. Borkowski did just that when she filed an application for charges. Defendants should have known that they could not retaliate against her for doing so through threats and intimidation. They are not entitled to qualified immunity.

### D.    Damages

To recover compensatory damages, Section 1983 plaintiffs must establish that defendants' challenged actions caused their alleged injuries. *Price v. City of Charlotte*, 93 F.3d 1241, 1245 (4th Cir. 1996). "[C]ompensatory damages for emotional distress must be attributed to the actual constitutional violation . . . and must be proved by a sufficient quantum of proof demonstrating that the violation caused compensable injury." *Id.*, at 1246 (citing *Carey v. Piphus*, 435 U.S. 247, 263 (1978)). "A plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar[.]" *Id.* (citing *Carey*, 435 U.S. at 266-67)). Ms. Borkowski requests damages for "mental anguish, emotional distress, anxiety, and humiliation[.]" (ECF No. 117-47, at 4 (Borkowski Interrogatory Answers)). Defendants do not contest that she can point to sufficient evidence of the alleged harms. They argue only that the harms Ms. Borkowski suffered were not caused by their alleged conduct. (ECF No. 117-1, at 39).

Defendants again fail to satisfy their burden to show that no dispute of material fact exists.  It is enough for a plaintiff to establish that a part of her injuries was caused by the conduct at issue.  *Knussman v. Maryland*, 272 F.3d 625, 640-42 (4th Cir. 2001) (remanding for trial to determine extent to which injury was caused by Section 1983 violation).  Ms. Borkowski's medical records and deposition testimony make clear that she continued to suffer harms after the Defendants' actions in March 2018.  Her testimony also indicates that her condition worsened in April and May 2018, one-to-two months after the alleged retaliation.  (ECF No. 126, at 115-16 (Sealed Borkowski Depo.)).  That temporal proximity is enough to create a genuine dispute.  Ms. Borkowski also bolsters the dispute by declaring in an affidavit that "[t]he intimidation by the Detectives and State's Attorneys made the emotional pain of my sexual assault worse."  (ECF No. 125-5, at 3).

Defendants' attempts to undermine this evidence are unsuccessful.  Ms. Borkowski's linking of her purported harms to other causes in her deposition does not eliminate the dispute.  And Defendants have not shown that Ms. Borkowski must rely on expert testimony to prove her damages.  On the evidence presented, a reasonable jury could conclude that Ms. Borkowski suffered more harm than she would have absent Defendants' conduct because their actions caused her condition to worsen.  Defendants are not

entitled to judgment on Ms. Borkowski's request for compensatory damages.

**V.   Conclusion**

For the foregoing reasons, Defendants' motions for leave to file audio and video exhibits and to seal and redact will be granted.  Plaintiff's motion to seal will be granted in part and denied in part.  Defendants' motion for summary judgment will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
