IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANNA BORKOWSKI**, *et al.* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **REDACTED VERSION** |
| **v.** | * | **Civil Action No.: 1:18-cv2809-DKC** |
| | * | |
| **BALTIMORE COUNTY, MARYLAND,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

**[PROPOSED] PRETRIAL ORDER**

In accordance with Rule 106 of the Rules of the United States District Court for the District of Maryland and this Court's Order of December 28, 2021 [Doc. No. 138], Plaintiff Anna Borkowski ("Borkowski"), and Defendants Scott Shellenberger, Lisa Dever, and Bonnie Fox (the "SAO Defendants"), and Defendants Kristin Burrows and Nicholas Tomas (the "Officer Defendants"), by their respective undersigned counsel, submit this Proposed Joint Pretrial Order for the trial of this action and state as follows:

**A.     Brief Statement of Facts That Plaintiff Proposes to Prove in Support of Plaintiff's Claims, Together with a Listing of the Separate Legal Theories Relied Upon in Support of Each Claim.**

The claim remaining for trial is Plaintiff Borkowski's cause of action for First Amendment retaliation against her by the SAO and Officer Defendants as a response to her efforts in March 2018 to her rape late on the night and into the early morning of October 19 and 20, 2017, charged and prosecuted.  After Plaintiff Borkowski's attempts to convince the SAO Defendants to bring charges against her assailants, she filed two separate applications for statement of charges with two different Commissioners. The first application was denied after the Commissioner consulted with Defendant Dever.  Plaintiff's second application contained more detail and it was approved and charges were filed against her assailants.  The SAO

Defendants then instructed the Defendant Burrows to meet with Plaintiff and tell her to stop filing applications and that, if she did not stop, that she faced a civil lawsuit or criminal charges. Defendants also subpoenaed Plaintiff's first application for statement of charges and intercepted the summonses issued for her second, successful, application, before they were served.  On March 22, 2018, the Officer Defendants unlawfully obtained a copy of Plaintiff's class schedule and, unexpectedly and without advance notice, went with to her home, where she lived with her grandparents, with an armed Baltimore City police officer,  That officer, who had never before been asked to accompany or escort Baltimore County detectives in Baltimore City and has not been asked to do so since, told Plaintiff's grandmother, who answered the door, that she was being recorded. Defendant Burrows asked her questions about Plaintiff's whereabouts and told her that they wanted to speak with Plaintiff about charges she had filed. Plaintiff learned about that visit later that day. Defendant Tomas also called Plaintiff twice after that visit.  After the Officer Defendants spoke with Plaintiff's counsel, who agreed to make Plaintiff available for an interview in his presence, Defendants concluded that there was no point in continuing to meet with Plaintiff.

The SAO and Officer Defendants, as public officials, responded to Plaintiff's constitutionally protected right under the First Amendment to petition the government for redress of grievances, including the filing of applications for a statement of charges against her assailants, by actions that chilled and adversely affected Plaintiff's rights to do so, and those actions would have chilled those rights in a person of ordinary firmness under similar circumstances.

**B.     Brief Statement of Facts That Each Defendant Proposes to Prove or Rely Upon as a Defense Thereto, Together with a Listing of the Separate Legal Theories in Support of Each Affirmative Defense.**

**1.      The Events of October 19 and 20, 2017.**

On Thursday, October 19, Ms. Borkowski met with her friend, Anne Marie (or "Annie") Hendler for a night of heavy drinking at three bars in Towson. At the last of these three bars – the Rec Room – Ms. Borkowski met up with three men with whom she was previously acquainted (Christopher Convers, David Lyskawa, and Matthew Chanin). Ms. Borkowski knew these three men from her previous attendance at UMBC, and because the three men were close friends with Ms. Borkowski's ex-boyfriend. The two women and three men continued drinking and dancing at the Rec Room, and the men touched Ms. Borkowski on intimate parts of her body on the dance floor.

Towards the end of the night, Ms. Borkowski and Ms. Hendler decided to leave to go back to Ms. Hendler's nearby apartment, and they invited the three men. During the walk, Ms. Borkowski was "buzzed" from alcohol. Ms. Hendler let the three men into her apartment building and all five rode up in an elevator together. Back at the apartment, the two women showered together while the men waited in the living room. Ms. Hendler gave the men a bottle of wine and a bottle of vodka to drink while they waited. Ms. Borkowski later reported that, while the two women were in the shower, Mr. Chanin and Mr. Convers came into the bathroom and touched Ms. Borkowski's backside without permission.

The two women finished showering and joined the three men in the living room, drinking from the bottle of wine and the bottle of vodka. Ms. Borkowski thereafter entered into a partial "blackout" state, with only partial memories of the rest of the night.

The next morning, the two women awoke in Ms. Hendler's apartment alone. Ms. Borkowski had fragmentary memories of the night before, but specifically remembered group sex occurring among the two women and the three men in Ms. Hendler's bedroom and on the balcony of the apartment. Ms. Borkowski remembered engaging simultaneously in vaginal and oral sex with two of the men in Ms. Hendler's bedroom, while Ms. Hendler was being vaginally penetrated by the third man in her bed. Ms. Borkowski also remembered being on the balcony of the apartment having vaginal sex with one of the men (with Ms. Borkowski on top), while Ms. Hendler was having vaginal sex with another of the men against the balcony railing.

Ms. Borkowski called her then-boyfriend, who told her to send Mr. Convers a text message to find out what had happened. Mr. Convers responded "who the fuck knows" and said that he would not be talking about it again.

**2.      Ms. Borkowski's Initial Criminal Complaint to Baltimore County Police.**

Ms. Borkowski and Ms. Hendler went to the Towson University Police to report a sexual assault. Officer Himes of the Baltimore County Police Department responded and interviewed Ms. Borkowski. Ms. Hendler was also interviewed on a body worn camera. Officer Himes took the two women to GBMC.

Detective Jessica Hummel of the Special Victims Team was assigned the investigation. Detective Hummel interviewed Ms. Borkowski at GBMC, the entirety of which was audio-recorded. During the interview, Ms. Borkowski stated her memories of the night before, including the events in Ms. Hendler's bedroom and on the balcony.

Detectives Burrows and Tomas – although not assigned to the investigation at the time – were with Detective Hummel at the time she was called to report to GBMC and came with her to assist. Detectives Burrows and Tomas interviewed Ms. Hendler while Detective Hummel was

with Ms. Borkowski. Ms. Hendler told Detectives Burrows and Tomas that she did not want her own case investigated, but Ms. Hendler wanted to submit to a SAFE exam anyway. Ms. Hendler signed a Release Authorization to that effect.

