IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNA BORKOWSKI, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | REDACTED VERSION |
| v. | * | Civil Action No.: 1:18-cv2809-DKC |
| | * | |
| BALTIMORE COUNTY, MARYLAND, *et al.* | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN RESPONSE TO THE
COURT'S PROPOSED JURY INSTRUCTION (ECF NO. 175)**

Defendants, Scott Shellenberger, Lisa Dever, Bonnie Fox, Kristin Burrows, and Nicholas Tomas, each by their respective undersigned attorneys, hereby file this Memorandum in Response to the Court's Proposed Jury Instruction (ECF No. 175) for this Court's consideration in advance of the continued Pretrial Conference on August 23, 2022.

**I.   Introduction.**

On July 20, 2022, pursuant to the Court's Orders dated December 28, 2021 and July 6, 2022 (ECF Nos. 138 and 153), the parties submitted Proposed Jury Instructions for the Court's consideration. *See* ECF Nos. 159 and 164. The parties thereafter submitted additional supplemental instructions as ECF Nos. 171 and 173. At the Pretrial Conference on August 1, 2022, the parties' (differing) submissions on the requested instruction for First Amendment retaliation (Defendants' Proposed Jury Instruction No. 4; Plaintiff's Proposed Instruction No. 3) were discussed but not resolved. On August 2, 2022, the Court provided a list of cases and a proposed instruction for the First Amendment retaliation claim (ECF No. 175) ("Proposed

1

Instruction"). Defendants will address each element of the Court's Proposed Instruction in turn, and in reverse order.

II.     **Argument.**

   A.   **Defendants Agree with the Court's Proposed Instruction on the Third Element of First Amendment Retaliation ("Intent to Retaliate Was a Motivating Factor") and the Two Paragraphs of Instruction Concerning That Element.**

Defendants agree with the Court's Proposed Instruction on the third element of First Amendment retaliation ("[t]hat intent to retaliate was a motivating factor for that Defendant's decision to take adverse action") and the two paragraphs beginning at the bottom of page 2 of those Proposed Instructions that explain the element. These instructions, in full, usefully elucidate the state-of-mind element, and the shifting burden, under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), and its progeny.

   B.   **Defendants Agree with the Court's Proposed Instruction on the Second Element of First Amendment Retaliation ("Adverse Action"), with Two Modifications.**

Defendants further agree with the Court's Proposed Instruction as to the second element ("[t]hat, following that conduct, a Defendant took an adverse action against her"), and the one sentence of text in the second paragraph to follow ("[t]he second element, adverse action, is action that would tend to discourage a reasonable person's exercise of First Amendment rights"). Defendants request two modifications on this element, however, each of which is plainly established law in this Circuit and each of which is expected to be reflected in the evidence at trial. Therefore, absent these modifications, Defendants object, in part, to that element of the Proposed Instruction.

The first modification that Defendants request is that the jury be instructed that "[t]he actions of any Defendant in this case cannot be considered 'adverse action' unless it constituted a

2

threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will immediately follow." This limiting principle is set forth in *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000), and it was appropriately cited by this Court in its decision granting in part and denying in part the motions to dismiss the Third Amended Complaint. *See Borkowski v. Baltimore County, Maryland*, 492 F. Supp. 3d 454, 476-77 (D. Md. 2000). Defendants expect that there will be, at a minimum, a dispute of fact as to whether their actions reasonably could have constituted such a "threat, coercion, or intimidation," and the jury should be so instructed.

The second modification that Defendants request is that the jury be instructed that "Ms. Borkowski's actual response to the Defendants' action, while not dispositive, provides some evidence of whether the action would tend to discourage a reasonable person's exercise of his or her rights." *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). This instruction is appropriate, and even vital, given the evidence expected to be presented at trial. Discovery revealed that Ms. Borkowski's grandmother was not, in fact, intimidated by the police visit, *see* **Exhibit A** hereto (partial transcript of deposition of J. Gonzalez) at 241:4-8 and **Exhibit B** hereto (partial transcript of deposition of A. Borkowski), which was objectively not intimidating, *see* BWC video of police encounter (previously submitted to this Court as Exhibit 1 to Defendants' Motion for Summary Judgment (ECF No. 11)). Ms. Borkowski also testified at her deposition that there has not been a time since those events when she wanted to bring criminal charges against anyone but did not do so. *See* **Exhibit B** at 239:14 to 17.

The evidence further will show (and this is in addition to the facts presented in the summary-judgment papers in this case), that, since the events of March 2018, Ms. Borkowski has initiated or continued several legal proceedings:

(1)    The April 11, 2018 (*i.e.*, less than three weeks after the allegedly chilling action) filing of a Motion to Vacate Dismissal of the criminal charges against the three men, *see* **Exhibit C** hereto (collectively identified as Defendants' Trial Exhibits 55, 56, and 57);

(2)    █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(3)    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

(4)    The filing of this lawsuit on September 10, 2018;

(5)    The filing of a civil suit against the three men on October 19, 2018, *see* **Exhibit F** hereto;

(6)    The filing of an MPIA complaint against three records custodians of Baltimore County on May 6, 2019, *see* **Exhibit G** hereto (identified as Defendants' Trial Exhibit 74);

(7)    Ms. Borkowski's participation in the reopened investigation of Ms. Hendler's rape complaint, including being interviewed by Sergeant Morris Greenberg on

4

February 6, 2020, *see* **Exhibit H** hereto (identified as Defendants' Trial Exhibit 103).