### 3. Detective Burrows Takes Over the Investigation.

Detective Hummel began investigating Ms. Borkowski's case. Mid-investigation, however, Detective Hummel was transferred to a different unit of the police department, and Detective Burrows was assigned to continue the investigation. Detectives Burrows and Tomas arranged for interviews with the three men, who agreed to be interviewed at a restaurant in Baltimore County. Detectives Burrows and Tomas interviewed the three men, separately, at the restaurant. Each of the three men admitted that sex occurred (except for Mr. Chanin, who was unable to perform), but stated that it was consensual and that Ms. Borkowski was "enthusiastic" about it.

### 4. The State's Attorney's Office Declines to Charge.

Following these interviews, Detective Burrows communicated the results of the investigation to Assistant State's Attorney Lisa Dever, an experienced sex-crimes prosecutor. ASA Dever reviewed the file and declined to bring charges. ASA Dever believed Ms. Borkowski, but concluded that Ms. Borkowski's criminal complaint did not meet the elements of second-degree rape, because Ms. Borkowski remembered performing certain sex acts that were not consistent with legal incapacity, and therefore ASA Dever did not believe that the case could be proven beyond a reasonable doubt.

### 5.  Communication of the Charging Decision to Ms. Borkowski.

Detective Burrows communicated the State's decision not to charge to Ms. Borkowski. Subsequently, ASA Dever spoke to Ms. Borkowski and explained the basis of the State's decision.

**6.** ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████

### 7.  Ms. Borkowski's Subsequent Efforts to Pursue Charges.

In March 2018 – now represented by counsel – Ms. Borkowski sought to bypass the State's Attorney's Office's decision not to charge by seeking to swear out charges against the three men on her own.

#### a.  March 14, 2018.

First, on March 14, 2018, Ms. Borkowski went to the Catonsville District Court Commissioner to submit applications for charges against all three men. Ms. Borkowski came with a pre-typed set of applications, which had been prepared for Ms. Borkowski to present. Unlike Ms. Borkowski's previous criminal complaint of second-degree rape by incapacitation, Ms. Borkowski's March 14, 2018 applications alleged first-degree, forcible rape aided and abetted by another. Commissioner John Robey denied the applications for charges after speaking with ASA Dever and learning that the State's Attorney's Office had already declined to pursue charges.

Shortly thereafter, ASA Dever received an aggressive call from Ms. Borkowski's attorney, who screamed at ASA Dever and threatened her, accusing ASA Dever of "colluding" with the Commissioner's Office.

> **b.     March 20, 2018.**

One week later, on March 20, 2018, Ms. Borkowski went to a different Commissioner's Office in Towson to attempt to swear out charges again. This time, Ms. Borkowski's attorney went with her. March 20, 2018 was a snow day, and Ms. Borkowski and her attorney went to the Commissioner's Office outside of normal work hours, so there would be no one at the State's Attorney's Office for the Commissioner to call. Ms. Borkowski again submitted charges for first-degree forceible rape aided and abetted by another. By this time, Ms. Borkowski was aware of the difference between second-degree and first-degree rape and that first-degree rape required force or threat of force. District Court Commissioner Ellingson reviewed the applications and issued charges without consulting the police or the State's Attorney's Office.

> **8.     The Police and State's Attorney's Office Learn of the New Charges and Attempt to Speak with Ms. Borkowski.**

Detective Burrows had learned of Ms. Borkowski's first set of applications and had been monitoring Maryland Judiciary Case Search. Detective Burrows therefore saw that the first-degree rape charges had issued as a result of Ms. Borkowski's second set of applications.

The issuance of the first-degree rape charges was communicated to ASA Dever, who was in a meeting at the Child Advocacy Center at the time. ASA Dever was surprised to learn this, as it was the first time in her 26-year prosecutorial career that a victim went to a District Court Commissioner to swear out charges a second time, knowing that the State was not proceeding in a case. State's Attorney Shellenberger, ASA Dever, and Detectives Burrows and Tomas shared the concern that Ms. Borkowski's and her attorney's actions could result in the three men suing

Ms. Borkowski or bringing their own criminal charges against her. In an effort to protect Ms. Borkowski from that happening, SA Shellenberger and ASA Dever decided to ask Detective Burrows to speak with Ms. Borkowski in person. SA Shellenberger, like ASA Dever, could not remember another instance where the State told a victim it would not be pursing charges, but the victim submitted successive applications for criminal charges. SA Shellenberger and ASA Dever believed an in-person meeting between the Detectives and Ms. Borkowski was appropriate because ASA Dever had previously communicated the State's charging decision to Ms. Borkowski, Ms. Borkowski's mother, and Ms. Borkowski's attorney.

On the morning of March 22, 2018, Detective Burrows telephoned Commissioner Wisniewski and asked what needed to be done to obtain copies of Ms. Borkowski's denied Applications and the summonses. Detective Burrows wanted to see the Applications because the men were charged with first-degree rape, which was a more serious crime than the second-degree rape complaint she investigated based on Ms. Borkowski's report. Commissioner Wisniewski told Detective Burrows where to find the denied Applications and that Detective Burrows would need a subpoena. The two did not discuss anything else. The State's Attorney's Office thereafter issued a subpoena to obtain the earlier denied Applications for Charges that Ms. Borkowski filed with the District Court on March 14, 2018.

After leaving the District Court, Detective Burrows – with Detective Tomas – travelled to Ms. Borkowski's house to try to speak with her. Detective Burrows was not angry or upset with Ms. Borkowski, but she was concerned that Ms. Borkowski's and her attorney's actions could result in criminal or civil liability. Likewise, Detective Tomas did not feel Ms. Borkowski's actions personally affected him and shared Detective Burrows's concern for Ms. Borkowski. Consistent with the County's practices during that time, Detectives Burrows and Tomas secured

a uniformed officer with a body camera, Officer Justin Dorfler, to accompany them to Ms. Borkowski's residence. Officer Dorfler met with the Detectives at a side street near Ms. Borkowski's home, and the three officers walked to the front patio. Ms. Borkowski's grandmother, Josefina Gonzales, answered the door.

Officer Dorfler turned on his body camera and advised Ms. Gonzales that the interaction was being recorded. The entire encounter is approximately three minutes long, and the entire interaction between Ms. Borkowski's grandparents and the Officers was recorded. The encounter was not intimidating by any measure. Detective Burrows asked Ms. Gonzales if Ms. Borkowski was home, and Ms. Gonzales responded that her granddaughter was at an internship. Detective Burrows left a business card, told Ms. Gonzales that she would try Ms. Borkowski on her cell phone, and asked that Ms. Gonzales tell Ms. Borkowski that the Detectives wanted to speak with her. The Detectives did not tell Ms. Borkowski's grandmother that Ms. Borkowski might face criminal charges, nor did they communicate that Ms. Borkowski should not file further charges.