While not dispositive of the potential impact on a "reasonable person," these actions demonstrate that Ms. Borkowski has not been personally dissuaded from using legal process since March 2018. Under the law, this is at least *some evidence* of what impact, if any, Defendants' actions would have on a reasonable person, and the jury should be so instructed.

## C.  Defendants Disagree with the One Paragraph of Instruction Discussing the First Element of First Amendment Retaliation ("Conduct That Was Protected by the First Amendment").

Defendants disagree with, and object to, the one paragraph of the Court's Proposed Instruction discussing the first element of First Amendment retaliation, which reads that "[t]he first element, conduct protected by the First Amendment, includes appearing before a District Court Commissioner and providing sworn testimony in support of seeking criminal charges." As Defendants argued on summary judgment – and as further developed below concerning the fuller picture of evidence to be presented at trial – false applications for charges (at least *knowingly* false applications) are not protected by the First Amendment.

Before discussing further, Defendants highlight two important points: (1) Defendants do not expect that any witness will testify that he or she did not believe Ms. Borkowski's criminal complaint as presented on October 20, 2017; and (2) to the extent that Ms. Borkowski's applications for charges contained false information, no witness is expected to testify that "falsity" is what motivated Defendants' actions on March 22, 2018. Nonetheless, questions remain about whether Ms. Borkowski's applications for charges were: (1) false (and, the evidence will show, the changes in Ms. Borkowski's story over time were not limited to whether

5

"force" was used); and (2) motivated by a desire to accomplish something other than the initiation of criminal charges.

Among the cases cited in this Court's August 2, 2022 letter to counsel was *United States v. Alvarez*, 567 U.S. 709 (2012), which struck down the Stolen Valor Act as unconstitutional. While the United States Supreme Court declined to extend principles from First Amendment defamation law to validate the Stolen Valor Act, *see id.* at 719-20, the Court's analysis observed the "'unquestioned constitutionality of perjury statutes,' . . . and its state-law equivalents," *id.* at 720. This is because, as the Court explained, perjured statements are "'at war with justice'" and "testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." *Id.* at 720-21.

Each of Ms. Borkowski's six applications for charges was sworn before a District Court Commissioner under penalty of perjury. Further, each of Ms. Borkowski's six applications for charges was printed on a District Court of Maryland form document, which additionally cautioned Ms. Borkowski that the application was "being filed under oath" and that "Criminal Law Article § 9-503, of the Annotated Code of Maryland provides that any person who makes a false statement or report of a crime or causes such a false report or statement to be made to any official or agency of this State, knowing the same, *or any material part thereof*, to be false, and with intent that such official or agency investigate, consider or take action in connection with such statement or report, shall be subject to a fine of not more than $500, or be imprisoned for not more than six (6) months, or both fined and imprisoned, in the discretion of the court." *See* **Exhibit I** hereto (identified as Defendants' Trial Exhibit 41) (emphasis added). Ms. Borkowski confirmed at her deposition that she read this portion of the form application for charges at the

6

time she swore them out before the District Court Commissioners. *See* **Exhibit B** hereto at 131:14 to 133:1. The constitutionality of such a provision is "unquestioned" under *Alvarez* because a false statement in a legal proceeding is not protected speech. And, it cannot be questioned that the applications for charges could reasonably have had an "[e]ffect [on] the rights and liberties" of the three men, *see Alvarez*, 567 U.S. at 720-21, including potentially their arrest upon the issuance of charges.

Defendants proffer that the evidence expected to be presented at trial will show that Ms. Borkowski's evolving story may lead the jury reasonably to infer that her applications for charges contained false statements, even knowingly false statements, for the reasons that follow:

(1) Ms. Borkowski initially reported her criminal complaint to the police on October 20, 2017, as best captured in a recorded interview with Detective Jessica Hummel on that same date, which was previously submitted to this Court as Exhibit 4 to Defendants' Motion for Summary Judgement (ECF No. 117) and is identified as Defendants' Trial Exhibit 4. That criminal complaint: (1) did not suggest any force or threat of force; and (2) included a detail inconsistent with the elements of second-degree rape, specifically, Ms. Borkowski's engaging in vaginal sex in a dominant position on Ms. Hendler's balcony. *Id*.

(2) ███████████████████████████████████████
███████████████████████████████████
████████████████████████████████
████████████████████████████████████
██████████████████████████

(3) On November 17, 2017, the State declined to prosecute Ms. Borkowski's criminal complaint, finding that her report did not meet the elements of second-degree rape.

(4) ██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████

(5) ████████████████████████████████, but before Ms. Borkowski filed charges in March 2018, Ms. Borkowski engaged counsel.