Ms. Gonzales was not intimidated at any time during this brief encounter. Similarly, Ms. Borkowski's grandfather, who was also home, testified that the Detectives and Officer Dorfler were "courteous," "professional," and "not in any way threatening." The Detectives left Ms. Borkowski's home, and Detective Tomas attempted to call Ms. Borkowski, ultimately leaving a voice message. Ms. Borkowski testified that Detective Tomas's voice message was "nothing out of the ordinary." Ms. Borkowski returned Detective Tomas's call and left him a voice message, stating she could meet with them but wanted her attorney to be present.

Later that day, Detective Tomas spoke with Ms. Borkowski's attorney, Mr. Baldwin, about scheduling the meeting. Detective Tomas testified that Mr. Baldwin was rude during the call. Detective Tomas's report shows that Mr. Baldwin repeatedly stated that he did not

understand the purpose of having such a meeting. Mr. Baldwin's tone led Detective Tomas to believe that Mr. Baldwin understood the purpose but was pretending that he did not. During this exchange, Detective Tomas did not tell Mr. Baldwin that his client

might face criminal charges.

The Detectives conveyed this information to the State's Attorney's Office, and SA Shellenberger decided to cancel the proposed meeting. SA Shellenberger no longer believed that the meeting would be productive because the State already communicated its charging decision to Ms. Borkowski and a lawyer was involved. ASA Dever thereafter appeared in court to dismiss the charges against the three men.

At no time during March 22 to 23, 2018 did Detective Burrows or any of the SAO Defendants speak with Ms. Borkowski or her attorney, nor during that time did the SAO Defendants speak with any family member of Ms. Borkowski.

**9.     Ms. Borkowski Is Never Told That She Would Not Be Able to File Charges.**

No one from the District Court, the State's Attorney's Office, or the Baltimore County Police Department ever told Ms. Borkowski that she would be prohibited from filing further charges against the three men or any other person. Ms. Borkowski further confirmed at her deposition that there has been no instance since March 22, 2018 in which she wanted to file charges or initiate other legal action but had not done so.

**10.     Ms. Borkowski Continues to Avail Herself of the Court System and to Communicate with the Baltimore County Police Department.**

Indeed, notwithstanding her claims of intimidation, Ms. Borkowski continued to avail herself of the court system – both related to this matter and otherwise – and communicated with the Baltimore County Police Department. These include the following:

a. ████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████████

████████████████████

**b.      Appeal of the State's Attorney's Dismissal of the Criminal Charges.**

Second, in each of the criminal cases against the three men, Ms. Borkowski filed motions to vacate the State's dismissals of the charges. The District Court of Maryland denied all three motions. Ms. Borkowski filed notices of appeal in all three cases, all of which were denied because a victim cannot appeal a prosecutorial decision to dismiss a charge. Ms. Borkowski then appealed the orders denying her initial appeals. The Maryland Court of Special Appeals dismissed the appeal, finding that "'[t]here is no authority for a victim to appeal a prosecutorial decision to dismiss.'" Ms. Borkowski petitioned for a writ of certiorari, which the Maryland Court of Appeals denied on February 28, 2020.

**c.      Civil Action Involving the Three Men.**

Third, Ms. Borkowski brought a civil claim against all three men. As SA Shellenberger, ASA Dever, and Detectives Burrows and Tomas had feared – and predicted – might occur, the three men brought a counterclaim against Ms. Borkowski, her attorney Mr. Baldwin, and Mr. Baldwin's law firm, for abuse of process, invasion of privacy, defamation, and malicious prosecution.

**d.      This Action.**

Fourth, Ms. Borkowski filed this action, which is now pending against Defendants Shellenberger, Dever, Fox, Burrows, and Tomas.

     e.       **MPIA Lawsuit Against Baltimore County and Melissa Garrett.**

And, fifth, on May 6, 2019, Ms. Borkowski filed a Maryland Public Information Act judicial review action in the Circuit Court for Baltimore County seeking documents related to this case.

     f.       **Ms. Borkowski's February 6, 2020 Interview with Sergeant Morris Greenberg in the Reopened Investigation of the Criminal Complaint of Anne Marie Hendler.**

Also during this time, Ms. Borkowski continued to work with the Baltimore County Police Department concerning the events of October 19 and 20, 2017. On September 9, 2019, Ms. Borkowski's and Ms. Hendler's attorney contacted Special Victims Unit Lieutenant Brian Edwards, stating that Ms. Hendler wanted to reopen her criminal complaint and requested that it be investigated. The Baltimore County Police Department obliged and assigned the case to Sergeant Morris Greenberg. Sergeant Greenberg interviewed Ms. Borkowski at the Special Victims Unit on February 6, 2020. Ultimately, Ms. Hendler and Ms. Borkowski withdrew their request for a criminal investigation.

**11.**     **Ms. Borkowski Is Unaffected by the Events of March 22, 2018.**

Ms. Borkowski's compensatory damages claim is limited to "mental anguish, emotional distress, anxiety, and humiliation." ███████████████████████████ and the expert opinion of Dr. Neil Blumberg following an independent medical examination, however, reveal that Ms. Borkowski was in no way affected by the events of March 22, 2018. ████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████

**12.     Ms. Borkowski's Story Continually Evolves, But Ms. Borkowski Consistently Recalls That Force Was Not Used or Threatened to Secure Her Consent.**

By the time of trial, Ms. Borkowski will have told her version of the events of October 19 and 20, 2017 at least five times: (1) to the Baltimore County Police Department on October 20, 2017, including the interview with Detective Hummel; ████████████████████████ ████████ (3) in her two sets of applications for charges in March 2018; (4) to Sergeant Greenberg in the reopened Hendler investigation in February 2020; and (5) at her deposition in January 2021. Ms. Borkowski's story evolved throughout that time, in a manner that appears calculated to eliminate facts that make her rape complaint less actionable or to add facts to make her rape complaint better actionable. One thing that remains relatively consistent, however, is that – other than in her applications for charges in March 2018 – Ms. Borkowski's story *never* involves a use or threat of force to obtain her consent.

**13.     Legal Theories in Support of Defenses.**

**a.     Failure to Meet the Elements of First Amendment Retaliation.**

A claim for First Amendment Retaliation under 42 U.S.C. § 1983 requires that the plaintiff prove that (1) the plaintiff's speech was protected; (2) the retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between plaintiff's speech and the defendant's retaliatory action. *Tobey v. Jones*, 706 F.3d 379, 386-87 (4th Cir. 2013) (internal citation omitted). Here, Ms. Borkowski, fails to meet these elements.