(6) On March 14 and 20, 2018, Ms. Borkowski filed charges alleging, for the first time, first-degree, forcible rape. *See* **Exhibits K & L**.

(7) ██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

8

███████████████████████████████████████
████████████████████

(8) On October 19, 2018, Ms. Borkowski brought a civil suit against the three men. *See* **Exhibit F**. Ms. Hendler thereafter joined as a plaintiff in that lawsuit.

(9) In the summer of 2019, Ms. Borkowski's attorney requested that the Baltimore County Police Department reopen the rape complaint of Ms. Hendler. *See* **Exhibit M** (identified as Defendants' Trial Exhibit 76). The Baltimore County Police Department accommodated that request, assigning the reopened investigation to Sergeant Morris Greenberg, who worked on having any prosecutorial decisions handled by the State's Attorney's Office for Anne Arundel County.[1] Ms. Borkowski supported Ms. Hendler's complaint, giving a lengthy interview with Sergeant Greenberg on February 6, 2020. *See* **Exhibit H**. During that interview, Ms. Borkowski confirmed that no force was used or threatened during the encounter, and she denied any memory at all of sexual contact on the balcony. *See* **Exhibit H** at Officer Defs. 000091; *see* Partial Video of Interview, previously submitted as Exhibit 79 to Defendants' Motion for Summary Judgment.

(10) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

(11) ████████████████████████████████████, and contrary to her years of professing to seek that the three men be punished criminally, Ms. Borkowski sent

---

[1] Because the prosecution was requested after suit was filed, a conflict was created for the State's Attorney for Baltimore City.

a memorandum to Sergeant Greenberg that she was withdrawing her request to reopen the investigation against the three men, and that it was not her intention to seek to reopen the investigation at any time in the future. *See* **Exhibit O** hereto (identified as Defendants' Trial Exhibit 80).

Beyond the fact that any allegation of "force" in Ms. Borkowski's applications for charges is empirically false (as argued in Defendants' Joint Motion for Summary Judgment), the overall timeline reveals that Ms. Borkowski's account of the event of October 20, 2017 changed significantly (and materially) following two key events, both predating her applications for charges: (1) the State's decision not to charge the three men; and (2) Ms. Borkowski's hiring an attorney. The timeline further reveals that Ms. Borkowski's professed desire to seek justice ceased entirely ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. These facts, taken in context, suggest at least an inference that Ms. Borkowski's applications were not only false, but knowingly false and made for a purpose other than seeking criminal prosecution.

Regardless of whether the falsity of the applications motivated any Defendant's action (it did not, as the evidence will demonstrate), it negates the first element of First Amendment retaliation. At best, Plaintiff would be left with an "attempted First Amendment retaliation" claim, which is not viable under Section 1983. *See Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987) (holding that a "mere *attempt* to deprive a person of his First Amendment rights is not, under usual circumstances, actionable under section 1983"); *see also Iosilevich v. New York City Admin. for Child Servs.*, No. 21-CV-466 (RPK) (LB), 2021 WL 3472647, at *3 (E.D.N.Y. Aug. 6, 2021) ("[C]ourts have consistently rejected claims for attempted constitutional violations under Section 1983.") (collecting cases).

The jury should be so instructed, and Defendants therefore request the following modification to the Court's Proposed Instruction on the first element of First Amendment retaliation: "The first element, conduct protected by the First Amendment, may include appearing before a District Court Commissioner and providing sworn testimony in support of seeking criminal charges. Knowingly providing false testimony before a District Court Commissioner in support of criminal charges, however, is not protected by the First Amendment."

### III.   Conclusion.

For the foregoing reasons, Defendants respectfully request that the proposed jury instruction be modified as requested in this Memorandum, specifically:

(1)   Modifying the proposed jury instruction on the first element of First Amendment Retaliation to include the following additional instructions:

    (a)   "If you find, however, that Ms. Borkowski knowingly made any false statement to the District Court Commissioner, that is not conduct protected by the First Amendment."

(2)   Modifying the proposed jury instruction on the second element of First Amendment Retaliation to include the following additional instructions:

    (a)   "The actions of any Defendant in this case cannot be considered 'adverse action' unless it constituted a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will immediately follow"; and

    (b)    Ms. Borkowski's actual response to the Defendants' action, while not dispositive, provides some evidence of whether the action would tend to discourage a reasonable person's exercise of his or her rights."

Respectfully submitted,

*/s/ Christopher C. Dahl*
Christopher C. Dahl (Bar No. 29649)
cdahl@bakerdonelson.com
Alison C. Schurick (Bar No. 19778
aschurick@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street, 19th Floor
Baltimore, MD 21202
Tel:  410-685-1120
Fax: 410-547-0699

*Attorneys for Defendants Nicholas Tomas and Kristin Burrows*

*/s/ Wendy L. Shiff*
Wendy L. Shiff (Bar No. 09076)
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

*Attorney for Defendants Scott Shellenberger, Lisa Dever, and Bonnie Fox*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 11th day of August 2022, copies of the foregoing Memorandum were served all parties via CM/ECF.

                                                    /s/
                                    Christopher C. Dahl