Ms. Borkowski's alleged exercise of her rights under the Speech Clause and/or the Petition Clause is not entitled to First Amendment protection. In a patent effort to raise the stakes of her criminal complaint, among other things, Ms. Borkowski falsely alleged first-degree forcible rape against the three men under Md. Code, Crim. Law § 3-303, when her original

criminal complaint, at best, presented elements of second-degree rape by incapacitation under Md. Code, Crim. Law § 3-304. Ms. Borkowski did so repeatedly when she already knew that the State's Attorney's Office had no intention of pursuing charges, and she did so with the assistance of counsel. Ms. Borkowski's actions meet the "intentional and reckless threshold" set forth under *McDonald v. Smith*, 472 U.S. 479 (1985) (citing *New York Times v. Sullivan*, 376 U.S. 254 (1964), and certainly meet the "negligence" standard under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) that applies where the target of the speech is not a public figure.

Nor were the actions of any Defendant either objectively or subjectively retaliatory. Rather, all evidence will show that Defendants Shellenberger, Dever, Tomas, and Burrows were legitimately and genuinely concerned that Ms. Borkowski's actions were going to lead the three men to pursue legal action against here (which concern proved to be correct).

Finally, none of Defendants' actions would have caused a person of reasonable firmness to refrain from exercising her rights in the future. The communications from Defendants to Ms. Borkowski were very limited, and none of them conveyed a message that she should not file criminal charges in the future. Indeed, Ms. Borkowski continued to avail herself of the court system in the months going forward, both in the criminal matter against the three men and in related civil matters.

### b.   Qualified Immunity.

Defendants are also qualifiedly immune from civil liability in this case. Qualified immunity protects public officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When an official asserts qualified immunity, the court must determine whether the plaintiff has pleaded facts showing

"(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). The Supreme Court has repeatedly instructed courts not to "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (citation and internal quotation marks omitted).

Here, Ms. Borkowski has not identified any case – other than those that define the law "at a high level of generality" – that would have put Defendants on notice that Ms. Borkowski had a right to repeatedly file false charges with knowledge that the State's Attorney's Office would not pursue charges, nor that their follow-up with Ms. Borkowski would violate the First Amendment.

### c.    Failure to Establish a Basis for Compensatory Damages.

Finally, Ms. Borkowski has failed to establish a basis for compensatory damages. Damages for emotional distress are available under § 1983. *See Price v. City of Charlotte*, 93 F.3d 1241, 1245 (4th Cir. 1996). However, "for a plaintiff to recover more than nominal damages, [the plaintiff's] injury must have been caused by the challenged conduct, and the injury must be sufficiently proved." *Id*. In *Price*, the Fourth Circuit explained that emotional distress claims tend to be "fraught with vagueness and speculation" and "easily susceptible to fictitious and trivial claims." *Id*. at 1250. Such a claim may be supported on the plaintiff's testimony alone, *id*. at 1251, but a court should "scrupulously analyze" such a claim, and a plaintiff "must produce evidence of '*demonstrable* emotional distress' or 'demonstrable mental anguish,'" *id*. (emphasis

in original). Above all, a plaintiff "must demonstrate a causal connection between the constitutional violation and their demonstrable emotional distress to recover compensatory damages." *Id*.

Here, while Ms. Borkowski's sole claim for damages is for emotional damages, Ms. Borkowski's own medical records – along with the testimony of expert witness Dr. Neil Blumberg – will show that Ms. Borkowski sustained no emotional injury as a result of the actions of any Defendant in March 2018. Rather, Ms. Borkowski's records and Dr. Blumberg's testimony will show that Ms. Borkowski has long suffered from mental illness and, while Ms. Borkowski's mental state was worsened by her sexual encounter with the three men in October 2017, Ms. Borkowski was in no way affected by the events that form the subject matter of this case.

**C.      Similar Statements as to Any Counterclaim, Crossclaim, or Third-Party Claim.**

Not applicable. There are no counterclaims, crossclaims, or third-party claims asserted in this case.

**D.      Any Amendment Required of the Pleadings.**

None.

**E.      Any Issue in the Pleadings That Is to Be Abandoned.**

None.

**F.      Stipulations of Fact or, If the Parties Are Unable to Agree, Requested Stipulations of Fact.**

The parties have stipulated that the body worn camera video captured by Officer Dorfler on March 22, 2018 captures the entirety of Detectives Burrows's, Detective Tomas's, and Officer Dorfler's encounter with Ms. Borkowski's grandparents.

The parties will discuss whether additional stipulations can be reached to reduce the evidentiary presentation at trial.

**G.     The Details of the Damages Claimed or Any Other Relief Sought as of the Date of the Pretrial Conference.**

      **1.      As to Plaintiff Borkowski.**

Plaintiff Borkowski seeks compensatory damages for the emotional distress, mental anguish, anxiety and humiliation she suffered as a result of Defendants' actions culminating in March 2018, when they not only refused to prosecute her assailants but retaliated against her for her efforts to seek justice.  The Defendants retaliatory acts aggravated the emotional distress, mental anguish, anxiety and humiliation she had already suffered because she was sexually assaulted.  Such damages are not susceptible to the assignment of a specific monetary value and Plaintiff will ask the jury to make that determination.

      **2.      As to Defendants.**

Defendants are not making a damages claim against Ms. Borkowski. In response to Ms. Borkowski's statement of her damages: (1) Defendants deny that Ms. Borkowski has any plausible claim for damages; and (2) as to Ms. Borkowski's statement that her "damages are not susceptible to the assignment of a specific monetary value, Defendants observe that Ms. Borkowski assigned such a value in her Answers to Interrogatories, *i.e.*, $500,000 in compensatory damages and $1 million in punitive damages.

**H.     Exhibit List.**

**1.     Plaintiff's Exhibits.**

**a.     Plaintiff Expects to Offer.**

| Exhibit No. | Description | Objections (SAO Defendants) | Objections (Officer Defendants) |
|---|---|---|---|
| 1 | 03.23.18 email from Lisa Dever to Whitney Wisniewski [SAO 000294] | Objections under Rules 401, 403 | Assuming that Bates reference is "Baltimore County SAO_000294": <br><br> Objections under Rule 105; Rules 401, 402, 403, 404 |
| 2 | 03.23.18 letter from Lisa Dever to Commissioner Wisniewski [SAO 000296] | Objections under Rules 401, 403 | Assuming that Bates reference is "Baltimore County SAO_000296": <br><br> Objections under Rule 105; Rules 401, 402, 403, 404 |
| 3 | 03.23.18 email from Whitney Wisniewski to Lisa Dever [SAO 00295] | Objections under Rules 401, 403 | Assuming that Bates reference is "Baltimore County SAO_000295": <br><br> Objections under Rule 105; Rules 401, 402, 403, 404, Rule 802 |

| 4 | GBMC SANE Project Case Details [Borkowski 000982-994] | Objections under Rules 401, 402, 403, 602, 802, | Objections under Rules 401, 402, 403; Rule 602 (in part); Rules 802 and 901; Rule 106 (as to redactions – Officer Defendants are amenable to stipulation as to reason for redactions) |
| 5 | Emails between Ronald Schwartz and Lisa Dever [SAO 298-311] | Objections under Rules 401-404 | Assuming that Bates reference is "Baltimore County SAO_000298-311": Objections under Rule 105; Rules 401, 402, 403, 404; Rule 602; Rule 802 |
| 6 | Investigative Notes [BCPD 000053-57] | No objection. | Assuming that Bates reference is "Officer Defs. 000053-57," no objection. |

| 7 | 03.05.19 letter from Ernest Reitz to Rignal Baldwin re: Anna Borkowski | See co-Defendants comments. | Defendants have requested clarification on this Exhibit, which is not Bates numbered or easily identifiable, from Plaintiff's counsel twice (an email from counsel dated July 7, 2022, and an email dated July 12, 2022). Plaintiff's counsel has not provided that clarification or provided a copy of the Exhibit. Accordingly, Officer Defendants cannot at this time provide their objections to this Exhibit, which they have not yet seen, and therefore preserve all objections, including to authenticity, and generally object to this Exhibit as improperly designated. |
| 8 | Detective's Notes [BCPD 000072-75] | No objection. | Assuming that Bates reference is "Officer Defs. 000072-75," no objection. |

| 9 | Dever Emails to Paul Dillon [SAO 00292-93] | Objections under Rules 401-404. | Assuming that Bates reference is "Baltimore County SAO_000292-93": Objections under Rule 105; Rules 401, 402, 403, 404 |
|---|---|---|---|
| 10 | Fox emails to Cheryl Rill [SAO 408] | Objections under Rules 401-404. | Assuming that Bates reference is "Baltimore County SAO_000408": Objections under Rule 105; Rules 401, 402, 403, 404 |
| 11 | Burrows emails regarding case file/notes [Exhibits 6, 7, and 8 to Deposition of Kristin Burrows] | Objections under Rules 401-404. | Objections under Rules 401, 402, 403, 404. |
| 12 | Report of Lt. Brian Edwards to Capt. Kelly with attached documents [BCPD 000492-529] | Objections under Rules 401-404. | Assuming that Bates reference is "Officer Defs. 000492-592": Objections under Rules 401, 402, 403, 404; objection to characterization of the document (*i.e.*, the report of Lt. Brian Edwards has no attached documents) |
| 13 | Synopsis of event with response report [BCPD 001822 and attached unmarked pages] | No objection. | Assuming that Bates reference is "Officer Defs. 0001822," no objection. |

| 14 | Omitted | | N/A |
|---|---|---|---|
| 15 | 03.18 Burrows text messages regarding summonses | No objection | No objection |
| 16 | 02.22.17 email from Tomas to Burrows | See Co-Defendants' comments. | Defendants have requested clarification on this Exhibit, which is not Bates numbered or easily identifiable, from Plaintiff's counsel three times (an email from counsel dated July 6, 2022, a second email from counsel dated July 7, 2022, and a third email dated July 12, 2022). Plaintiff's counsel has not provided that clarification or provided a copy of the Exhibit. Accordingly, Officer Defendants cannot at this time provide their objections to this Exhibit, which they have not yet seen, and therefore preserve all objections, including to authenticity, and generally object to this Exhibit as improperly designated. |

| 17 | Grand Jury Subpoena [SAO 00405] | No objection. | No objection |
|----|---------------------------------|---------------|--------------|
| 18 | 03.23.18 email from W. Wisniewski to Dever | Objections under Rules 401-404. | Assuming that this refers to "Baltimore County SAO_000295," same objections as to Plainitff' Exhibit 3. |
| 19 | 03.23.18 email and letter from Dever to W. Wisniewski | Objections under Rules 401-404. | Assuming that this refers to "Baltimore County SAO_000294" and "Baltimore County SAO_000296" same objections as to Plaintiff's Exhibits 1 and 2. |

| 20 | Incomplete investigative file and cover letter [BCPD 000135-179] | Objection. Since complete file is available, there is no need to admit incomplete investigative file.<br><br>Objections under Rules 401-404. | Assuming that Bates reference is "Officer Defs. 000135-179":<br><br>Objection to characterization of exhibit (*i.e.*, "incomplete").<br><br>The Officer Defendants further object to any suggestion that the documents labelled Officer Defs. 000173 to 177 were part of the documents transmitted with the letter marked Officer Defs. 000178 to 179. Officer Defs. 000173 to 177 postdate that letter by 22 days, and exceed the "38 pages" referred to in that letter.<br><br>Further objections as to pages 178 to 179 only: Rules 401, 402, 403, 404. |
| --- | --- | --- | --- |
| 21 | Complete investigative file [Borkowski 005951—6001] | Other than missing page, no objection. | Objection to characterization of exhibit as "complete" (appears to be missing pages).<br><br>Objection to page Borkowski 005958 under Rule 106 – missing page 2. |

| 22 | 11.09.18 email exchange between Jessica Hummel and Plaintiff | Objections under Rules 401-404, Rule 602 and Rule 802. | Assuming that this refers to the November 9, <u>2017</u> email from Jessica Hummel to Anna Borkowski Bates numbered Officer Defs. 001964-1965:<br><br>Objections under Rules 401, 402, 403, 404; Rule 602; Rule 802 (as to Ms. Borkowski's email to Detective Hummel in the thread). |
|---|---|---|---|
| 23 | | | N/A (no Exhibit 23 identified) |
| 24 | 11.14.17 email from Kristen Burrows to Bonnie Fox | Objections under Rules 401-404. | Assuming this refers to the document Bates numbered "Officer Defs. 2208": objections under Rules 401, 402, 403, 404. |
| 25 | 03.22.18 email exchange between R. Schwartz, Esquire, and Bobbie Hoye | Objections under Rules 401-404, Rules 602 and 802. | Assuming this refers to the partial email thread at Baltimore County SAO_000299 to 000300:<br><br>Objections under Rules 105, 401, 402, 403, 404, 602, 802. |

| 26 | All answers to interrogatories | All objections made in the answers to interrogatories are preserved.<br><br>Proper answers to interrogatories can be read into evidence but should not be submitted as exhibits. | Objection to collective manner of designation, which renders the Officer Defendants nearly incapable of responding with complete objections.<br><br>Subject to and without waiving the foregoing objections, the Officer Defendants respond as follows:<br><br>(1) To the extent this was intended to refer to Answers of Plaintiff to Interrogatories of Defendants Burrows and Tomas: objections under Rule 802 (generally), and Rule 602 (as to Answer Nos. 8, 13, 14, 17), 105/401/402/403 (as to Answer No. 15).<br><br>(2) To the extent this was intended to refer to the Answers of Plaintiff of Interrogatories of Defendant Shellenbeger, objections under Rule 802 (generally) and Rules 105/401/402/403 (as to Answer Nos. 7, 8, and 14). |

| | | | |
|---|---|---|---|
| | | | (3) To the extent this was intended to refer to the Answers of Defendant Shellenberger to Plaintiff's Interrogatories, the Officer Defendants incorporate and adopt the objections set forth in those Answers.<br><br>(4) To the extent this was intended to refer to the Answers of Defendant Dever to Plaintiff's Interrogatories, the Officer Defendants incorporate and adopt the objections set forth in those Answers.<br><br>(5) To the extent this was intended to refer to the Answers provided by either of the Officer Defendants to Plaintiff's Interrogatories, the Officer Defendants incorporate and adopt the objections set forth in those Answers. |

        **b.**      **Plaintiff May Offer If the Need Arises.**

N/A.

**2.      Defendants' Exhibits.**

Defendants identify the following exhibits. For the avoidance of doubt, the identification of any Exhibit should not be understood as an admission of that document's relevance, authenticity, or admissibility as evidence in this case by any Defendant.

**a.      Defendants Expect to Offer.**

| Exhibit No. | Description | Bates Number | Objection[1] |
|---|---|---|---|
| 1 | BWC of Police Interview of. A. Hendler | Officer Defs. 2220 | |
| 2 | Officer Himes Notes | Officer Defs. 46 to 48 | |
| 3 | Officer Himes Report | Officer Defs. 8 to 14 | |
| 4 | Audio of Detective Hummel's Interview of A. Borkowski | Officer Defs. 2228 | |
| 5 | Hummel Notes of Borkowski Interview | Officer Defs. 20 to 25 | |
| 6 | Hummel Report of Borkowski Interview | Officer Defs. 29 to 30 | |
| 7 | Burrows Report of Hendler Interview | Officer Defs. 31 to 33 | |
| 8 | Borkowski SAFE Report | Officer Defs. 224 to 240 | |

---

[1] As of this filing, Plaintiff has not yet provided objections to Defendants' Exhibits, and Plaintiff intends to supplement. Defendants reserve all rights to object to any late disclosure of objections.

| | | | |
|---|---|---|---|
| 9 | Borkowski SAFE Exam (Plaintiff's copy) | Borkowski 000982-994 | |
| 10 | Hendler Interview Notes | Officer Defs. 76 to 83 | |
| 11 | Hendler Release Authorization | Officer Defs. 35 | |
| 12 | Hendler SAFE Report | Officer Defs. 423 to 436 | |
| 13 | Synopsis of Event | Officer Defs. 27 to 28 | |
| 14 | Burrows Report re: Chanin Interview | Officer Defs. 39 to 40 | |
| 15 | Notes of Chanin Interview | Officer Defs. 66 to 68 | |
| 16 | Burrows Report re: Lyskawa Interview | Officer Defs. 41 to 42 | |
| 17 | Notes of Lyskawa Interview | Officer Defs. 64 to 65 | |
| 18 | Burrows Report re: Convers Interview | Officer Defs. 43 to 44 | |
| 19 | Notes of Convers Interview | Officer Defs. 61 to 63 | |

| | | | |
|---|---|---|---|
| 20 | Burrows Report re: Investigation | Officer Defs. 36 to 38 | |
| 21 | Burrows Notes | Officer Defs. 58 to 60 | |
| 22 | Burrows Notes | Officer Defs. 69 | |
| 23 | Burrows Notes | Officer Defs. 70 | |
| 24 | Burrows Notes | Officer Defs. 71 | |
| 25 | February 21, 2018 MPIA Request | Officer Defs. 1906 | |
| 26 | █████ | Officer Defs. 2229.1 | |
| 27 | █████ | Officer Defs. 2816 to 2934 | |
| 28 | █████ | Officer Defs. 5088 to 5107 | |
| 29 | █████ | Officer Defs. 3056 to 3058 | |
| 30 | █████ | Officer Defs. 3046 to 3048 | |
| 31 | █████ | Officer Defs. 3035 to 3041 | |

| 32 | ████████████ | Officer Defs. 3749 (top half only); 3760 to 3765, 3766 to 3776 (summary of statements of Anna Borkowski, other portions redacted) | |
|---|---|---|---|
| 33 | ████████████ | Officer Defs. 3991 (description of Exhibit 13 only), Officer Defs. 4085 to 4087 | |
| 34 | March 14, 2018 Application for Charges – Certification | Officer Defs. 1 | |
| 35 | March 14, 2018 Application for Charges – Convers | Officer Defs. 2 to 3 | |
| 36 | March 14, 2018 Application for Charges – Chanin | Officer Defs. 4 to 5 | |
| 37 | March 14, 2018 Application for Charges – Lyskawa | Officer Defs. 6 to 7 | |
| 38 | March 20, 2018 Application for Charges – Convers | Borkowski 2235 to 2236 | |

| | | | |
|---|---|---|---|
| 39 | March 20, 2018 Application for Charges – Chanin | Borkowski 1595 to 1596 | |
| 40 | March 20, 2018 Application for Charges – Lyskawa | Borkowski 1920 to 1921 | |
| 41 | Notice to Applicant for a Charging Document | Officer Defs. 302 | |
| 42 | Charges – Chanin | Borkowski 3614 to 3615 | |
| 43 | Charges – Convers | Borkowski 2405 to 2406 | |
| 44 | Charges – Lyskawa | Borkowski 2091 to 2092 | |
| 45 | Borkowski Notes from Catonsville | Borkowski SAO 2 | |
| 46 | Burrows Report | Officer Defs. 53 to 56 | |
| 47 | Dorfler Bodycam Video Footage | Officer Defs. 2226 | |
| 48 | Burrows Notes | Officer Defs. 72 | |
| 49 | Burrows Notes | Officer Defs. 73 | |
| 50 | Burrows Notes | Officer Defs. 74 | |

| 51 | Burrows Notes | Officer Defs. 75 | |
| 52 | Tomas Report | Officer Defs. 57 | |
| 53 | Borkowski voicemail | Officer Defs. 2218 | |
| 54 | Phone records | Borkowski SAO 3 to 14 | |
| 55 | Motion to Vacate Dismissal – Convers | Borkowski 3777 to 3791 | |
| 56 | Motion to Vacate Dismissal – Lyskawa | Borkowski 1929 to 1948 | |
| 57 | Motion to Vacate Dismissal – Chanin | Borkowski 1604 to 1624 | |
| 58 | Denial of Motion to Vacate Dismissal – Convers | Borkowski 2311 | |
| 59 | Denial of Motion to Vacate Dismissal – Lyskawa | Borkowski 3142 | |
| 60 | Denial of Motion to Vacate Dismissal – Chanin | Borkowski 1674 to 1676 | |
| 61 | Notice of Appeal – Convers | Borkowski 3794 to 3795 | |

| 62 | Notice of Appeal – Lyskawa | Borkowski 1952 to 1953 | |
|---|---|---|---|
| 63 | Notice of Appeal – Chanin | Borkowski 1627 to 1628 | |
| 64 | Denial of Appeal – Convers | Borkowski 1882 | |
| 65 | Denial of Appeal – Lyskawa | Borkowski 1881 | |
| 66 | Denial of Appeal – Chanin | Borkowski 1677 | |
| 67 | Notice of Appeal of Denial of Appeal – Convers | Borkowski 1884 | |
| 68 | Notice of Appeal of Denial of Appeal – Lyskawa | Borkowski 1886 | |
| 69 | Notice of Appeal of Denial of Appeal – Chanin | Borkowski 1680 to 1681 | |
| 70 | Court of Special Appeals opinion – *Borkowski v. State* | N/A | |
| 71 | Court of Appeals denial of certiorari in *Borkowski v. State* | N/A | |

| | | | |
|---|---|---|---|
| 72 | *Borkowski v. Convers* – Complaint | Borkowski 20 to 27 | |
| 73 | *Convers* Second Amended Counterclaim | Officer Defs. 241 to 269 | |
| 74 | *Borkowski v. Garrett* – Complaint | N/A | |
| 75 | *Borkowski v. Marvel* – Complaint | N/A | |
| 76 | R. Baldwin email to B. Edwards re: Hendler Investigation | Officer Defs. 5788 to 5798 | |
| 77 | B. Edwards email to R. Baldwin re: Staffing | Baltimore County 17 to 19 | |
| 78 | R. Baldwin email to B. Edwards re: Staffing | Baltimore County 21 to 24 | |
| 79 | Greenberg Interview of Borkowski (video) | Officer Defs. 2225 | |
| 80 | Releases | Officer Defs. 1800 to 1802 | |
| 81 | Final Case Disposition | Officer Defs. 86 to 87 | |

| | | | |
|---|---|---|---|
| 82 | ██████████ | ████████ | |
| 83 | ██████████ | █████████ | |
| 84 | █████████ | ██████████ | |
| 85 | █████████ | ███████████ | |
| 86 | █████████ | ██████ | |
| 87 | █████████ | ███████ | |
| 88 | █████████ | █████████ | |
| 89 | ██████████ | █████████ | |

**b.      Defendants May Offer If the Need Arises.**

| Exhibit No. | Description | Bates Number | Objection |
|---|---|---|---|
| 90 | Text Message from Convers to Borkowski | Officer Defs. 52 | |
| 91 | Instagram Photo with Comment | Officer Defs. 4076 | |

| 92 | Instagram Photo with Comment | Officer Defs. 4075 | |
| 93 | GBMC Photo | Officer Defs. 5000 | |
| 94 | Burrows Text Messages | Officer Defs. 521 to 522 | |
| 95 | Brian Edwards Email to Ernest Reitz re: Burrows Text Messages | Officer Defs. 520 | |
| 96 | Lisa Dever Email to Commissioner | Officer Defs. 1805 (with attachment) | |
| 97 | Lisa Dever Email to B. Hoye | Officer Defs. 1818 | |
| 98 | Commissioner Email to Lisa Dever | Officer Defs. 1910 | |
| 99 | Memo from J. and E. Gonzalez | Borkowski SAO 000001 | |
| 100 | BWC Request and Response | Officer Defs. 1932 to 1933 | |
| 101 | Video of Interview of A. Hendler by Sgt. M. Greenberg | Officer Defs. 2227 | |

| | | | |
|---|---|---|---|
| 102 | Report of Interview of A. Hender by Sgt. M. Greenberg | Officer Defs. 95 to 101 | |
| 103 | Report of Interview of A. Borkowski by Sgt. M. Greenberg | Officer Defs. 88 to 94 | |
| 104 | Video of Interview of C. Hageman by Sgt. M. Greenberg | Officer Defs. 2222 | |
| 105 | Report of Interview of C. Hageman by Sgt. M. Greenberg | Officer Defs. 102 to 103 | |
| 106 | Report of Interview of R. Schwartz by Sgt. M. Greenberg | Officer Defs. 105 | |
| 107 | Greenberg Report re: Hendler BAC | Officer Defs. 85 | |
| 108 | *Borkowski v. Convers* Settlement Agreement | Borkowski 6045 to 6064 | |
| 109 | CV of Dr. Neil Blumberg | Officer Defs. 105 | |
| 110 | Report by Dr. Neil Blumberg | Officer Defs. 85 | |

| 111 | Borkowski Answers to Tomas/Burrows Interrogatories | N/A | |
| 112 | Borkowski Answers to Shellenberger Interrogatories | N/A | |
| | | | |

## I.    Witness List.

### A.    Plaintiff's Designations.

Plaintiff expects to present the following witnesses, other than those expected to be called solely for impeachment:

1.    Lisa Dever.

2.    Kristin Burrows.

3.    Nicholas Tomas.

4.    Jessica Hummel.

5.    Justin Dorfler.

6.    Bonnie Fox.

7.    Scott Shellenberger.

8.    Brian Edwards.

9.    Morris Greenberg.

10.    Eduardo Gonzalez, 5800 Berkley Avenue, Baltimore, MD 21215.

11.    Josefina Gonzalez, 5800 Berkley Avenue, Baltimore, MD 21215.

12.    Annemarie Hendler, 18515 Viburnum Way, Olney, MD 29832, 240-429-9933.

13.    Anna Borkowski, 5800 Berkeley Avenue, Baltimore, MD 21215.

**B.      Defendants' Designations.**

Defendants expect to present the following witnesses, other than those expected to be called solely for impeachment:

1.      State's Attorney Scott Shellenberger, contact through counsel.

2.      Assistant State's Attorney Lisa Dever, contact through counsel.

3.      Detective Kristin Burrows, contact through counsel.

4.      Corporal Nicholas Tomas, contact through counsel.

5.      Plaintiff Anna Borkowski, contact through counsel.

6.      Officer Justin Dorfler, contact through counsel for the Officer Defendants.

7.      Retired Detective Jessica Hummel, contact through counsel for the Officer Defendants.

8.      Dr. Neil Blumberg, 201 West Padonia Road – Suite 203, Timonium, MD 21093, 410-561-1156.

Defendants may call the following witnesses if the need arises:

1.      Josefina Gonzalez, 5800 Berkley Avenue, Baltimore, MD 21215, telephone number unknown.

2.      Eduardo Gonzalez, 5800 Berkley Avenue, Baltimore, MD 21215, telephone number unknown.

3.      Bonnie Fox, contact through counsel.

4.      District Court Commissioner Colleen Ellingson, c/o District Court of Maryland.

5.      District Court Commissioner John Robey, c/o District Court of Maryland.

6.      District Court Administrative Commissioner Whitney Wisniewski, c/o District Court of Maryland.

7.      Former Plaintiff Annie Hendler, contact through counsel to Plaintiff.

8.      Corporal Allen Himes, contact through counsel for the Officer Defendants.

9.      Officer Uzoma Nnadozie, contact through counsel for the Officer Defendants.

10.     Detective Kimberly Montgomery, contact through counsel for the Offficer

Defendants.

11.     Captain Brian Edwards, contact through counsel for the Officer Defendants.

12.     Sergeant Morris Greenberg, contact through counsel for the Officer Defendants.

Defendants reserve the right to call any witness identified by Plaintiff.

**J.      Expert Witness List.**

**1.      Plaintiff's Designations.**

None.

**2.      Defendants' Designations.**

**a.      Defendants' Rule 26(a)(2)(A) Designations.**

Defendants have retained Dr. Neil Blumberg to offer expert testimony in this case. The

subject-matter of Dr. Blumberg's expected testimony was previously disclosed to Plaintiff

through a written report dated April 23, 2021. Because of the sensitivity of the report,

Defendants do not describe its contents in this Joint Pretrial Order, but instead submit it

separately and under seal as **Exhibit A** hereto.

**b.      Defendants' Rule 26(a)(2)(B) Designations.**

Defendants understand that Rule 26 does not require that Defendants identify themselves

– nor any other person who formed an opinion as an "actor or viewer" in the underlying events –

as an expert witness. *See* Advisory Committee Notes to 1970 Amendments to Federal Rule 26.

Nonetheless, Defendants Shellenberger, Dever, Burrows, and Tomas – along with non-parties

Officer Dorfler, Retired Detective Hummel, Detective Montgomery, and Sergeant Greenberg – may be called upon to explain their reasoning in taking certain actions in the underlying investigation(s) or in response to Ms. Borkowski's filing of charges. To the extent such designation is required, Defendants hereby designate these witnesses.

**K.      Deposition Designations.**

**1.      Plaintiff's Designations.**

None.  Plaintiff Borkowski believes all witnesses will be available for her case in chief.

**2.      Defendants' Designations.**

| Deponent | Lines | Plaintiff's Objections and/or Counter-Designations |
|---|---|---|
| Anna Borkowski | 9:16 to 10:13 | None |
| | 69:5 to 70:6 | 70:7-72:12; 81:18-82:8 |
| | 70:16 to 70:19 | |
| | 71:1-14 | 72:2-8 |
| | 72:9-12 | |
| | 85:5 to 87:6 | 87:7-88:10 |
| | 128:4-10, 130:3 to 132:15 | 128:11-129:22; 132:16 |
| | 133:17-21 | 133:22-134:4 |
| | 134:5 to 135:19 | |
| | 138:5 to 139:10 | 139:11-20 |
| | 144:7 to 145:7 | 145:22-146:2 |
| | 146:3-13 | |
| | 158:11 to 159:19 | |
| | 239:14 to 239:21 | 241:9-242:14 |

| | | |
|---|---|---|

## L.   Any Other Pretrial Relief Requested.

### 1.   As to Plaintiff Borkowski.

Plaintiff Borkowski will seek an order *in limine* based on Defendants' intentional and willful destruction of cell phones they used at the time of the circumstances at issue, including in March 2018, and will request entry of judgment against Defendants Burrows, Dever, Tomas, and Fox as the appropriate sanction, or, in the alternative, an instruction to the jury that they are entitled to assume that those cell phones contained evidence favorable to Plaintiff's claims and unfavorable to all Defendants' defenses to those claims.

### 2.   As to Defendants.

Defendants are filing the following motions *in limine* and/or pretrial requests:

(1)   A request to bifurcate the trial on punitive damages;

(2)   A motion *in limine* to preclude evidence and argument relating to Baltimore County's responses to MPIA requests submitted by Plaintiff and/or her attorney; and

(3)   A motion *in limine* to preclude the admission of email communications between attorney Ron Schwartz and officials of UMBC.

Upon review of the file in this case, Defendants also observe that Plaintiff has not yet complied with this Court's Order dated December 7, 2021 (ECF No. 137) promptly to file a partially redacted copy of her Exhibit 1 to ECF No. 126.

## M.   Any Other Matters Added by the Court.

Respectfully and jointly submitted,


_____*/s/ Rignal W. Baldwin V*_____
Rignal W. Baldwin V
Federal Bar No.: 30136
Baldwin Seraina
111 South Calvert Street, Suite 1805
Baltimore, Maryland 21202
Telephone (410) 385-5695
Facsimile (410) 703-7772
rbaldwinv@baldwin-seraina.com

*Attorney for Plaintiff Anna Borkowski*


_____*/s/ Christopher C. Dahl*_____
Christopher C. Dahl (Bar No. 29649)
cdahl@bakerdonelson.com
Alison C. Schurick (Bar No. 19778)
aschurick@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street, 19th Floor
Baltimore, MD 21202
Tel:  410-685-1120
Fax: 410-547-0699

*Attorneys for Defendants Nicholas Tomas and
Kristin Burrows*


_____*/s/ Wendy L. Shiff*_____
Wendy L. Shiff (Bar No. 09076)
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

*Attorney for Defendants Scott Shellenberger, Lisa
Dever, and Bonnie Fox*

44

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this 20th day of July, 2022, copies of the foregoing Joint

Proposed Pretrial Order were served all parties via CM/ECF.


_____/s/_____
Christopher C. Dahl